**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **ANTHONY J. FERREIRA, in both his capacity as Administrator of the Estate of Patricia J. Ferreira and as guardian of the estate and person of Ryan C. Ferreira,** **Plaintiff,** | : | |
| **v.** | : | **C.A. No. 05-73S (consolidated)** |
| **CITY OF EAST PROVIDENCE, by and through its Treasurer, KEVIN J. FITZGERALD, et al.,** **Defendants** | : | |
| **ANTHONY J. FERREIRA,** **Plaintiff,** | : | |
| **v.** | : | |
| **CITY OF EAST PROVIDENCE, by and through its Treasurer, KEVIN J. FITZGERALD, et al.,** **Defendants** | : | |

## PLAINTIFF'S BRIEF STATEMENT OF FACTS

### I. 64 Brightridge Avenue

On the afternoon of October 11, 2001, Ms. Ferreira and John Sousa ("Sousa"), Ms. Ferreira's boyfriend, had a heated argument at Sousa's home located at 64 Brightridge Avenue, East Providence, Rhode Island. Due to her concern for her son, Ryan Ferreira's well-being, Ms. Ferreira directed Ryan to go to his grandmother's house a short distance away at 44 Brightridge Avenue. When Ryan arrived at Beverly Ferreira's ("Mrs. Ferreira") home, he told her that his mother was engaged in a heated argument and that Ms. Ferreira had told him to leave the house for his safety.

At approximately 4:45 p.m., Mrs. Ferreira and the Plaintiff, Anthony J. Ferreira ("Mr. Ferreira"), traveled to the East Providence Police Department ("Department") with Ryan to meet

with Defendant Barlow to discuss their concerns regarding Ms. Ferreira and Sousa. Defendant Barlow was advised that a heated argument had occurred with items being thrown inside the house, resulting in Ryan leaving the home due to safety concerns, that Sousa had thrown Ryan's clothes onto the lawn, that Ryan and Ms. Ferreira were ordered to move out by Sousa, and that Ms. Ferreira was receiving counseling and on medication for a psychological disorder. Defendant Barlow then met alone with Ryan. Due to his discussion with the Ferreiras, Defendant Barlow advised them that he was concerned with Ryan's well-being and would contact DCYF, and, would also have officers report to Sousa's home to investigate whether a domestic violence incident had occurred. According to Mr. Ferreira, Defendant Barlow then advised the responding officers—Defendants Tiernan and David—that if there was evidence of a crime an arrest was to be made, "because both of them or one of them is going to jail tonight."

Defendants Tiernan and David then traveled to Sousa's home. Over a forty (40) minute period, Defendants David and Tiernan spoke with Sousa and Ms. Ferreira and determined that no grounds for an arrest existed. During this time period, the officers learned that Ms. Ferreira and Sousa were terminating their relationship and that Ms. Ferreira and Ryan were being forced to vacate Sousa's home.

Defendant David described both parties as being "upset" and "angry." He also testified that Sousa and Ms. Ferreira had a "volatile" relationship. Conversely, Defendant Tiernan described both parties as "calm," but acknowledged Ms. Ferreira appeared "emotionally distraught." While Defendants David and Tiernan were on scene, Defendant Rush responded to Sousa's home to oversee the investigation. Rush testified that both parties were "angry."[1] Ms.

[1] As referenced earlier, the Department was familiar with Ms. Ferreira primarily due to relationships that she had with men that turned sour. Defendant Tiernan testified that he had responded to approximately 50 calls for service that involved Ms. Ferreira, Defendant Rush knew Ms. Ferreira for "years" and had refereed arguments between her and Sousa in the past, and Defendant David had responded to 10-15 calls involving Ms. Ferreira prior

Ferreira, in Rush's presence stated that "her life was a mess." Defendant Rush cleared the scene within minutes of arriving, leaving Defendants Tiernan and David.

