UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ANTHONY J. FERREIRA, as Administrator of the Estate of Patricia J. Ferreira, and as Guardian of the Estate and Person of Ryan C. Ferreira,<br><br>*Plaintiff,*<br><br>vs.<br><br>CITY OF EAST PROVIDENCE, et al.,<br><br>*Defendants.* | C.A. No. 05-73 S |
| ANTHONY J. FERREIRA, individually,<br><br>*Plaintiff,*<br><br>vs.<br><br>CITY OF EAST PROVIDENCE, et al.,<br><br>*Defendants.* | C.A. No. 05-75 S<br>(member case) |

**DEFENDANTS' PROPOSED JURY INSTRUCTIONS**

In addition to the Court's typical jury instructions on general matters, defendants hereby submit the instant proposed jury instructions:

**1. UNLAWFUL SEIZURE OF DECEDENT UNDER FOURTH AMENDMENT AND R.I. CONSTITUTION – COUNTS II & IV OF C.A. NO. 05-73S**

1.1. Plaintiff first seeks to recover for the alleged deprivation of her right to be free from unlawful seizure based on the defendants surrounding decedent's vehicle. While the Fourth Amendment does grant citizens the right to be free from seizure, the protection of the Fourth Amendment does "not ... guarantee against all . . .

seizures, but only against unreasonable . . . seizures." *U.S. v. Sharpe, 470 U.S. 675, 682 (1985).*

1.2. I instruct you that police officers are not only "permitted, but expected, to exercise what the Supreme Court has termed 'community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'" *United States v. King, 990 F.2d 1552, 1560 (10th Cir. 1993) quoting Cady v. Dombrowski, 413 U.S. 433, 441 (1973).*

1.3. "In the course of exercising this noninvestigatory function, a police officer may have occasion to seize a person, as the Supreme Court has defined the term for Fourth Amendment purposes, in order to ensure the safety of the public and/or the individual, regardless of any suspected criminal activity." *Id. See also Ahern v. O'Donnell, 109 F.3d 809, 817 (1st Cir. 1997) (Police officers have probable cause to "seize" or detain an individual when circumstances warranting a reasonable belief that the person to be seized threatening serious harm to himself or others).*

1.4. "Whether the seizure of a person by a police officer acting in his or her non-investigatory capacity is reasonable depends on whether it is based on specific articulable facts and requires [you] to balance the governmental interest in the police officer's exercise of his or her "community caretaking function" and the individual's interest in being free from arbitrary government interference." *King, 990 F.2d at 1560 citing Brignoni-Ponce, 422 U.S. at 878; Terry v. Ohio, 392 U.S. 20, 21 (1968).*

1.5. Thus, in the instant case, in order to determine if the officers were reasonable in the detainment of Patricia Ferreira in her car, you must balance their stated interest in attempting to protect her and her interest in being free from the police officer's intrusion into her actions. If you find the balance weighs in favor of the officers detaining Patricia in an attempt to prevent her suicide you must render a verdict in favor of defendants on plaintiff's claim for unreasonable seizure.

1.6. If, however, you determine that Patricia's interest in being free from arbitrary government interference outweighs the officers' exercise of their community caretaking functions, you then must determine whether defendants' alleged unconstitutional conduct was the actual and proximate cause of Patricia's injury, that is her death. I will come back to the causation standard after I define the rest of the claims brought by plaintiff.

**2. DUE PROCESS – COUNT III OF C.A. NO. 05-73S**

2.1. Plaintiff also asks you to find the defendants liable for the alleged deprivation of Patricia Ferreira's life without due process of law. In addressing this claim, I first caution you that the due process clause of our Constitution, "limits the actions the states can take rather than mandating specified obligations." *Bradberry v. Pinellas County, 789 F.2d 1513, 1517-1518 (11th Cir. 1986) citing generally, Harris v. McRae, 448 U.S. 297, 318 (1980).* Thus, "[t]he Constitution . . . does not prohibit grossly negligent rescue attempts [or] even the grossly negligent training of state officers." *Id.* Rather, it prohibits the governmental actors *themselves* from depriving an individual of life, liberty, or property without due process of law.

2.2. Accordingly, because the Due Process Clause acts as a check on the government, not on actions by private individuals, I caution you that the due process clause does not require the government to protect citizens against the violence of private individuals, even themselves. *DeShaney v. Winnebago Co. Dep't of Social Serv., 489 U.S. 189, 197 (1989)*. *Bradberry, 789 F.2d at 1518.* In fact, "only in very rare situations will the state's failure to protect someone amount to a constitutional violation, even if the state's conduct is grossly negligent." *Rivera v. Rhode Island, 402 F.3d 27, 30-31 (1st Cir. 2005) quoting Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992).*

2.3. Quite simply, "[a]lthough the state might be prohibited by the Due Process Clause from actively taking the life of a citizen through grossly negligent behavior, . . . [the] due process is [not] implicated when the state fails to help someone already in danger. To hold otherwise, we would have to read into the Constitution the tort law principle that a rescue, once begun, must be carried out with due care." *Bradberry, 789 F.2d at 1517-1518.*

2.4. Despite this limitation on the due process clause, there are two (2) recognized exceptions to the general prohibit against permitting such causes of action: they are the "special relationship" exception and the state-created danger exceptions.

