— EXHIBIT B —

East Providence Police Department
Headquarters
750 Waterman Ave
East Providence, Rhode Island 02914
401-435-7600

Gary P. Dias
Chief of Police

| | | | |
|---|---|---|---|
| **General Order #** | **Effective Date** | **Section #** | **Issuing Date** |
| 2000-43 | March 6, 2000 | 330.06 | March 6, 2000 |

**Subject Title**
Suicidal/Mentally Ill Persons

**Subject Area**
Law Enforcement Operations

**References**

**Special Instructions**

**Distribution**
All

**Re-evaluation Date**
March 6, 2001

**Pages**
3

Per Order of:

Gary P. Dias
Gary P. Dias
Chief of Police

## 1.1 PURPOSE

It is the purpose of this policy to establish procedures for officers to follow when responding to calls for service regarding suicidal/mentally ill persons.

## 1.2 POLICY

Often times, police officers, due to the dynamic nature of their role, may be called to intervene in suicide or mental illness crisis situations. Since these situations can be volatile, escalate, and erupt into grave circumstances, interaction with individuals in such a state requires a tactful and sensitive approach. The main goal is to get psychiatric assistance for the subject, if needed, and in the safest manner possible.

The East Providence Police Department has established procedural guidelines for officers to follow in order to perpetuate this main goal. Officers shall adhere to these procedures at all times.

## 1.3 CONSIDERATIONS

A. Police officers most commonly encounter suicidal/mentally ill persons in a state of depression, manic depression (also known as bipolar disorder), and/or psychosis (delusions, hallucinations). All of these mental/emotional states can place an individual into a position where he/she believes that suicide is the easiest way of curing their problem/condition.

1. This presents a large realm of considerations for the responding police officer due to the extremely serious nature of so-called "Suicide By Cop" incidents.

2. Substance use/abuse can intensify an individual's illness/condition.

B. When possible, an officer should gather as much data on the individual as he/she can obtain.

1. Family members and/or friends may be able to provide such information, as well as any mental health treatment personnel who may have exact knowledge of the individual's behavior history.

2. It is important to note that police (particularly several officers) responding to a call for service or making a field contact involving a suicidal/mentally ill person may invoke a "fight or flight" response in the person. Mentally ill persons can lose their ability to reason or use logic. This is especially true of persons that are psychotic. The individual may not know that you are there to help them, only to hurt them. This may cause the individual to react violently.

3. Persons experiencing mental illness/suicidal thoughts may exhibit enormous amounts of physical strength related to their illness/condition.

4. **It is a priority for an officer to ascertain if the individual either possesses or otherwise has access to weapons when the officer has determined that the individual is mentally ill, in crisis, or is suicidal.**

## 1.4 PROCEDURES FOR CONTACT WITH MENTALLY ILL PERSONS

A. When a call for service arises involving a mentally ill person, a minimum of two officers shall be sent to the call for service. If the contact is initiated by an officer in the field, the officer will request a back-up unit once he/she has determined that the individual may be mentally ill

1. Once on scene, the officer(s) can determine if more officers are needed and radio the Central Communications Dispatcher to request additional units.

2. One officer shall establish contact with the individual in order to establish a consistent rapport and to avoid confusing the individual. One other officer will quietly remain as a cover officer. Other officers on scene (if necessary) will gather data from other persons on scene that may have significant information regarding the ill individual.

B. Officers will ascertain the problem and observe the individual for outward signs of mental illness that indicate that the person may be a danger to himself/herself or others.

C. If psychiatric evaluation has been decided as the proper course of action, the contact officer (or the officer with whom the person has apparently established a good rapport) will attempt to obtain voluntary compliance with the individual.

1. Voluntary compliance to be transported to a psychiatric treatment facility is a desired goal, but not a necessity.

2. Officers shall ascertain as to whether or not the individual is currently being treated at a mental health facility and/or is under the care of a psychiatric doctor.

a. Officers should contact the care provider and advise him/her of the current situation involving their patient.

b. The provider may be able to make specific arrangements for the person's treatment, with the assistance of police.