Defendants David, Tiernan and Rush testified that Barlow did not report to them that Ryan had stated that Sousa and Ms. Ferreira had been throwing items during the confrontation, or that Ryan was directed to leave Sousa's home for his safety, or that Ms. Ferreira was receiving psychological treatment,[2] or that Defendant Barlow was contacting DCYF due to his concerns for Ryan's safety.

Ms. Ferreira spent time in the presence of the officers placing clothes for her and Ryan in bags to take with her. According to Defendants Tiernan and David, she also stated in their presence that she wanted to take her guns—a .38 caliber revolver and a 9mm handgun—with her.[3] Sousa and another party who was present, Sousa's ex-wife, Irene Sousa a/k/a Alexandra Walmsley, both testified at their depositions that they informed the officers that Ms. Ferreira was mentally unstable and that they should not let her leave with her firearms.[4]

## II. Birchard Street

At approximately 6:00 p.m., within minutes after leaving Sousa's home, Ms. Ferreira arrived at her mother's home[5] at the corner of Brightridge Avenue and Birchard Street in East Providence to leave the clothes for Ryan. As she approached her mother's home, Mr. Ferreira was standing outside the house alongside Birchard Street. Ms. Ferreira stated to him that

---

to October 10, 2001. It is also noteworthy that Ms. Ferreira had had a relationship with a former reserve officer in the Department who was later investigated by the Department for stalking Ms. Ferreira. Ms. Ferreira had assisted Defendant Barlow in the investigation.

[2] Defendant Tiernan testified that he had heard "rumors" that Ms. Ferreira was on medication due to mental health issues.

[3] Defendants Rush, David, Tiernan and Barlow as well as other members of the Department were aware that Ms. Ferreira possessed deadly weapons.

[4] Defendants David and Tiernan, as well as other parties to this litigation, have testified that if Defendant Barlow had shared with them the information he had learned from Mr. Ferreira, Mrs. Ferreira and Ryan, they would have taken the guns for safekeeping.

[5] Darlene Anctil (Ms. Ferreira's sister) and Mr. Ferreira also lived at this address.

"DCYF was coming" and that she and Sousa were in "trouble" and going to "jail." In response, Mr. Ferreira assured her that everything would be alright. Ms. Walmsley then arrived and handed Ms. Ferreira a note with her address and telephone number. Ms. Ferreira then suddenly stated that she was going to "kill herself." Ms. Ferreira then took her guns from the trunk and entered her vehicle. Mr. Ferreira again assured his sister that everything would be fine. Mr. Ferreira then took the .38 caliber gun from Ms. Ferreira and placed it in a basket alongside his house. Ms. Ferreira then slowly drove up Birchard towards Fenmoor Street before stopping her vehicle.

Mr. Ferreira then asked his other sister, Ms. Anctil, to give him a telephone to call 911. Mr. Ferreira advised a Department dispatcher that his sister was suicidal and that he had seized one of her guns. In response, dispatch broadcast a Code 1 (lights and sirens) regarding a threat of suicide on Birchard Street.

Before the police arrived, Mr. Ferreira approached Ms. Ferreira's vehicle and assured her that she and Ryan would be fine and that he would provide assistance to her.

Defendants Rush, Hall, Tiernan, David, Feeney as well as other Department members then arrived and immediately established a perimeter around Ms. Ferreira's motor vehicle and took positions of cover while Mr. Ferreira was standing alongside the driver's side of his sister's vehicle and she remained in the vehicle.

With a number of officers aiming their weapons at Ms. Ferreira's vehicle, Mr. Ferreira was ordered to step away from the vehicle or he "would be shot." Ms. Ferreira then placed her hands on the steering wheel. Due to his fear for his sister's safety, Mr. Ferreira then leaned onto the windshield. Defendant Hall then ordered Mr. Ferreira to get away from the vehicle and as he did, Mr. Ferreira was sprayed with pepper spray by Defendant Hall before he was forcibly

restrained by Defendants Hall and David. While he was restrained, Mr. Ferreira alleges that he was repeatedly sprayed with pepper spray, each time he mentioned that Ms. Ferreira had another gun in her vehicle.[6]

At this juncture, Feeney attempted to enter Ms. Ferreira's vehicle, but the doors were locked. Sousa then arrived at the scene, broke through the perimeter and attempted to open Ms. Ferreira's car door. Sousa and several officers then had a physical confrontation before Sousa was taken into custody.