2.5. The special relationship exception is a very limited exception that recognizes "an affirmative, constitutional duty to protect . . . when the state "so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs." *Id. at 34*. *See DeShaney, 489 U.S. at 201-02; Hasenfus v. LaJeunesse, 175 F.3d 68, (1st Cir. 1999); Souza v.*

*Pina, 53 F.3d 423, 426 (1[st] Cir. 1995); Sanford v. Stiles, 456 F.3d 298, 304 n. 4 (3[rd] Cir. 2006) .*

2.6. "The affirmative duty to protect [under the special relationship exception] arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which [the defendants have] imposed on his freedom to act on his own behalf." *Id.*

2.7. Under the law, "special relationships" exist for due process purposes when there is a custodial or supervisory relationships, such as the relationship between doctor and patient, jailer and inmate, or teacher and student. *See Monahan v. Dorchester Counseling Ctr., Inc., 961 F.2d 987, 991-92 (1st Cir. 1992). McMahon v. St. Croix Falls School Dist., 596 N.W. 2d 875, 879 (Wis.App. 1999). See also Hickey v. Zezulka, 487 N.W. 2d 106, 119 (Mich. 1992) (prisoner in jail cell); Falkenstein v. City of Bismarck, 268 N.W. 2d. 787 (N.D. 1978) (prisoner in jail cell); Meier v. Ross General Hospital, 445 P.2d 519, 523 (Cal. 1968)(high risk suicide patient of psychiatric hospital).*

2.8. Therefore, in order to find that a special relationship exists in the instant case, you must first find that Patricia was in the custody and control of the defendants. This custody and control must be of such a nature that such to render Patricia unable to care for herself.

2.9. In making this determination you may take into consideration the efforts made by the defendants to affirmatively encourage Patricia to leave the car. *Christiansen v. City of Tulsa, 332 F.3d 1270, 1280 (10th Cir. 2003).*

2.10. I also caution you that "[d]espite police officers' ability to surround a suicidal person physically, they cannot "control him or her." *Adams v. City of Fremont, 68 Cal. App. 4th 243, 278 (CA, 1st Appellate Dist., 1998).*

2.11. The second exception to the prohibition against holding the defendants liable under the due process clause is the state created danger exception. The "state-created danger" exception is available only where "[a] government employee, in the rare and exceptional case, affirmatively acts to increase the threat of harm to the claimant or affirmatively prevents the individual from receiving assistance." *Frances-Colon v. Ramirez, 107 F.3d 62, 64 (1st Cir. 1997) citing Dwares v. City of New York, 985 F.2d 94, 96 (2d Cir. 1993) (due process implicated where complaint under § 1983 alleged that police assured skin-heads that they could attack protestors with impunity, thereby affirmatively increasing threat of harm to protestors) and Ross v. U.S., 910 F.2d 1422, 1429-34 (7th Cir. 1990) (due process interest in life implicated where county officials prevented city officials from rescuing drowning boy, thereby affirmatively restricting source of aid).*

2.12. State another way, this exception is implicated when the state actors create the danger at issue or make the plaintiff more vulnerable to the dangers than she would have been had the officials not acted at all. *DeShaney, 489 U.S. at 201.* This standard requires you to find that defendants "affirmatively placed [Patricia] in a position of danger [that she] would not otherwise have been in." *Wells v. Walker, 852 F.2d 368, 370 (8th Cir. 1988).*

2.13. I caution you, however, that "in a state creation of risk situation, where the ultimate harm is caused by a third party [including by the plaintiff themselves],

you "must be careful to distinguish between conventional torts and constitutional violations, as well as between state inaction and action." *Rivera, 402 F.3d at 36 quoting Soto v. Flores, 103 F.3d 1056, 1064 (1st Cir. 1997).*

2.14. In applying this standard and evaluating "the "danger" in question – [that is, decedent's] exposure to a suicide attempt" -- you may consider whether such a "danger" existed prior to defendants' intervention. *Christiansen v. City of Tulsa, 332 F.3d 1270, 1281 (10th Cir. 2003); See also Sanford v. Stiles, 456 F.3d 298, 304 n. 4 (3rd Cir. 2006) (holding that a school guidance counselor was not liable to suicide victim under either the special relationship or state created danger exception).* If you find that the danger existed prior to the defendants' intervention than the "defendants cannot be liable under section 1983 for having "created" [decedent's] predicament," *id.* and you must return a verdict in favor of defendants.

2.15. If you find that either the "special relationship" or the state created danger exception applies you then must address whether, in light of these exceptions, the defendants' actions amount to a deprivation of Patricia's constitutional due process right. In order to succeed plaintiff must meet the "onerous requirement" of showing that the defendants' actions shock the conscience. *Rivera, 402 F.3d 27, 35-36 citing Hasenfus, 175 F.3d at 73 (In a state created danger case, state behavior must be "conscience-shocking or outrageous"); see also Coyne v. Cronin, 386 F.3d 280, 287-288 (1st Cir. 2004) (using "shocks the conscience" as a catch-all term encompassing a range of state actor behavior); Soto, 103 F.3d at 1064 ("Not every negligent, or even willfully reckless, state action that renders a*

*person more vulnerable to danger 'takes on the added character of [a] violation[] of the federal Constitution.'").*

2.16. In order to meet this standard, the defendants' "action must be so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience. Conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.*

2.17. I caution you that "[t]he Due Process clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property." *Daniels v. Williams, 474 U.S. 327, 328 (1986)*. Nor is the Due Process clause "a guarantee against incorrect or ill-advised [government] decisions,'" *Christiansen, 332 F.3d at 1282 (family challenged police officer's decision to quarantine suicidal individual in his apartment, including their instruction to psychologist not to contact him)*.