D. Whether the person is transported voluntarily or involuntarily, the person shall be handcuffed and transport the person to headquarters consistent with the Prisoner Transport Policy and the In-Custody Death Syndrome Awareness Policy. Personnel from East Bay Mental Health Center will be contacted in order to respond to the station and evaluate the individual.

1. Upon arrival at headquarters, officers shall escort the subject to the report room or interview room and await East Bay Mental Health Center personnel. Officers will remain with the person and maintain custody.

2. If the subject becomes so violent as to require the use of harsh or extreme means of restraint, officers shall transport the person to Rhode Island Hospital for proper restraint and medical clearance for psychiatric evaluation. East Bay Mental Health Center personnel (or other appropriate agency) will then respond to the hospital to conduct the evaluation.

3. Mental health evaluation personnel shall determine the proper course of action/treatment for the person.

E. The assigned officer will complete a crime investigation report detailing the incident and any other reports that are required and/or necessary.

## 1.5 PROCEDURES FOR RESPONSE TO SUICIDES AND ATTEMPTED/THREATENED SUICIDES

A. Officers who respond to the scene of a reported suicide shall treat the location as a homicide scene and shall adhere to guidelines set forth regarding crime scene control and preservation. The Supervisory Officer will respond to the scene and shall institute Detective callback protocol. Officers shall follow guidelines for Sudden Death scenes and notification of Medical Examiner unless otherwise directed by his/her Supervisory Officer.

B. Officers who respond to the scene of an attempted suicide shall immediately summon the Fire/Rescue personnel for any necessary medical treatment. A Supervisory Officer will also respond to the scene, if available. If medical treatment is necessary and the person is exhibiting

violent behavior, an officer shall accompany rescue personnel in the rescue vehicle as needed. A psychiatric evaluation will be conducted at RI Hospital by East Bay Mental Health personnel or personnel from another appropriate agency.

C. If officers determine that the suicide attempt has been made, they shall observe guidelines for preservation and control of the crime scene and inform a Supervisory Officer. Detective Division callback protocol shall be instituted to ensure a proper investigation is implemented in the likelihood of the individual's death.

D. Response to a Threat of Suicide

1. Upon response to the scene of a threat of suicide, the issue of **primary importance** is whether or not the subject has **ANY weapon.**

2. Should officers come upon a subject who is brandishing a weapon or a firearm against himself/herself, it is critical that officers remember that the subject can turn that weapon against the officer(s) at any time. Proper tactical response must be implemented at this time. An officer's weapon shall be drawn in the event that the weapon is turned against the officers.

3. Officers shall talk the subject into compliance and seize the subject's weapon. **Again, officer safety is of primary importance.**

4. If the subject has no weapon or has relinquished the weapon to officers on scene and has complied, officers will adhere to the proper procedures for transport and evaluation/treatment of mentally ill/suicidal persons based on the circumstances of the incident and the condition of the individual.

E. In the event that a suicide attempt or threat does not require medical treatment or transport, officers shall take the individual into protective custody.

1. Officers shall handcuff the individual.

2. The individual will then be transported to headquarters consistent with the Prisoner Transport Policy and the ICDS Awareness Policy.

3. If the individual becomes so violent as to warrant the use of harsh or extreme means of restraint, the officers shall transport the subject to Rhode Island Hospital or similar facility so that the individual can be properly restrained and medically cleared for psychiatrically evaluation.

4. Upon arrival at headquarters, officers shall escort the individual to an interview room or police report room. East Bay Mental Health Center personnel will be contacted and shall respond to the station to conduct the psychiatric evaluation. Officers shall remain with the subject and maintain custody.

5. Mental health evaluation/treatment personnel shall decide the proper treatment or course of action for the individual.

F. The assigned officer will complete a Crime Investigation Report and any other required reports.