Defendant Hall then attempted to break the windows of Ms. Ferreira's vehicle as she drove through the perimeter. His efforts failed. Ms. Ferreira, followed by the police, then drove from Fenmoor to Warren Avenue, to Pawtucket Avenue, to Intervale, before stopping at the intersection of Intervale and Brightridge due to a roadblock established by the Department.

### III. Brightridge and Intervale

Again, the Department established a perimeter with a number of officers in positions of cover surrounding Ms. Ferreira's motor vehicle. Defendant Rush was initially responsible for directing the evacuation of nearby homes, controlling traffic and keeping onlookers away from the scene. He then ordered Defendant Feeney to bring the Special Response Team ("SRT") van to the scene to access equipment as needed.

Defendants Hall and Barlow then engaged in conversation with Ms. Ferreira over the course of the next 90 minutes wherein they asked her to put the gun down and exit her vehicle.

At some point, Defendant McGregor, head of the SRT unit, devised a plan that called for SWAT tactics to remove Ms. Ferreira by force if attempts to convince her to exit the car continued to be unsuccessful. The plan called for two (2) officers from the SRT, Defendants

[6] The officers have testified that prior to his arrest, they believed that Mr. Ferreira may have possessed a firearm.

Rush and McGregor, to throw flash bang devices at the car—one to the driver's side front wheel and the other would be thrown at the front passenger window, which would break from the force of impact from the flash bang. With Defendants Rush and David behind a bunker on either side of the vehicle's front doors after the flash bangs detonated, Defendant Feeney (also a member of the SRT) would apply a Haligan breaching tool to the driver's side window, and after breaking the window, he would reach in to seize the gun from Ms. Ferreira. At the same time, Defendant David would reach in from the passenger side front door and attempt to seize either Ms. Ferreira or the gun.

At Defendant Barlow's signal, the flash bangs were thrown at the car. The device Defendant Rush threw landed where planned; Defendant McGregor's bounced off the window and detonated away from the car. Just after or as the flash bangs detonated, the team immediately stormed Ms. Ferreira's vehicle. Defendant McGregor then attempted to break the passenger side window with the butt of his service weapon while Defendant David observed Ms. Ferreira in a state of "shock" and "fear." At the same time, Defendant Feeney swung the Haligan tool at the driver's side window several times until it broke. He testified that he then reached into the car, and had his hands around Ms. Ferreira's head when her 9mm discharged, mortally wounding her. As the gun fired, Defendant Feeney fell back to the ground, believing that he had been shot. Ms. Ferreira was then transported to Rhode Island Hospital where she was pronounced dead.

On October 11, 2001, Mr. Ferreira was transported from Rhode Island Hospital, where he was treated for injuries related to his seizure, to the Department to be processed for charges of obstruction of an officer in execution of duty and resisting arrest. Once at the Department, Enos informed Mr. Ferreira that the charges would be dropped. Enos then requested that Mr. Ferreira

surrender to the Department, for a period of 60 days, any firearms that he owned. Mr. Ferreira complied with the request.

Respectfully submitted,
PLAINTIFF,
By his attorneys,
SINAPI, FORMISANO & CO., LTD.

/s/ V. Edward Formisano
V. Edward Formisano (5512)
100 Midway Place, Suite 1
Cranston, Rhode Island 02920-5707
(401)944-9690
(401)943-9040 (facsimile)

**CERTIFICATION**

TO: Marc DeSisto, Esq.
211 Angell Street
P.O. Box 2563
Providence, RI 02906

I hereby certify that on the 1st day of March, 2007, I caused the within to be electronically filed with the Clerk of the U.S. District Court for the District of Rhode Island using the CM/ECF System. I also certify that the above counsel of record has received the within.

/s/ V. Edward Formisano