2.18. If you determine that the defendants actions not only fall within one of the exceptions described above and amount to conscious shocking behavior such to amount to a violation of Patricia's due process rights, you then must determine whether defendants' alleged unconstitutional conduct was the actual and proximate cause of Patricia's injury, that is her death. As noted, I will come back to the causation standard after I define the rest of the claims brought by plaintiff.

## 3. Qualified Immunity

3.1. I will now instruct you on the doctrine of qualified immunity. The doctrine of qualified immunity applies even if you find that the defendants violated either plaintiff's constitutional rights or infringed upon their state law rights.

3.2. Under the doctrine of qualified immunity, government officials, such as police officers, performing discretionary functions generally are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).*

3.3. The purpose behind granting officials such immunity is to allow the officers to perform their duties and act in areas where clearly established rights are not implicated "with independence and without fear of consequence." *Id. at 819.*

3.4. In determining whether the officers are entitled to immunity, their actions must be viewed from an objectively reasonable standpoint. The decisive question becomes whether another police officer, standing in the shoes of this defendant, would have concluded that his actions violated a clearly established statutory or constitutional right. *See Ricci v. Urso, 974 F.2d 5, 7 (1st Cir. 1992).*

3.5. A "reasonable, although mistaken, conclusion about the lawfulness of one's conduct does not subject a government official to personal liability." *Cookish v. Powell, 945 F.2d 441, 443 (1st Cir. 1991).*

3.6. That is because "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting' all but the plainly incompetent or those who

knowingly violate the law.'" Rivera v. Murphy, *979 F.2d 259, 263 (1st Cir. 1992) quoting* Hunter v. Bryant, *502 U.S. 224, 229 (1991)*.

3.7. Qualified immunity may exist even though in hindsight you might determine that the action of the official violated the constitution. *Berthiaume v. Caron, 142 F.3d 12, 15 (1st Cir. 1998) citing Harlow v. Fitzgerald, 457 U.S. 800, 814-15 (1982).* Thus, even if it should ultimately be determined that the defendants in fact violated the plaintiff's rights, if it was objectively reasonable for the defendants to conclude that their actions were lawful, they are entitled to qualified immunity.

3.8. If, after considering the scope of discretion and responsibility generally given to police officers in the performance of their duties, and after considering all of the surrounding circumstances of the case as they would have reasonably appeared at the time of the incident, you find from a preponderance of the evidence that plaintiff has proved either (1) that the officers were *plainly incompetent* or that (2) they *knowingly* violated the law, you must find for the plaintiff. If, however, you find that the officers had a reasonable belief that their actions did not violate the rights of the plaintiff, then you cannot find them liable even if the plaintiff's rights were in fact violated as a result of the officers objectively reasonable action.

## 4. STATE LAW NEGLIGENCE CLAIM FOR THE DEATH OF MS. FERREIRA – COUNT I OF C.A. NO. 05-73S

4.1. In addition to the constitutional claims, the instant case contains a state law wrongful death claim on behalf of Patricia Ferreira. Rhode Island's Wrongful Death Statute, *R.I.G.L. § 10-7-1 et. seq.*, basically gives the survivors of an individual the right to sue on behalf of the deceased individual to recover for the

negligent acts of individuals that may or may not have caused the decedent's death.

4.2. In the instant case, plaintiff alleges that the officers were negligent in two (2) respects: first when they allowed her to leave Mr. Sousa's apartment with her guns and second when they attempted to rescue her from her suicide attempt.

4.3. To prevail on either claim of negligence, "plaintiff must establish a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage." *Selwyn v. Ward, 879 A.2d 882, 886 (R.I. 2005) quoting Mills v. State Sales, Inc., 824 A.2d 461, 467-68 (R.I. 2003)*. I will explain each element for you as it relates to each claim of negligence.

4.4. First, with regard to the claim of negligence relating to retention of the weapons, the defendants owed Patricia a duty to exercise ordinary care in responding the complaint of the domestic disturbance between her and Mr. Sousa. This ordinary care, under state statute includes ascertaining whether the state law domestic abuse and assault laws have been violated and whether there is any basis to arrest and charge any individual for such violations.

4.5. In order to find defendants negligent for allowing Patricia to retain her weapons, you must first determine whether plaintiff has proven by a preponderance of the evidence that defendants breached that duty of care.

4.6. In making this determination you may first consider the fact that Patricia was properly licensed to own and carry her weapons.

4.7. You may also consider whether plaintiff has established a legally recognizable basis to support the officers confiscating Patricia's legally registered weapons. In so considering, I instruct you that individuals are protected under both the Federal and R.I. Constitution from unreasonable seizure of their property. Under such guarantees, the defendants must have possessed probable cause that the weapons had been or would be used in criminal activity in order to justify the confiscation of the weapons.

4.8. If you determine that the officers breached their duty of care to Patricia by failing to confiscate her weapons, you must then determine whether such breach of a duty was the actual and proximate cause of Patricia's death. This causation standard is the same for plaintiff's second negligence claim and thus I will explain it more fully below.

4.9. The second claim of negligence by plaintiff relates to the officers' actions at the scene of Patricia's suicide, including their attempted negotiations with her and eventual rescue attempt. As noted, plaintiff must first establish that defendants owed Patricia a duty of care. Whether a duty exists is for me to decide.

**The following jury instructions are offered if the Court should rule that defendants did not owe decedent a duty of care—**

4.10. I instruct you that based on applicable law, law enforcement officers responding to a crisis involving a person threatening suicide with a loaded firearm have no legal duty that exposes them to liability if their conduct failed to prevent the suicide from happening. *Adams v. City of Fremont, 68 Cal. App.4th 243, 80 Cal.*

*Rptr. 2d 196 (CA. 1st Appellate Dist., 1998). See also Munoz v. City of Union City, 120 Cal. App. 4th 1077 (CA, 2d Div. 2004).*

4.11. Because defendants did not owe Patricia a duty, you must enter judgment in favor of the defendants on plaintiff's wrongful death claim.

**The following jury instructions are offered if the Court should rule that defendants did owe decedent a duty of care—**

4.12. In addressing whether a defendants breached their duty of care, you must first determine whether defendants are entitled to protection from the instant suit by virtue of the public duty doctrine. The public duty doctrine under Rhode Island law is premised on the recognition that the duty owed by certain governmental officials, including police officers, is actually a duty to the public as a whole. *Orzechowski v. State, 485 A.2d 545, 549 (R.I. 1984)*. Because of this potential of unlimited individuals claiming a breach of duty based on a particular act, for example, all the individuals in the vicinity of Patricia's vehicle at the time of her suicide, the public duty doctrine embodies the recognition that certain governmental activities engaged in by employees and officers "must be free from the threat of potential litigation." *Barratt v. Burlingham, 412 A.2d 1219, 1220 (R.I. 1985)*.

4.13. This doctrine reflects the Rhode Island General Assembly's intent not "to impose liability upon the state for any and all acts or omissions of its employees and officers which might cause injury to persons." *Calhoun v. City of Providence, 120 R.I. 619, 625, 390 A.2d 350, 353 (1978)*.

4.14. However, there are exceptions to this doctrine. In particular, the Rhode Island Supreme Court has held that governmental officials may be liable for negligent conduct: "(1) when the governmental entity owes a 'special duty' to the plaintiff, (2) when the alleged act or omission on the part of the governmental entity was egregious, or (3) when the governmental entity engaged in activities normally undertaken by private individuals or corporations." *Schultz v. Foster-Glocester Reg'l Sch. Dist.,* *755 A.2d 153, 155 (R.I. 2000) (citations omitted).*

4.15. In this case, because the parties agree that the police officers were engaged in activities not normally undertaken by private individuals or corporations, only the first two (2) exception are applicable to the instant case. I will explain each.

4.16. In attempting to overcome the immunity afforded to the police officers under the egregious conduct exception to the public duty doctrine, it is not enough for a party to simply claim that the actions of the entity were "egregious." Rather, the Rhode Island Supreme Court has outlined specific standards that must be met.

4.17. More specifically, a governmental entity engages in "egregious conduct" when it "has knowledge that it has created a circumstance that forces an individual into a position of peril and subsequently chooses not to remedy the situation." *Houle v. Galloway School Lines, Inc., 643 A.2d 822, 826 (R.I.1994) quoting Verity v. Danti, 585 A.2d 65, 67 (R.I.1991).*

4.18. Thus, for the egregious conduct exception to apply, the following elements must be established:

(1) [T]he state, in undertaking a discretionary action or in maintaining or failing to maintain the product of a discretionary action, created

circumstances that forced a reasonably prudent person into a position of extreme peril;

(2) the state, through its employees or agents capable of abating the danger, had actual or constructive knowledge of the perilous circumstances; and

(3) the state, having been afforded a reasonable amount of time to eliminate the dangerous condition, failed to do so.

*Kashmanian v. Rongione, 712 A.2d 865, 868 (R.I. 1998) quoting Haley v. Town of Lincoln, 611 A.2d 845, 849 (R.I. 1992).*

4.19. The second exception, the special duty doctrine likewise has particular elements that must be met. Under Rhode Island law, the special duty exception is applicable when there is a special relationship, separate from the duty running to the general public, between the injured party and the governmental entity.

4.20. This standard requires the finding that:

"(1) one or more city officials had some form of prior contact with or other knowledge about [the injured] or [his] situation before the alleged negligent act * * * occurred;

(2) city officials thereafter took some action directed toward [the injured] or [his] interests or failed to act in some way that was potentially injurious to [the injured's] person or property; and

(3) [the] injury * * * was a reasonably foreseeable consequence of the city's action or inaction."

*Schultz, 755 A.2d at 155. See also Kuzniar v. Keach, 709 A.2d 1050, 1054 (1998) and Quality Court Condo. Assoc., 641 A.2d at 750.*

4.21. In the instant case, in first determining whether the officer's had contact with or knowledge of Patricia's situation before the alleged negligent act, I instruct you that responding to a citizen's call for assistance is "basic to police work and not 'special' to a particular individual." *Adams, 68 Ca. App. 4th at 279*.

4.22. If you conclude that either the special duty or egregious conduct exception applies, you must then determine whether defendants' actions amounted to negligence as a matter of law thus subjecting them to liability. As previously noted, this first requires you to find that the defendants breached a standard of care to Patricia.

4.23. If you find that the defendants breached a duty of care, you must then determine whether plaintiff has proven by a preponderance of evidence a causal relationship between the alleged negligent conduct and decedent's injury. *Selwyn, 879 A.2d at 886*. As I previously noted, this causation standard is the same for all of plaintiff's claim and thus I will come back to the causation standard after I define the rest of the claims brought by plaintiff.

**5. FAILURE TO TRAIN AND/OR SUPERVISE - § 1983**

5.1. Plaintiff has also brought a claim against the City and former Chief of Police Gary Dias for their alleged failure to train and supervise the officers involved in the incident with Patricia. I first caution you that plaintiff's failure to train and supervise cannot be premised on the conclusion that any of the individual officers violated Patricia's constitutional rights or were negligent in the actions. Rather, this is a separate claim with its own elements that must be met by plaintiff.

5.2. First, plaintiff alleges that the City and Chief Dias's alleged failure to train and supervise amounted to a deprivation of plaintiff's constitutional right in violation of §1983. The burden on plaintiff to demonstrate such a constitutional deprivation is high. In fact, the United States Supreme Court held that there are only "limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." <u>*City of Canton v. Harris*</u>, *489 U.S. 378, 387 (1989).*

5.3. In order to maintain a claim against a municipality under *§ 1983* for failure to train or supervise, the plaintiff must demonstrate by a preponderance of the evidence that (1) individual police officers violated Patricia's constitutional rights; (2) that this violation was due to a lack of training by municipal policy makers; (3) who are "deliberately indifferent" to the need for the training and 4) it was this lack of training that caused the constitutional violation. <u>*City of Canton v. Harris*</u>*, 489 U.S. 378, 387 (1989).*

5.4. As evident from what I just instructed you, if you found that the individual officers did not violate Patricia's constitutional rights then you must enter judgment in favor of the City and Chief Dias on the failure to train and supervise claim. <u>*City of Los Angeles v. Heller*</u>*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point");* <u>*Evans v. Avery*</u>*, 100 F.3d 1033, 1039-40 (1st Cir. 1996)(where individual officers did violate plaintiff's constitutional rights in the course of a high speed pursuit, the City*

*likewise could not be held liable for the alleged failure to monitor police pursuits and through its failure to supervise police officers involved in such pursuits).*

5.5. If however, you have found that any of the individual officers violated Patricia's constitutional rights you must then determine whether that violation was due to a lack of training by the City or Chief Dias.

5.6. The third element requires you to find by a preponderance of the evidence that the defendants were deliberately indifferent in their failure to train. In making this determination, I caution you that bad facts or a single outrageous event is insufficient. Rather, the Plaintiff must show an actual policy of inadequate training, where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, 489 U.S. at 390*. Thus, for liability to stem from failure to train, Plaintiff must also demonstrate that a municipality *deliberately* chose an inadequate training program. *Id. at 389*.

5.7. The "deliberate indifference" standard has been broken down into three elements:

(1) that a policymaker of the municipality knows to a moral certainty that its employees will confront a given situation;

(2) that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and

(3) that the wrong choice by the employee will frequently cause the deprivation of a citizen's constitutional rights.

*Smith v. Town of E. Haven, 2005 U.S. Dist. LEXIS 4544 (D. Conn. 2005) citing Nicholson v. Scoppetta, 344 F.3d 154, 166 (2d Cir. 2003) (citations omitted).*

5.8. Thus, absent any showing of previous harm arising from this training policy, or any evidence of deliberation on the police department's part, there will be no basis to support the conclusion that a municipality actually chose a policy with deliberate indifference toward the constitutional rights of individuals. *K v. City of S. Portland, 407 F. Supp. 2d 290, 297 (D. Me. 2006).*

5.9. Finally, as with all constitutional claims, plaintiff can only succeed on its failure to train claim under *§ 1983* if that failure is the cause or the "moving force" behind the underlying constitutional deprivation. *See City of Canton, 489 U.S. at 388*. A governmental entity "'is only liable when it can be fairly said that the city itself is the wrongdoer." *Collins v. City of Harker Heights, 503 U.S. 115, 122 (U.S. 1992)*. The Supreme Court has employed an "actual causation" standard in claims against a municipality for the negligent training and supervision of government officials under *42 U.S.C. § 1983*. *City of Canton, Ohio, 489 U.S. at 390*. That is, in order to maintain a *§ 1983* claim against a municipality, plaintiff must demonstrate that the claimed deficiency "actually causes injury." *Id.* The Supreme Court has described this burden as requiring a showing that "the identified deficiency in a city's training program . . . [is] closely related to the ultimate injury. . . Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?" *Id. at 391*.

5.10. As with plaintiff's other claims, the causation standard for determining whether the City's and Chief Dias's alleged failure to train caused Patricia's injury is a high standard that will be more fully described for you later. *Rodriguez-Cirilo v. Garcia, C.A. No. 96-1306 (1st Cir., June 2, 1997); Soto v. Carrasquillo, 878 F.Supp. 324, 331 (D. Puerto Rico 1995).*

**6. STATE LAW CLAIM FOR FAILURE TO TRAIN AND/OR SUPERVISE**

6.1 Rhode Island law also provide a cause of action for the negligent failure to train and/or supervise an employee. Under Rhode Island law, liability of an employer for negligent hiring and supervision "is premised on its failure to exercise reasonable care in selecting [and retaining] a person who the employer knew or should have known was unfit or incompetent for the employment, thereby exposing third parties to an unreasonable risk of harm." *Welsh Mfg., Div. of Textron, Inc. v. Pinkerton's Inc., 474 A.2d 436, 440 (R.I. 1984); Rivers v. Poisson, 761 A.2d 232, 235 (R.I. 2000).*

6.2 What constitutes reasonable care depends on the risk of harm inherent in the employment. *Rivers, 761 A.2d at 235*. "The greater the risk of harm, the higher degree of care necessary to constitute ordinary care." *Welsh, 474 A.2d at 440*. Of course, "[f]orseeability is still a critical factor in determining whether a party or institution is negligent when acts of its employees or agents causes harm to others. *Fontaine v. Town of Foster, 1999 R.I. Super. LEXIS 51 (R.I. Super. Ct. 1999).*

6.3 In addition, as with plaintiff's other claims, in order to succeed on her state law claim for negligent training and supervision, plaintiff must demonstrate that the negligent training and/or supervision was the actual and proximate cause of

Patricia's injury – that is, her death. As promised, I will now instruct you on causation.

**7. CAUSATION**

7.1. As I previously informed you, I will now instruct you the appropriate causation standard. As I noted, in the final analysis, in determining whether defendants are liable to decedent for either a civil rights violation or a state law negligence claim, you must determine by a preponderance of the evidence that the following causation standard has been met. The standard I'm about to define applies to all of plaintiff's claims, including the civil rights claims. *Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 561 (1st Cir. 1989)( "[i]nquiries into causation in section 1983 claims should refer to state law tort principles") citing Springer v. Seaman, 821 F.2d 871, 876-79 (1st Cir. 1987) ("inquiries into causation under § 1983 are cabined within common law tort principles") and Memphis Community School Dist. v. Stachura, 477 U.S. 299, 305-06 (1986) (noting that common-law principles control the issuance of damages under § 1983). See also Soto v. Carrasquillo, 878 F. Supp. 324, 331 (D.P.R. 1995).*

7.2. First, under R.I. law, it is well-settled that "no liability can attach unless defendant's negligence was proximate rather than a remote cause, of plaintiff's injury." *Mullaney v. Goldman, 398 A.2d 1133, 1136 (R.I. 1979).*

7.3. In cases in which the claimed damage is the death of the individual by suicide, a very strict standard is employed. The reason is that suicide, historically a felony, was deemed to be a criminal act that terminated any causal connection between a

defendant's negligence and the injury. *Clift v. Narragansett TV L.P., 688 A.2d 805, 810 (R.I. 1996)*.

7.4. Quite simply, "suicide" is defined as "the act or an instance of taking one's own life voluntarily and intentionally especially by a person of years of discretion." *Webster's Ninth New Collegiate Dictionary, 1984*

7.5. Thus, in the instant case, it is not enough for you to conclude that defendants breached their duty of care and/or violated Patricia's constitutional rights and that decedent died.

7.6. Rather, in order for you to find that the negligent or unconstitutional conduct caused Patricia's injury you must first find that the officers' conduct "(1) [brought] about delirium or insanity in [Patricia] and (2) if, while that condition of delirium or insanity continue[d] to exist, it prevent[ed] [Patricia] from realizing the nature of . . . her condition or [made] it impossible for . . . her to resist the suicidal impulse by depriving [her] of the capacity to reasonably control his or her conduct and not carry out the suicidal impulse." *Id.* *See also, Restatement (Second) Torts § 455 (1965).* This has been called the "uncontrollable impulse" rule.

7.7. I instruct you that the typical cases of uncontrollable impulse "involve the infliction of severe physical injury, or, in rare cases, the intentional infliction of severe mental or emotional injury through wrongful accusations, false arrest or torture." *Id. (citations omitted)*.

7.8. In reaching this issue, I instruct you that you may not speculate or use conjecture to determine that the officers' actions brought about an incontrollable impulse

resulting in Patricia's suicide. Rather, there must be competent expert testimony by plaintiff to support of this causal connection. *Estate of Joshua T. v. New Hampshire, 840 A.2d 768, 772 (N.H. 2003); In the Matter of the Claim of Nancy Musa, 276 A.D.2d 851, 852, 714 NYS 2d 545, 547 (NY 2000).* I will instruct you later on expert testimony but I caution you now that the expert testimony also must not rely upon speculation or conjecture as to the cause of Patricia's suicide and/or whether it could have been prevented.

**ANTHONY FERREIRA CLAIMS – C.A. NO. 05-75S**

In this case, Plaintiff Anthony Ferreira seeks to maintain his own independent claims for the officers' alleged mistreatment of him on the day of his sister's suicide. Plaintiff specifically cites causes of action for false arrest, assault and battery and excessive force under both state law and in violation of his constitutional rights.

**8. FALSE ARREST - COUNTS IV, V AND VI OF COMPLAINT, C.A. NO. 05-75S**

8.1. With regard to Anthony's false arrest claim, it is first noteworthy that even though the police officers eventually chose not to charge Anthony with a criminal offense, the facts that no charges were brought is irrelevant to your deliberations. That is because an individual's ultimate guilt or innocence on an underlying charge is irrelevant to a false arrest claim. Moreover, "police officers who suspect criminal activity [can] make limited intrusions on an individual's personal security based on less than probable cause." *Michigan v. Summers, 452 U.S. 692, 698 (1981).*

8.2. Thus, an officer who possesses reasonable, articulable suspicion of criminal activity is justified in detaining an individual to confirm or dispel this suspicion. *U.S. v. Young, 105 F.3d 1, 6 (1st Cir. 1997). Rivera v. Murphy, 979 F.2d 259, 264 (1st Cir. 1992).*

8.3. Whether a reasonable suspicion exists is treated as an objective inquiry: "the actual motive or thought process of the officer is not plumbed". *Whren v. United States, 517 U.S. 806, 813, 135 L. Ed. 2d 89, 116 S. Ct. 1769 (1996).* So the only pertinent "facts" are the information available to the officer at the time of the detainment. *Bolton v. Taylor, 367 F.3d 5, 7 (1st Cir. 2004).*

**While defendants submit that they need only establish reasonable suspicion to justify plaintiff's detention, defendants alternatively submit the following instructions on probable cause—**

8.4. In order to succeed on his claim of a Fourth Amendment, false arrest violation, plaintiff must demonstrate that it was clear at the time of the arrest that there was no probable cause for such arrest. *Valente v. Wallace, 332 F.3d 30, 32 (1st Cir. 2003) citing Beck v. Ohio, 379 U.S. 89, 91 (1964) (the Fourth Amendment requires that arrests be based on probable cause).*

8.5. Similarly, the elements of a state law false arrest claim require the plaintiff to show "more than (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Rhode Island also requires a showing that the detention was "without legal justification." *Dyson v.*

*Pawtucket et al., 670 A.2d 233, 239 (R.I. 1996), cert. denied, 517 U.S. 1192 (1996).*

8.6. If an officer has probable cause to effectuate an arrest, there is legal justification for the arrest and plaintiff cannot succeed on a false arrest claim. *Winn v. Collins, 723 A.2d 798, 799 (R.I. 1998), citing Dyson, 670 A.2d at 239.*

8.7. "[P]robable cause exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a man of reasonable caution and prudence in the belief that the defendant is committing or has committed a crime." *Floyd v. Farrell, 765 F.2d 1, 5 (1st Cir. 1985). See also Beck, 379 U.S. at 96.*

8.8. This standard encompasses a "non-technical" analysis that requires examination of "the totality of the circumstances" known to the officer. *Rodriques v. Furtado, 950 F.2d 805, 816 n.7 (1st Cir. 1991) citing Illinois v. Gates, 462 U.S. 213, 230-31 (1983).* "[T]he Supreme Court has told us that probable cause means more than "bare suspicion" but less that what would be needed to "justify ... conviction." *Valente, 332 F.3d at 32 quoting Brinegar v. United States, 338 U.S. 160, 175 (1949).*

8.9. Therefore, "probable cause need not be tantamount to proof beyond a reasonable doubt.... Probability is the touchstone." *U.S. v. Grant, 218 F.3d 72, 75 (1st Cir. 2000) quoting U.S. v. Khounsavanh, 113 F.3d 279, 283 (1st Cir. 1997).*

8.10. "The probable cause standard does not require the officers' conclusion to be ironclad, or even highly probable. Their conclusion that probable cause exists

need only be reasonable." U.S. v. Winchenbach, *197 F.3d 548, 556 (1st Cir. 1999).*

8.11. In light of the fact that the probable cause standard is determined at the time of the arrest, based on the information available to the police officer and need not amount to an ironclad conclusion that the individual is guilty, the plaintiff's ultimate determination of guilt or innocence is irrelevant to the determination of whether there was probable cause to arrest. Accordingly, I instruct you that in the instant case, the decision not to charge plaintiff with a crime has no impact on whether there was sufficient probable cause to arrest him.

8.12. I also instruct you that in a suicide situation, police officers possess the right to refrain third parties from attempting to assist in the rescue for the personal safety of the individual, for the safety of the officers, and for the safety of the suicidal individual. *Cf.* Andrews v. Wilkins, *934 F.2d 1267, 1271 (D.C. Cir. 1991) (concluding that "police were entitled, if not obliged, to prevent [a third party] from endangering her life [by attempting to aid] in the course of a police rescue effort");* Christiansen v. City of Tulsa, *332 F.3d 1270, 1283 (10th Cir. 2003)(manifestly reasonable to restrain suicide victim's family from entering the apartment and thus potentially being put in harms way); Compare* City of Simi Valley v. Superior Court of Ventura County, *111 Cal. App. 4th 1077, 1085, 4 Cal. Rptr. 3d 468, 474 (CA 2003)* . "[P]olice officers providing assistance at the scene of a threatened suicide must concern themselves with more than simply the safety of the suicidal person. Protection of the physical safety of the police officers and

other third parties is paramount." Adams v. City of Fremont, *68 Cal. App. 4th 243, 278 (CA, 1st Appellate Dist., 1998)*.

**9. EXCESSIVE FORCE AND ASSAULT AND BATTERY**

9.1. Rhode Island law states that battery is "an act that was intended to cause, and does cause, and offensive contact with or unconsented touching of or trauma upon the body of another, thereby generally resulting in the consummation of the assault." *Fenwick v. Oberman, 847 A.2d 852, 855 (R.I. 2004) quoting Profitt v. Ricci, 463 A.2d 514, 517 (R.I. 1983)*.

9.2. A claim for assault requires plaintiff to prove that he was placed in apprehension of imminent harmful or offensive contact. *Restatement (Second) of Torts, § 24.* This is a subjective standard that requires a plaintiff to be aware of imminent contact and suffer apprehension at the possibility of such contact. *Restatement (Second) of Torts, § 27.*

9.3. However, I instruct you that a police officer may use a reasonable amount of force to subdue an individual even if the officer is not acting in self-defense. An officer who makes an arrest, or has made an arrest, is justified in using such force as is necessary to secure and detain the offender, overcome his resistance, prevent his escape, and recapture him if he escapes. *Sheehan v. West, 27 R.I. 84 (1905).* "[W]here appropriate, a police officer making an arrest has "'the right to use some degree of physical coercion or threat thereof to effect it.'" *Jennings v. Pare, 2005 U.S. Dist. LEXIS 18214, 15-16 (D.R.I. 2005) citations omitted.*

9.4. A claim for excessive force claims under *§ 1983* meanwhile requires the plaintiff to show: (1) a significant injury; (2) resulting directly and only from the use of

force that was clearly excessive to the need, and (3) the excessiveness of the force was objectively unreasonable. Reese v. Anderson, *926 F.2d 494, 500 (5th Cir. 1991).*

9.5. Plaintiff's claim that the officers used excessive force in the course of making an arrest is subject to the objective reasonableness standard governing the Fourth Amendment. *Graham v. Connor, 490 U.S. 386, 388 (1989).*

9.6. The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight. When judging reasonableness, it must be factored in that "police officers are often forced to make split second judgments in circumstances that are tense, uncertain, and rapidly evolving, about the amount of force that is necessary in a particular situation." *Id. at 396.*

9.7. In addition, this standard allows for evidence of what is known to the police officer at the time the force is applied. The knowledge of the police officer forms part of the "facts and circumstances attendant to the decision to use the particular degree of force." *See Senra v. Cunningham, 9 F.3d 168 (1st Cir. 1993).*

9.8. To show that the police used excessive force in violation of the Fourth Amendment, plaintiff "must demonstrate that the police defendant[s'] actions were not objectively reasonable, viewed in light of the facts and circumstances confronting [them] without regard to [their] underlying intent or motivation." *Bastien v. Goddard, 279 F.3d 10, 14 (1st Cir. 2002).*

9.9. "The relevant circumstances include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and

whether he is actively resisting arrest or attempting to evade arrest by flight.'" Id. *(quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).*

9.10. The distinction between excessive force and permissible force turns on whether the level of force used was reasonable and the test is whether, under the circumstances confronting the defendant at the time that he acted, "no objectively reasonable officer would have used" the same degree of force. *Isom v. Town of Warren, 360 F.3d 7, 12 (1st Cir. 2004); Napier v. Town of Windham, 187 F.3d 177, 183 (1st Cir. 1999) ("'The relevant inquiry [in excessive force cases] is whether no reasonable officer could have made the same choice under the circumstances.'" (internal quotation omitted)).*

9.11. In addressing plaintiff's excessive force, assault and battery claim you may also consider the fact that police officers may be justified in restraining an individual who may be put at risk by a third party's actions. *Christiansen v. City of Tulsa, 332 F.3d 1270, 1283 (10th Cir. 2003) citing Andrews v. Wilkins, 934 F.2d 1267, 1271 (D.C. Cir. 1991) (concluding that "police were entitled, if not obliged, to prevent [a third party] from endangering her life [by attempting to aid] in the course of a police rescue effort").*

## 10. QUALIFIED IMMUNITY

10.1. I also instruct that similar to qualified immunity in defense of Patricia Ferreira's claims, defendants may also be entitled to qualified immunity from Anthony Ferreira's claims. As I previously instructed you, qualified immunity may protect the officers from Anthony's false arrest, assault and battery and excessive force claims, *Hatch v. Town of Middletown, 311 F.3d 83, 89 (1st Cir. 2002) (Rhode*

*Island's high court has "left little doubt that the [qualified immunity] defense exists for state officers under certain circumstances"),* if you find that a reasonable officer, standing in the shoes of these officers would not believe that their actions amounted to a violation of plaintiff's rights, or stated another way, that there is no objective basis for the officers to believe that the level of force they exercised was needed to effectuate the arrest of plaintiff.

**11. WITNESS TESTIMONY**

11.1. The interest or lack of interest of any witness in the outcome of this case, the bias or prejudice of a witness, if there be any, the age, the appearance, the manner in which the witness gives testimony on the stand, the opportunity that the witness had to observe the facts concerning which he/she testified, the probability or improbability of the witness' testimony when viewed in light of all the other evidence in the case, all may be taken into consideration in determining the weight, if any, you will give the witnesses testimony. Consider also any relation each witness may have to either side of this case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness's testimony is either supported or contradicted by other evidence in this case.

11.2. Where the testimony of one witness on a specific item of evidence is contradicted directly by the testimony of another witness and there is no other witness testifying on such item, you are not required to therefore consider the evidence evenly balanced or the item not proved. In such a situation, you may determine which of the two witnesses you believe on the basis of all the surrounding facts

and circumstances proved at trial, and, you may believe one witness rather than the other if you believe the facts and circumstances warrant it.

11.3. "It is [well settled] that an expert, no matter how good his credentials, is not permitted to speculate." *Christiansen v. City of Tulsa, 332 F.3d 1270, 1283 (2003).*

**12. DAMAGES**

12.1. If you should find for the plaintiff and against the defendant, then you must decide the issue of damages.

12.2. Plaintiff cannot seek to have damages awarded on the basis of the importance of the rights violated. The plaintiff must prove actual damages. *Memphis Community School District v. Statura, 106 S.Ct. 2537 (1987).*

12.3. Plaintiff should be compensated for all damages proximately resulting from the negligence of the defendant. Plaintiff's damages must be supported by competent evidence. Mere conjecture or speculation cannot be relied upon to establish such causal connection. Rather, plaintiffs must provide competent proof of the connection between the negligent action and the injury received. *Evans v. Liguori, 374 A.2d 774, 777 (R.I.1977).*

**13. BURDEN OF PROOF**

13.1. This is a civil case. The plaintiff therefore has the burden of proving his case by a preponderance of the evidence. That means that the plaintiff has to produce evidence which, considered in the light of all the facts, leads you to believe that what plaintiff claims is more likely true than not. The ultimate burden of proof in this case, on all issues, rests with plaintiff. *Douglas v. Sylvia, 55 R.I. 260.*

Defendants,
By their attorney,

*/s/ Marc DeSisto*

Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
Phone: (401) 272-4442
Fax: (401) 272-9937
Email: marc@desistolaw.com

CERTIFICATION

I hereby certify that the within document has been electronically filed with the Court and is available for viewing and downloading from the ECF system.

*/s/ Marc DeSisto*

Marc DeSisto