**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **ANTHONY J. FERREIRA, in both his capacity as Administrator of the Estate of Patricia J. Ferreira and as guardian of the estate and person of Ryan C. Ferreira,** <br> **Plaintiff,** <br><br> **v.** <br><br> **CITY OF EAST PROVIDENCE, by and through its Treasurer, KEVIN J. FITZGERALD, et al.,** <br> **Defendants** | : | **C.A. No. 05-73S (consolidated)** |
| **ANTHONY J. FERREIRA,** <br> **Plaintiff,** <br><br> **v.** <br><br> **CITY OF EAST PROVIDENCE, by and through its Treasurer, KEVIN J. FITZGERALD, et al.,** <br> **Defendants** | : | |

## PLAINTIFF'S PRETRIAL MEMORANDUM

## I. Evidence Supporting Plaintiff's Claims

### A. Introduction

The within cause of action is a consolidated case. The Plaintiff filed the first action in his capacity as Administrator of the Estate of Patricia J. Ferreira and as the Guardian of the Estate of Ryan Ferreira as a result of the acts and/or omissions of Defendants that resulted in the death of Patricia J. Ferreira in violation of the Fourth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. §1983, Article I, §6 of the Rhode Island Constitution, and at common law. The other action was brought by the Plaintiff in his individual capacity where he is seeking relief for injuries he suffered as a result of acts and/or omissions committed by

Defendants in violation of the Fourth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. §1983, Article I, §6 of the Rhode Island Constitution, and at common law.

**B. Incident**

**1. 64 Brightridge Avenue**

On the afternoon of October 11, 2001, Ms. Ferreira and John Sousa ("Sousa"), Ms. Ferreira's boyfriend, had a heated argument at Sousa's home located at 64 Brightridge Avenue, East Providence, Rhode Island. Due to her concern for her son, Ryan Ferreira's well-being, Ms. Ferreira directed Ryan to go to his grandmother's house a short distance away at 44 Brightridge Avenue. When Ryan arrived at Beverly Ferreira's ("Mrs. Ferreira") home, he told her that his mother was engaged in a heated argument and that Ms. Ferreira had told him to leave the house for his safety.

At approximately 4:45 p.m., Mrs. Ferreira and the Plaintiff, Anthony J. Ferreira ("Mr. Ferreira"), traveled to the East Providence Police Department ("Department") with Ryan to meet with Defendant Barlow to discuss their concerns regarding Ms. Ferreira and Sousa. Defendant Barlow was advised that a heated argument had occurred with items being thrown inside the house, resulting in Ryan leaving the home due to safety concerns, that Sousa had thrown Ryan's clothes onto the lawn, that Ryan and Ms. Ferreira were ordered to move out by Sousa, and that Ms. Ferreira was receiving counseling and on medication for a psychological disorder. Defendant Barlow then met alone with Ryan. Due to his discussion with the Ferreiras, Defendant Barlow advised them that he was concerned with Ryan's well-being and would contact DCYF, and, would also have officers report to Sousa's home to investigate whether a domestic violence incident had occurred. According to Mr. Ferreira, Defendant Barlow then

advised the responding officers—Defendants Tiernan and David—that if there was evidence of a crime an arrest was to be made, "because both of them or one of them is going to jail tonight."

Defendants Tiernan and David then traveled to Sousa's home. Over a forty (40) minute period, Defendants David and Tiernan spoke with Sousa and Ms. Ferreira and determined that no grounds for an arrest existed. During this time period, the officers learned that Ms. Ferreira and Sousa were terminating their relationship and that Ms. Ferreira and Ryan were being forced to vacate Sousa's home.

Defendant David described both parties as being "upset" and "angry." He also testified that Sousa and Ms. Ferreira had a "volatile" relationship. Conversely, Defendant Tiernan described both parties as "calm," but acknowledged Ms. Ferreira appeared "emotionally distraught." While Defendants David and Tiernan were on scene, Defendant Rush responded to Sousa's home to oversee the investigation. Rush testified that both parties were "angry."[1] Ms. Ferreira, in Rush's presence stated that "her life was a mess." Defendant Rush cleared the scene within minutes of arriving, leaving Defendants Tiernan and David.

Defendants David, Tiernan and Rush testified that Barlow did not report to them that Ryan had stated that Sousa and Ms. Ferreira had been throwing items during the confrontation, or that Ryan was directed to leave Sousa's home for his safety, or that Ms. Ferreira was receiving psychological treatment,[2] or that Defendant Barlow was contacting DCYF due to his concerns for Ryan's safety.

[1] As referenced earlier, the Department was familiar with Ms. Ferreira primarily due to relationships that she had with men that turned sour. Defendant Tiernan testified that he had responded to approximately 50 calls for service that involved Ms. Ferreira, Defendant Rush knew Ms. Ferreira for "years" and had refereed arguments between her and Sousa in the past, and Defendant David had responded to 10-15 calls involving Ms. Ferreira prior to October 10, 2001. It is also noteworthy that Ms. Ferreira had had a relationship with a former reserve officer in the Department who was later investigated by the Department for stalking Ms. Ferreira. Ms. Ferreira had assisted Defendant Barlow in the investigation.

[2] Defendant Tiernan testified that he had heard "rumors" that Ms. Ferreira was on medication due to mental health issues.

Ms. Ferreira spent time in the presence of the officers placing clothes for her and Ryan in bags to take with her. According to Defendants Tiernan and David, she also stated in their presence that she wanted to take her guns—a .38 caliber revolver and a 9mm handgun—with her.[3] Sousa and another party who was present, Sousa's ex-wife, Irene Sousa a/k/a Alexandra Walmsley, both testified at their depositions that they informed the officers that Ms. Ferreira was mentally unstable and that they should not let her leave with her firearms.[4]

**2. Birchard Street**

At approximately 6:00 p.m., within minutes after leaving Sousa's home, Ms. Ferreira arrived at her mother's home[5] at the corner of Brightridge Avenue and Birchard Street in East Providence to leave the clothes for Ryan. As she approached her mother's home, Mr. Ferreira was standing outside the house alongside Birchard Street. Ms. Ferreira stated to him that "DCYF was coming" and that she and Sousa were in "trouble" and going to "jail." In response, Mr. Ferreira assured her that everything would be alright. Ms. Walmsley then arrived and handed Ms. Ferreira a note with her address and telephone number. Ms. Ferreira then suddenly stated that she was going to "kill herself." Ms. Ferreira then took her guns from the trunk and entered her vehicle. Mr. Ferreira again assured his sister that everything would be fine. Mr. Ferreira then took the .38 caliber gun from Ms. Ferreira and placed it in a basket alongside his house. Ms. Ferreira then slowly drove up Birchard towards Fenmoor Street before stopping her vehicle.

---

[3] Defendants Rush, David, Tiernan and Barlow as well as other members of the Department were aware that Ms. Ferreira possessed deadly weapons.

[4] Defendants David and Tiernan, as well as other parties to this litigation, have testified that if Defendant Barlow had shared with them the information he had learned from Mr. Ferreira, Mrs. Ferreira and Ryan, they would have taken the guns for safekeeping.

[5] Darlene Anctil (Ms. Ferreira's sister) and Mr. Ferreira also lived at this address.

Mr. Ferreira then asked his other sister, Ms. Anctil, to give him a telephone to call 911. Mr. Ferreira advised a Department dispatcher that his sister was suicidal and that he had seized one of her guns. In response, dispatch broadcast a Code 1 (lights and sirens) regarding a threat of suicide on Birchard Street.

Before the police arrived, Mr. Ferreira approached Ms. Ferreira's vehicle and assured her that she and Ryan would be fine and that he would provide assistance to her.

Defendants Rush, Hall, Tiernan, David, Feeney as well as other Department members then arrived and immediately established a perimeter around Ms. Ferreira's motor vehicle and took positions of cover while Mr. Ferreira was standing alongside the driver's side of his sister's vehicle and she remained in the vehicle.

With a number of officers aiming their weapons at Ms. Ferreira's vehicle, Mr. Ferreira was ordered to step away from the vehicle or he "would be shot." Ms. Ferreira then placed her hands on the steering wheel. Due to his fear for his sister's safety, Mr. Ferreira then leaned onto the windshield. Defendant Hall then ordered Mr. Ferreira to get away from the vehicle and as he did, Mr. Ferreira was sprayed with pepper spray by Defendant Hall before he was forcibly restrained by Defendants Hall and David. While he was restrained, Mr. Ferreira alleges that he was repeatedly sprayed with pepper spray, each time he mentioned that Ms. Ferreira had another gun in her vehicle.[6]

At this juncture, Feeney attempted to enter Ms. Ferreira's vehicle, but the doors were locked. Sousa then arrived at the scene, broke through the perimeter and attempted to open Ms. Ferreira's car door. Sousa and several officers then had a physical confrontation before Sousa was taken into custody.

[6] The officers have testified that prior to his arrest, they believed that Mr. Ferreira may have possessed a firearm.

Defendant Hall then attempted to break the windows of Ms. Ferreira's vehicle as she drove through the perimeter. His efforts failed. Ms. Ferreira, followed by the police, then drove from Fenmoor to Warren Avenue, to Pawtucket Avenue, to Intervale, before stopping at the intersection of Intervale and Brightridge due to a roadblock established by the Department.

**3. Brightridge and Intervale**

Again, the Department established a perimeter with a number of officers in positions of cover surrounding Ms. Ferreira's motor vehicle. Defendant Rush was initially responsible for directing the evacuation of nearby homes, controlling traffic and keeping onlookers away from the scene. He then ordered Defendant Feeney to bring the Special Response Team ("SRT") van to the scene to access equipment as needed.

Defendants Hall and Barlow then engaged in conversation with Ms. Ferreira over the course of the next 90 minutes wherein they asked her to put the gun down and exit her vehicle.

At some point, Defendant McGregor, head of the SRT unit, devised a plan that called for SWAT tactics to remove Ms. Ferreira by force if attempts to convince her to exit the car continued to be unsuccessful. The plan called for two (2) officers from the SRT, Defendants Rush and McGregor, to throw flash bang devices at the car—one to the driver's side front wheel and the other would be thrown at the front passenger window, which would break from the force of impact from the flash bang. With Defendants Rush and David behind a bunker on either side of the vehicle's front doors after the flash bangs detonated, Defendant Feeney (also a member of the SRT) would apply a Haligan breaching tool to the driver's side window, and after breaking the window, he would reach in to seize the gun from Ms. Ferreira. At the same time, Defendant David would reach in from the passenger side front door and attempt to seize either Ms. Ferreira or the gun.

At Defendant Barlow's signal, the flash bangs were thrown at the car. The device Defendant Rush threw landed where planned; Defendant McGregor's bounced off the window and detonated away from the car. Just after or as the flash bangs detonated, the team immediately stormed Ms. Ferreira's vehicle. Defendant McGregor then attempted to break the passenger side window with the butt of his service weapon while Defendant David observed Ms. Ferreira in a state of "shock" and "fear." At the same time, Defendant Feeney swung the Haligan tool at the driver's side window several times until it broke. He testified that he then reached into the car, and had his hands around Ms. Ferreira's head when her 9mm discharged, mortally wounding her. As the gun fired, Defendant Feeney fell back to the ground, believing that he had been shot. Ms. Ferreira was then transported to Rhode Island Hospital where she was pronounced dead.

On October 11, 2001, Mr. Ferreira was transported from Rhode Island Hospital, where he was treated for injuries related to his seizure, to the Department to be processed for charges of obstruction of an officer in execution of duty and resisting arrest. Once at the Department, Enos informed Mr. Ferreira that the charges would be dropped. Enos then requested that Mr. Ferreira surrender to the Department, for a period of 60 days, any firearms that he owned. Mr. Ferreira complied with the request.

## II. Law Supporting Plaintiff's Claims as Administrator of the Estate of Patricia J. Ferreira and Guardian of the Estate and Person of Ryan C. Ferreira

### A. Claims under 42 U.S.C. §1983

#### 1. Introduction

The Plaintiff intends to establish sufficient facts at trial from which a finder of fact may reasonably conclude that Defendants Dias, Barlow, Hall, David, Feeney, Tiernan, McGregor and Rush, acting under the color of state law, by their individual and concerted acts and/or omissions,

caused Ms. Ferreira to be illegally seized in derogation of her right to be free from unreasonable seizures and caused her to be deprived of life without due process of law in derogation of her constitutional rights and, in so doing, violated Ms. Ferreira's rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. §1983. Tennessee v. Garner, 471 U.S. 1 (1985); Graham v. Connor, 490 U.S. 386 (1989); Calero-Colon v. Betancourt-Lebron, 68 F.3d 1 (1st Cir. 1995); Gaudreault v. Municipality of Salem, Mass., 923 F.3d 203 (1st Cir. 1990); Ruiz v. Gonzalez Caraballo, 929 F.2d 31 (1st Cir. 1991). The Plaintiff also intends to establish sufficient facts at trial to support a finding that Defendants City and Dias failed to properly train, supervise, or instruct officers in the City Police Department, including Defendants Barlow, Hall, David, Feeney, Tiernan, McGregor and Rush, relative to proper police procedures, practices and/or policies, resulting in a violation of Ms. Ferreira's rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. §1983. Monell v. Department of Social Services, 436 U.S. 658 (1978); City of Canton v. Harris, 489 U.S. 378 (1989); Board of County Com'rs v. Brown, 520 U.S. 397 (1997); Young v. City of Providence, 404 F.3d 4 (1st Cir. 2005); Allen v. Muskogee, Oklahoma, 119 F.3d 837 (10th Cir. 1997); Russo, 935 F.2d at 1047.

**2. Fourth Amendment**

A Fourth Amendment seizure occurs when "there is a governmental termination of freedom of movement through means intentionally applied." Brower v. County of Inyo, 489 U.S. 593, 597 (1989). Stated differently, "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." Terry v. Ohio, 392 U.S. 1, 16 (1967).

A defendant state actor violates the Fourth Amendment and is liable under §1983 only if the particular seizure was "objectively unreasonable." Graham v. Connor, 490 U.S. at 394; see Maiorana v. MacDonald, 596 F.2d 1072 (1st Cir. 1979). In other words, a seizure is unlawful when it is effected in an unreasonable manner.

In the present case, Ms. Ferreira was seized when the Department's blockade prevented her from moving her vehicle. The focus will therefore be on whether the force used to effectuate the arrest of Ms. Ferreira, e.g., flash bang devices[7] and breaching tools, was reasonable. The Plaintiff maintains that the force was unreasonable. Ramona Africa v. City of Philadelphia, 938 F.Supp. 1278 (E.D.Pa. 1996); Jenkins v. Wood, 81 F.3d 988, 996-998 (10th Cir. 1996)(dissenting opinion); Molina v. Cooper, 325 F.3d 963, 973 & n. 6, 7("we in no way suggest that use of flash bang devices is appropriate in every case (or even in most cases)… .); U.S. v. Jones, 214 F.3d 836, 838 (7th Cir. 2000)(the use of flash bang device "created a risk that people close to the detonation point would be injured"); Schade v. Marquis, 2006WL782 *3 (N.D.Ohio 2006)(Slip Copy)("police regulations specify that officers are to deploy device [flash bang] no closer than 5 feet to any individual'); Taylor v. City of Middletown, 436 F.Supp.2d 377 (D.Ct. 2006); Boyd v. Benton County, 374 F.3d 773, 773 (9th Cir. 2004)("we have previously emphasized our concern with the unconstrained use of similar less-than-lethal devices [not flash bang] in situations where no warning is given"); Robbins v. Chronister, 156 F.Supp.2d 1211, 1216 (use of baton to break plaintiff's car window objectively unreasonable); Mumm v. Mornson, 708 N.W. 475, 487 (Minn. 2006)(court holds that "because the law requires that [the plaintiff] pose a significant threat to the police or to others in order to justify the use of deadly force, the mere risk of suicide does not justify the use of deadly force" and that "a suicidal person's risk of injury to self does not support the use of deadly force as authorized in Garner").

[7] These devices were used to achieve Ms. Ferreira's civil arrest.

In "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Graham 490 U.S. at 396, quoting United States v. Place, 462 U.S. 696, 703 (1983). Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application…however, its' proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id., quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979); see also Garner, 471 U.S. at 8-9 (the question is "whether the totality of the circumstances justifie[s] a particular sort of…seizure"). Moreover, the "'reasonableness' inquiry in is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." Graham, 490 U.S. at 397.

**3. Fourteenth Amendment-- Due Process**

In order to establish a Fourteenth Amendment substantive due process claim, the Plaintiff must show: (1) a deprivation of a protected interest in life, liberty, or property, and (2) that the deprivation of this protected right was caused by governmental conduct. Rivera v. Rhode Island, 402 F.3d 27 (1st Cir. 2005); Mairoana v. MacDonald, 596 F.2d 1072 (1st Cir. 1979). The first prong can be met if an individual dies. Rivera, 402 F.3d at 34 ("The complaint alleges that [the decedent] was caused to be deprived of her life, a protected interest."); Stanbridge v. City of Seaside, 545 F. Supp. 1195, 1198 (N.D.Cal., 1982)("It is beyond dispute that one killed by a … police officer is deprived of his Fourteenth Amendment right to life."). The second

prong "is easily met when a government actor causes the injury, such as when police officers act under color of law." Rivera, 402 F.3d at 34. The Plaintiff must also prove that the conduct of the government officials "reflect[ed] a reckless or callous indifference to an individual's rights," Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 559 (1st Cir.1989); Landol-Rivera v. Cruz Cosme, 906 F.2d 791 (1st Cir. 1990), or, stated differently, "shocks the conscience. Rivera, 402. F.3d at 27. "In situations where government actors have an opportunity to reflect and make reasoned and rational decisions, deliberately indifferent behavior may suffice to shock the conscience." Id.

In the present case, the Plaintiff alleges that the actions and/or omissions of the Defendants, acting under color of state law, establishes reckless or callous indifference to Ms. Ferreira's right to life and led to her death, thereby depriving her of the constitutional right to life. Id.; Screws v. United States, 325 U.S. 91 (1945); Mairoana v. MacDonald, 596 F.2d 1072 (1st Cir. 1979).

**4. 42 U.S.C. §1983-- Failure to Train**

The Plaintiff also alleges that evidence exists to sustain a verdict under 42 U.S.C. §1983 against the City and Dias for inadequate training of the individual officers that resulted in a violation of Ms. Ferreira's rights under the Fourth and Fourteenth Amendments.

In order to establish a claim against a municipality under §1983 for failure to adequately train police officers, a plaintiff must prove: (1) that the training program at issue is inadequate to the tasks that officers must perform; (2) that the inadequacy is the result of the city's deliberate indifference; and, (3) that the inadequacy is "closely related to" or "actually caused" the plaintiff's injury. Harris, supra. Furthermore, a training program must be adequate in both content and duration. See Russo v. City of Cincinnati, 935 F.2d 1036, 1047 (6th Cir.

1992)("…we find the fact that the City offered a seven hour course entitled 'Disturbed-Distress Persons' insufficient in and of itself to shield the City from liability").

In the present case, substantial evidence exists establishing that Defendants City and Dias were deficient in properly training their police officers relative to General Order No, 2000-43,[8] R.I.G.L. §40.1-5-7, handling of domestic violence response situations, the use of flash bang devices, crisis intervention protocol, and the preparation and implementation of SWAT or SRT tactical plans. Mr. Grossi, the Plaintiff's expert, will testify that the inadequate training establishes deliberate indifference on the part of the City towards Ms. Ferreira and that there is causal connection between the constitutional deprivation at issue and the inadequate training. Monell v. Department of Social Services, 436 U.S. 658 (1978); Harris, 489 U.S. at 387(inadequate police training will support liability under section 1983 where such failure "amounts to deliberate indifference to the rights of persons with whom they police come into contact"); Board of County Com'rs v. Brown, 520 U.S. 397 (1997); Young v. City of Providence, 404 F.3d 4 (1st Cir. 2005); Allen v. Muskogee, Oklahoma, 119 F.3d 837, 842 (10th Cir. 1997)("evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, is sufficient to trigger municipal liability"); Russo, 935 F.2d at 1047; Jenkins, 81 F.3d. at 994, citing Harris, 489 U.S. at 390 ("if the inaction theory rests on alleged failure to train, the plaintiff must prove 'need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifference to the need' for additional training.").

[8] General Order No. 2000-43 sets forth the policy of the Department for procedures to be followed by Department members when confronted with persons that are in crisis/mentally ill/suicidal.

**B. Article I, §8 of the Rhode Island Constitution**

For the same reasons set forth above with respect to Ms. Ferreira's federal constitutional claim, the Plaintiff intends to offer evidence at trial establishing violations of Ms. Ferreira's right to be free from an unreasonable seizure, resulting in her wrongful death, causing deprivation of her rights as secured under the Rhode Island Constitution.

**C. Negligence**

Plaintiff also alleges that Defendants, by their individual and concerted acts and/or omissions, failed or refused to exercise reasonable care to avoid inflicting reasonably foreseeable injuries to Ms. Ferreira resulting in her death. See Mills v. State Sales, Inc., 824 A.2d 461, 467 (R.I. 2003).

There is ample evidence that supports a finding that Defendants' negligent actions and/or omissions resulted in Ms. Ferreira's death. As stated above, the Plaintiff maintains that the failure to adhere to Department policy, the tactical plan that was devised to breach Ms. Ferreira's vehicle as well as the execution of the plan, the use of flash bang devices and Defendant Feeney's contact with Ms. Ferreira's upper body while she held the gun, substantiate a claim for negligence.

The Plaintiff will also argue that the nature of the intervention by the Defendants gave rise to a duty to exercise care not to leave the object of the rescue—Ms. Ferreira—in worse condition than if the intervention not been attempted.[9] Adams v. City of Fremont, 68 Cal.App.4th 243 (1998); Restatement (Second) of Torts, §323.

[9] "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking." Thames Shipyard and Repair v. U.S., 350 F.3d 247, 260 (1st Cir. 2003)(citing Restatement (Second) of Torts §323 (1965)); Losinski v. County of Trempealeau, 946 F.2d 544 (7th Cir. 1992).

**D. Negligence-- Respondeat Superior**

The Rhode Island Supreme Court has made it clear that "an employer…can be held liable for an employees intentional tort committed against a third party only if the misconduct falls within the scope of employment." Cruz v. Town of North Providence, 833 A.2d 1237, 1240 (R.I. 2003). The Court has also held that an employer can be held liable for the negligent actions of an employee. Saunders v. State, 446 A.2d 748 (R.I. 1982).

The following elements must be proved to establish negligence under the doctrine of respondeat superior: a duty of reasonable care owed by a servant towards an individual to whom his or her master owes a duty of care, a negligent act and/or omission of the servant acting within the scope of his or her employment, which proximately causes injury to the person and/or property to whom the duty of care is owed. See Saunders v. State, 731 F.2d 81 (1st Cir. 1984).

The Plaintiff alleges that the City is liable under the doctrine of respondeat superior for the negligence of its agents— the Defendants— police officers employed by the City, whose negligent actions and/or omissions were within the scope of their employment and were the proximate cause of grave injuries resulting in the death of Ms. Ferreira's. Saunders, 446 A.2d at 751-752; R.I.G.L. §9-31-1.

## III. Law Supporting Plaintiff Anthony J. Ferreira's Claims in His Individual Capacity

**A. Claims under 42 U.S.C. §1983**

**1. Introduction**

The Plaintiff intends to establish sufficient facts at trial from which a finder of fact may reasonably infer that Defendants, acting under the color of state law, by their acts and/or omissions, caused the Plaintiff to be illegally seized in derogation of his right to be free from unreasonable seizures, and in so doing, violated Plaintiff's rights pursuant to the Fourth and

Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. §1983. Garner, supra; Graham, supra. More specifically, the Plaintiff alleges that due to the acts or admissions of the Defendants, he was unlawfully seized and arrested.

**2. Seizure**

A Fourth Amendment seizure occurs when "there is a governmental termination of freedom of movement through means intentionally applied." Brower, 489 U.S. at 597. Stated differently, "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." Terry, 392 U.S. at 16.

A defendant state actor violates the Fourth Amendment and is liable under §1983 only if the particular seizure was "objectively unreasonable." Graham, 490 U.S. at 394; see Maiorana, supra.

In the case at bar, the Plaintiff maintains that Defendants used excessive force in effectuating his seizure. In "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Graham 490 U.S. at 396, quoting Place, 462 U.S. at 703. Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application…however, its' proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id., quoting Bell, 441 U.S. at 559; see also Garner, 471 U.S. at 8-9 (the question is "whether the totality of the circumstances justifie[s] a particular sort of…seizure"). Moreover, the "'reasonableness' inquiry

in is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." Graham, 490 U.S. at 397.

**3. Probable Cause**

The Plaintiff anticipates that Defendants will argue that probable cause existed to search and seize the Plaintiff and thus will move for a directed verdict as to all claims but the negligence count.

"Probable cause exists when the facts and circumstances within [a police officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense." Fletcher v. Town of Clinton, 196 F.3d 41, 53 (1st Cir. 1999).

**4. Claim Under Article I, §8 of the Rhode Island Constitution**

For the same reasons set forth above with respect to Plaintiff's federal constitutional claim, Plaintiff intends to offer evidence at trial establishing violations of his right to be free from an unreasonable seizure under the Rhode Island Constitution.

**5. Claim for Negligence**

The Plaintiff also alleges that Defendants, by their acts and/or omissions, failed or refused to exercise reasonable care to protect the Plaintiff from reasonably foreseeable harm, causing Plaintiff to suffer injuries. See Mills, 824 A.2d at 467.

6. **Negligence -- Respondeat Superior**

The Rhode Island Supreme Court has made it clear that "an employer…can be held liable for an employees intentional tort committed against a third party only if the misconduct falls within the scope of employment." Cruz, 833 A.2d at 1240. The Court has also held that an employer can be held liable for the negligent actions of an employee. Saunders, supra.

The following elements must be proved to establish negligence under the doctrine of respondeat superior: a duty of reasonable care owed by a servant towards an individual to whom his or her master owes a duty of care, a negligent act and/or omission of the servant acting within the scope of his or her employment, which proximately causes injury to the person and/or property to whom the duty of care is owed. See Saunders, supra.

The Plaintiff alleges that Defendant City is liable under the doctrine of respondeat superior for the negligence of its agents—Defendants— officers employed by Defendant City, whose negligent actions and/or omissions were within the scope of their employment and was the proximate cause of the injuries suffered by the Plaintiff. Saunders, 446 A.2d at 751-752; R.I.G.L. §9-31-1.

**7. Claims for Assault and Battery**

The Plaintiff alleges that Defendants caused the Plaintiff to reasonably fear imminent bodily harm by their physically threatening acts and intended to cause and did indeed cause offensive contact with the Plaintiff. Picard v. Barry-Pontiac-Buick, Inc., 654 A.2d 690 (R.I. 1995); Proffit v. Ricci, 463 A.2d 514 (R.I. 1983).

**8. False Arrest**

The Plaintiff alleges that Defendants detained him without legal justification, i.e., without probable cause. Winn v. Collins, 723 A.2d 798 (R.I.1998). A number of factual issues exist that could lead a reasonable jury to find that probable cause did not exist to arrest Plaintiff for obstruction of an officer and resisting arrest.

## IV. **Anticipated Motions in Limine**

The Plaintiff will also file a motion in limine wherein he seeks to bar Defendants' proffer of expert testimony by Douglas S. Lacey as well as the introduction of the technical analysis of the videotape of the incident.

The Plaintiff anticipates filing said motion in the next 1 week.

## V. Jury Instructions-- Plaintiff's Claims as Administrator of the Estate of Patricia J. Ferreira and Guardian of the Estate and Person of Ryan C. Ferreira

### A. Introduction

This action is brought by the Plaintiff as Administrator and Guardian of the Estate of Patricia J. Ferreira and Guardian of the Estate and Person of Ryan C. Ferreira seeking relief for the wrongful death of Patricia J. Ferreira as a result of the acts and/or omissions committed by Defendants in violation of the Fourth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. §1983, and Article I, §6 of the Rhode Island Constitution. In this capacity, the Plaintiff has also brought a common law claim for negligence.

**B. Claims Under 42 U.S.C. §1983—Unlawful Seizure**

1. The Plaintiff alleges that Defendants Dias, Barlow, Hall, David, Feeney, McGregor and/or Rush, acting under color of state law, by their individual and concerted acts and/or omissions, caused Ms. Ferreira to be illegally seized in derogation of her constitutional right to be free from unreasonable seizures, resulting in Ms. Ferreira's wrongful death, causing her to suffer damages, and thereby deprived Ms. Ferreira of rights secured under the Fourth and Fourteenth Amendments to the United States Constitution, actionable pursuant to the Civil Rights Act, known as 42 U.S.C. §1983.

2. The Civil Rights Act is a federal law - 42 U.S.C. §1983 - which provides:

> Every person, who, under color of any statute, ordinance, regulation custom, or usage, of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. We all have certain rights, privileges, and immunities secured or protected by the Constitution and laws of the United States.

4. These rights, privileges and immunities include the right to be free from an unreasonable seizure of one's person protected by the Fourth Amendment of the United States Constitution.

5. In order for Plaintiff to prove an unreasonable seizure claim against Defendants Dias, Barlow, Hall, David, Feeney, McGregor and/or Rush under §1983, Plaintiff must establish the following facts:

a. That a Defendant acted under the color of some law, custom or policy of a State, City or Town;

b. That a Defendant’s actions and/or conduct deprived Ms. Ferreira of one of her federal constitutional rights; and,

c. That a Defendant's actions and/or conduct were the proximate cause of damages resulting to Ms. Ferreira.

6. Each alleged deprivation of a constitutional right must be addressed separately by you during your deliberations.

7. **Burden of Proof - Fourth Amendment Claim**

Usually, in a civil case the plaintiff has the burden of proving his or her case. A claim made under the Fourth Amendment, however, is somewhat different. A defendant bears the burden of proving by preponderance of the evidence his or her compliance with each of the elements of a reasonable seizure as I will explain them to you, once a plaintiff has demonstrated that a seizure occurred. However, a defendant only has the burden of proof on a plaintiff's Fourth Amendment claim; a plaintiff has the burden of proof on all other claims against a defendant.

8. **Color of Law**

a. In order for Plaintiff to establish a civil rights claim, the first element the Plaintiff must show is that a Defendant was acting "under color of law." Acts are done "under color of law" not only when officials act within the bounds and limits of their lawful authority, but also when they act unlawfully beyond those limits. However, for such unlawful acts to be under color of law they must be done by an official while he or she is purporting to act in the performance of his or her official duty.

b. The law under which an official is acting, or purporting to act may be a state statute or city ordinance or regulation or any governmental policy or custom.

9. **Seizure**

A seizure occurs, within the meaning of the Fourth Amendment, when a reasonable person does not feel free to ignore a request of police. In other words, it consists of a restraint of liberty such that the person seized reasonably believes he/she is not free to leave.

The Fourth Amendment requires that a seizure be reasonable. In other words, a seizure is unlawful when it is effected in an unreasonable manner. Accordingly, the law requires that the use of force or tactics used to effectuate a seizure must be reasonable. In this case, the use of force that was used to effectuate Ms. Ferreira's seizure was the flash bangs and breaching tool implemented to extricate Ms. Ferreira from her motor vehicle. If you determine that a reasonable officer acting in this situation would <u>not</u> have utilized the police tactics used by a Defendant in this case, then the seizure of Ms. Ferreira was effected in an unreasonable manner.

10. **<u>Proximate Cause</u>**

a. I will now instruct you as to proximate cause. As I told you previously, the last essential element which the Plaintiff must prove in a civil rights claim is that the injuries that the Plaintiff claims Ms. Ferreira sustained were proximately caused by the conduct of a Defendant. This means the Plaintiff must prove that Ms. Ferreira's injuries were either a direct result or a reasonably probable consequence of the complained of conduct.

b. A defendant is not legally responsible for any harm caused to a plaintiff by another. A defendant is responsible only for harm for which he or she is the proximate cause.

c. The Plaintiff alleges that Ms. Ferreira was caused conscious pain and suffering and endured grave injuries resulting in her death, all of which was proximately caused by a Defendant's conduct.

d. The Plaintiff also alleges that at the time of her death, Ms. Ferreira was twenty-eight (28) years-old and enjoyed good bodily health in every respect. She was endowed with intelligence and ability at her work. At the time of her death, she was working and could reasonably have been expected to prosper in her work in the future and receive increased remuneration. However, as a result of her death, Ms. Ferreira cannot earn any future monies.

e. The Plaintiff also alleges that as a result of Ms. Ferreira's death, her minor child, Ryan C. Ferreira, has been deprived and will be permanently deprived of the love, companionship, affection, society, moral support, and solace of Ms. Ferreira.

f. If you find a Defendant liable to the Plaintiff, you may award only such compensatory damages as were proximately caused by that Defendant.

**C. Claims Under 42 U.S.C. §1983—Deprivation of Life**

1. The Plaintiff alleges that Defendants Dias, Barlow, Hall, David, Feeney, Tiernan, McGregor and/or Rush, acting under color of state law, by their individual and concerted acts and/or omissions, caused Ms. Ferreira to be deprived of life without due process of law in derogation of her constitutional rights, resulting in Ms. Ferreira's wrongful death, causing her to suffer damages, and thereby deprived Ms. Ferreira of rights secured under the Fourteenth Amendment of the United States Constitution, actionable pursuant to 42 U.S.C. §1983.

2. The Civil Rights Act is a federal law - 42 U.S.C. §1983 - which provides:

> Every person, who, under color of any statute, ordinance, regulation custom, or usage, of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. We all have certain rights, privileges, and immunities secured or protected by the Constitution and laws of the United States.

4. These rights, privileges and immunities include the right to be free from a governmental policy, practice or custom that deprives a person of life, liberty or property.

5. In order for Plaintiff to prove Ms. Ferreira's civil rights claims against Defendants Barlow, Hall, David, Feeney, Tiernan, McGregor and/or Rush under §1983, Plaintiff must establish the following facts:

a. That a Defendant acted under the color of some law, custom or policy of a State, City or Town;

b. That a Defendant's actions and/or conduct caused Ms. Ferreira to be deprived of her federal constitutional right to life;

c. That a Defendant was deliberately indifferent to the consequences of his actions or conduct; and,

d. That a Defendant's actions and/or conduct were the proximate cause of damages resulting to Ms. Ferreira.

6. Each alleged deprivation of a constitutional right must be addressed separately by you during your deliberations.

7. **Burden of Proof – Due Process Claim**

With regard to a due process claim made under the Fourth Amendment, the plaintiff bears the burden of proving, by a preponderance of the evidence, that Ms. Ferreira was knowingly and intentionally subjected to acts of force by a Defendant causing her grave injuries resulting in her death. In this case, the Plaintiff must also prove that a Defendant's conduct reflected a deliberate indifference to Ms. Ferreira's rights. In addition, Plaintiff must show that a Defendant's act of force was done under the color of state law.

8. **Color of Law**

a. In order for Plaintiff to prove Ms. Ferreira's due process claim, the first element the Plaintiff must show is that a Defendant was acting "under color of law." Acts are done "under color of law" not only when officials act within the bounds and limits of their lawful authority, but also when they act unlawfully beyond those limits. However, for such unlawful acts to be under color of law they must be done by an official while he or she is purporting to act in the performance of his or her official duty.

b. The law under which an official is acting, or purporting to act may be a state statute or city ordinance or regulation or any governmental policy or custom.

9. **Deprivation of Life**

The Fourteenth Amendment guarantees that no individual should be deprived of life. Insofar as it is undisputed that Ms. Ferreira died, this element is easily satisfied.

10. **Deliberate Indifference**

"Deliberate indifference" is the conscious or reckless disregard of the consequences of one's acts or omissions. To establish deliberate indifference, the Plaintiff must prove that a defendant knew that Ms. Ferreira faced a substantial risk of serious harm due to their actions and/or omissions and disregarded that risk by failing to take reasonable measures to correct it.

In this case, the Plaintiff must prove that Defendants Rush, David, and Tiernan acted with deliberate indifference by failing to seize Ms. Ferreira's weapons while investigating a domestic violence complaint at 64 Brightridge Avenue. Alternatively, the Plaintiff must establish that Defendants Rush, David, and Tiernan had knowledge that established that Ms. Ferreira was "in crisis," and, as such, were deliberately indifferent in failing to take Ms. Ferreira into custody and take her to a medical facility, or, at the minimum, seize her weapons pursuant to Department policy.

As another alternative, the Plaintiff must prove that Defendants use of flash bang devices, failure to adhere to established crisis negotiation protocols, and/or the preparation and implementation of a tactical plan to extricate Ms. Ferreira from her vehicle individually and/or collectively show a total disregard to the substantial risk of serious harm or death to Ms. Ferreira

11. **Proximate Cause**

a. As stated previously, the last essential element which a plaintiff must prove in a due process claim is that the injuries that an individual claims to have sustained were proximately caused by the conduct of a Defendant. This means the Plaintiff must prove that Ms. Ferreira's injuries were either a direct result or a reasonably probable consequence of the complained of conduct.

b. A defendant is not legally responsible for any harm caused to a plaintiff by another. A defendant is responsible only for harm for which he or she is the proximate cause.

c. The Plaintiff alleges that Ms. Ferreira was caused conscious pain and suffering and endured grave injuries resulting in her death, all of which was proximately caused by a Defendant's conduct.

d. The Plaintiff also alleges that at the time of her death, Ms. Ferreira was twenty-eight (28) years-old and enjoyed good bodily health in every respect. She was endowed with intelligence and ability at her work. At the time of her death, she was working and earning a salary and could reasonably have been expected to prosper in her work in the future and receive increased remuneration. However, as a result of her death, Ms. Ferreira cannot earn any future monies.

e. The Plaintiff also alleged that as a result of Ms. Ferreira's death, her minor child, Ryan C. Ferreira, has been deprived and will be permanently deprived of the love, companionship, affection, society, moral support, and solace of the decedent.

f. If you find a Defendant liable to the Plaintiff, you may award only such compensatory damages as were proximately caused by that Defendant.

**D. Claims Under 42 U.S.C. §1983—Failure to Train**

1. The Plaintiff alleges that Defendants City and Dias failed to properly train, instruct, and supervise, police officers in the City Police Department, including Defendants Barlow, Hall, David, Feeney, Tiernan, McGregor and/or Rush, relative to proper police procedures, practices and/or policies, resulting in the death of Ms. Ferreira.

2. In order to establish a claim against Defendants City and Dias under §1983 for failure to adequately train police officers, including Defendants Barlow, Hall, David, Feeney, Tiernan, McGregor and/or Rush, a plaintiff must prove the following facts by a preponderance of the evidence:

a. That the City's training programs were not adequate to train its police officers to properly handle the tasks which they must perform;

b. That the inadequate training demonstrates a deliberate indifference on the part of the City and Dias towards persons with who the police officers come in to contact; and,

c. That the failure to provide proper training was the proximate cause of the deprivation of the plaintiff's rights protected by the Constitution or laws of the United States.

3. A training program may be considered inadequate if the program does not properly address how police officers should act in certain situations. A training program may also be considered inadequate if you believe the duration or length of the training program is too short to enable an officer to grasp the training concepts.

4. **Deliberate Indifference**

As state above, "deliberate indifference" is the conscious or reckless disregard of the consequences of one's acts or omissions. To establish deliberate indifference in a failure to train claim, the Plaintiff must prove that Defendants City or Dias knew or should have known that persons with whom City police officers came into contact faced a substantial risk of serious harm on account of improper or inadequate police training and disregarded that risk by failing to take reasonable measures to correct it.

In this case, the Plaintiff must prove that either Defendants City or Dias were deliberately indifferent in failing to provide adequate training to Defendants Barlow, Rush, David, and Tiernan relative to handling domestic violence service calls and proper procedures when responding to service calls regarding mentally ill/suicidal persons (Department General Order #2000-43 and R.I.G.L. §40.1-5-7(a)(1)), or, that Defendants City and Dias were deliberately indifferent in failing to provide adequate training to Defendants Barlow, Hall, David, Feeney, Tiernan, McGregor and/or Rush relative to the use of flash bang devices, use of established standards of crisis negotiation protocol, and the preparation and implementation of SWAT-type or SRT tactical plans.

5. **Proximate Cause**

a. The final essential element which a plaintiff must prove in a failure to train claim is that the injuries that the Plaintiff claims Ms. Ferreira sustained were proximately caused by the improper training, supervision, or instruction provided by Defendants City and Dias to individual police officers. This means the Plaintiff must prove that Ms. Ferreira's injuries were either a direct result or a reasonably probable consequence of the inadequate training.

b. Defendants City and Dias not legally responsible for any harm caused to Ms. Ferreira by another. Defendants City and Dias are only responsible for harm that was caused by the inadequate or improper training.

**E. Unreasonable Seizure in Violation of Article 1, §6 of the Rhode Island Constitution**

1. The Plaintiff alleges that Defendants Barlow, Hall, David, Feeney, Tiernan, McGregor and/or Rush, acting under state law, by their individual and concerted acts and/or omissions, caused Ms. Ferreira to be unlawfully seized in derogation of her constitutional right to be free from unreasonable seizures, resulting in Ms. Ferreira's wrongful death and thereby deprived Ms. Ferreira of rights secured under Article 1, §6 of the Rhode Island Constitution.

2. One of the rights protected in Article 1, §6 of the Rhode Island Constitution is the right to be free from unlawful seizures.

3. **Unreasonable Seizure**. As stated previously, a seizure must be reasonable. In other words, a seizure is unlawful when it is effected in an unreasonable manner. Accordingly, the law requires that the use of force or tactics used to effectuate a seizure must be reasonable. In this case, the use of force was the utilization of the flash bangs and the breaching tool and implementation of the tactical plan to extricate Ms. Ferreira from her motor vehicle. If you determine that a reasonable officer acting in this situation would not have utilized the police tactics used a Defendant in this case, then the seizure of Ms. Ferreira was effected in an unreasonable manner.

**F. Negligence**

1. The Plaintiff further alleges that Defendants Dias, Barlow, Hall, David, Feeney, Tiernan, McGregor and/or Rush, acting under the color of law, by their individual and concerted acts and/or omissions, by his actions and/or omissions, failed or refused to exercise reasonable care to avoid inflicting reasonably foreseeable injuries to Ms. Ferreira resulting in her death.

2. In order to find a Defendant negligent, you must first determine that he failed or refused to exercise a duty of care he owed towards Ms. Ferreira.

3. A Defendant owed a duty of care to Ms. Ferreira to effectuate her seizure in a reasonable manner; that is, using only as much force as was necessary to effectuate Ms. Ferreira's seizure.

4. If you find that a Defendant failed or refused to exercise this duty of care owed to Ms. Ferreira, you must next determine if this failure or refusal was the proximate cause of the Ms. Ferreira's injuries resulting in her death.

5. If you find that a Defendant's failure or refusal to exercise this duty of care was the proximate cause of Ms. Ferreira's injuries resulting in her death, then I instruct you to find that the Defendant was negligent.[10]

[10] An instruction must also be given as to the minimum recovery under R.I.G.L. §10-7-2.

**G. <u>Vicarious Liability</u>**

1. Under state law, an employer is responsible for the actions of its employees committed while that employee is acting within the scope of the employee's duties and while engaged in the employer's business. This type of liability is known as vicarious liability.

2. The Plaintiff alleges that the City of East Providence is liable for the negligence of its agents, Defendants Dias, Barlow, Hall, David, Feeney, Tiernan, McGregor and Rush, police officers employed by the City, whose negligence was within the scope of their employment and was the proximate cause of the injuries suffered by Ms. Ferreira resulting in her death.

3. If you find that a Defendant's negligent acts and/or omissions was the proximate cause of the Ms. Ferreira's injuries resulting in her death, and that, at the time of the acts and/or omissions which caused the injuries and resulting death, such Defendant was employed by the City and acting within the scope of his duties as police officer, you may find the City responsible for the Plaintiff's damages.

**H. Qualified Immunity**

1. "Qualified immunity" is an affirmative defense that must be pleaded and proved by a defendant official. Harlow v. Fitzgerald, 457 U.S. 800 (1982). As established by the U.S. Supreme Court, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Id. at 818.

2. The immunity available to a state official as a defense to a claim under §1983 is governed by this standard, not state law. Id. at 818, n.30. Neither a municipality nor a municipal official sued in his or her official capacities is entitled to qualified immunity. Leatherman v. Tarant County Narcotics Intelligence Coordination Unit, 507 U.S. 163 (1993); Scarpa v. Murphy, 624 F. Supp. 33 (D. Mass. 1985). Accordingly, even if you find that one or more of the Defendant's conduct was protected by qualified immunity, this will not shield the City for liability according to the standard that I previously described to you.

3. Individual liability of a public official may be established where it is shown that the challenged conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818; Amsden v. Moran, 904 F.2d 748, 752 (1st Cir. 1990)("Where persons are deprived of property interests, it has long been 'clearly established' that due process safeguards must be afforded.").

4. Indeed, all that is required to overcome any claim of qualified immunity is that "[t]he contours of the right . . . be sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

5. In determining the objective reasonableness required by the qualified immunity standard, "a reasonable public official . . . is expected to know the law." Hall v. Ochs, 817 F.2d 920, 924 (1st Cir. 1987); "When a right is well established . . . no one who does not know about it can be called 'reasonable' in contemplation of the law." Losch v. Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984).

## I. **Damages**

### 1. **General Instructions**

In the event you find for the Plaintiff, as Administrator of the Estate of Patricia J. Ferreira and Guardian of the Estate and Person of Ryan C. Ferreira, you may consider awarding damages. In your consideration of damages, you will be concerned with four distinct kinds of damages. They are:

a. actual or compensatory damages sustained by Ms. Ferreira;

b. actual or compensatory damages sustained by Ms. Ferreira's sole beneficiary—her son, Ryan C. Ferreira;

c. punitive damages; and,

d. nominal damages.

2. **Burden of Proof**

a. The burden is on the Plaintiff to prove by a fair preponderance of the evidence that Ms. Ferreira and/or Ryan C. Ferreira have suffered damages as a proximate result of a Defendants' acts and/or omissions.

b. Ms. Ferreira and/or Ryan C. Ferreira should be compensated for all damages suffered and proximately resulting from a Defendant's acts and/or omissions.

c. Damages must be supported by competent evidence; they cannot be proven by speculation.

d. The burden is also on the Plaintiff to prove by a fair preponderance of the evidence the extent or amount to which Ms. Ferreira and/or Ryan C. Ferreira have suffered. Tom Shaw, Inc. v. Derecktor, 639 F. Supp. 1064 (D.R.I. 1986); Jackson v. Choquette & Co., Inc., 80 A.2d 172 (R.I. 1951).

3. **Actual or Compensatory Damages Sustained by Ms. Ferreira's Estate**

The damages listed below may be recovered by Ms. Ferreira's Estate.

a. The amount which Ms. Ferreira would have earned from the date of her death up to the date of this trial, less the estimated personal expenses that Ms. Ferreira would probably have incurred for herself, exclusive of her dependent child, over the course of her life expectancy.

b. The reasonable value of lost homemaking services.

c. The conscious pain, suffering and mental anguish sustained by Ms. Ferreira from the time the incident began on October 10, 2001 until the time of her death.

(1) The Plaintiff claims that Ms. Ferreira experienced conscious pain and suffering, including physical pain and suffering and emotional and mental distress as a result of Defendants' unlawful conduct.

(2) If you should find that the Plaintiff is entitled to a verdict, you also should award him an amount to compensate Ms. Ferreira for any physical pain and suffering and mental anguish she suffered as a proximate result from the injury in question.

(3) It is difficult to measure physical pain and suffering and mental anguish; nevertheless, you may not speculate—your award must be based on the evidence and must be in an amount which is fair and adequate.

d. The value of the Ms. Ferreira's loss of enjoyment of life as a result of her death. In valuing the loss of enjoyment of life, you may consider that Ms. Ferreira can no longer enjoy

her occupation, activities of daily living, social leisure activities, and internal well-being. Smith v. Ingersoll-Rand Co., 214 F.3d 1235, 1245 (10th Cir. 2000).

e. Any and all reasonable funeral and burial expenses incurred for the burial and interment of Ms. Ferreira.

f. Reasonable costs associated with the administration of Ms. Ferreira's Estate.

4. **<u>Actual or Compensatory Damages Sustained by Ryan Ferreira</u>**

The damages listed below may be recovered by Ms. Ferreira's sole beneficiary—Ryan C. Ferreira:

a. The loss and permanent deprivation of the love, companionship, affection, society, moral support, and solace of Ms. Ferreira from the date of her death for the balance of her life expectancy.

b. The loss of the training and guidance of Ms. Ferreira from the date of her death to the date Ryan C. Ferreira attains the age of majority.

5. **<u>Nominal Damages</u>**

a. If you find that the Plaintiff is entitled to a verdict according to these instructions, but do not find that the Plaintiff has proved compensatory damages, then you should return a verdict for the Plaintiff in some nominal sum such as one dollar.

b. The award of a nominal sum would not prevent you from awarding punitive damages in such amount as you deem appropriate, if you find that the award of punitive damages is justified under these instructions.

c. However, you may not award the Plaintiff both compensatory damages and nominal damages, for the reason that nominal damages may be awarded only if you find that the Plaintiff has not proved that Ms. Ferreira and/or Ryan C. Ferreira are entitled to compensatory damages, but have been harmed in some way.

6. **Punitive Damages**

a. In addition to compensatory damages which attempt to make a person whole, the law permits you to award a plaintiff punitive damages under certain limited circumstances. The purpose of this kind of damages is to punish a wrongdoer for misconduct, and to serve as a warning to others not to engage in the same or similar conduct. Palmisano v. Toth, 624 A.2d 314, 317-18, (R.I. 1993); Morin v. Aetna Casualty And Surety Co., 478 A.2d 964, 967 (R.I. 1984).

b. You may award the Plaintiff punitive damages whether or not you find that Ms. Ferreira and/or Ryan C. Ferreira suffered actual or compensatory damages. That is, you need not find that Ms. Ferreira and/or Ryan C. Ferreira incurred an economic or tangible loss in order to award punitive damages.

c. Further, you may not award punitive damages against a defendant unless you find, by a preponderance of the evidence, that a defendant's actions were maliciously, willfully, wantonly or recklessly done and are found to be so willful, reckless, or wicked that they amount to criminality. Id.

d. In addition, an award of nominal damages or compensatory damages will not prevent you from awarding punitive damages.

e. An act, or a failure to act, is done with "malice" if prompted or accompanied by ill will, spite, or grudge toward a person. You may consider all the evidence in the case in making this determination.

f. An act is done "willfully" if it is done voluntarily and intentionally, with the specific intent to do something the law forbids; that is to say, with a purpose either to disobey or to disregard the law.

g. Any act or omission is "wantonly" done if done in callous or reckless disregard of, or indifference to the rights of one or more persons, including the injured person.

h. "Recklessly" means with indifference to consequences. If a person acts without regard to possible consequences, he may be found to have acted recklessly.

i. Intent ordinarily may not be proved directly because there is no way to directly examine the thoughts of another human being. You may, however, infer a person's intent from surrounding circumstances. You may consider any statement made or act done or omitted by a person whose intent is in issue, and all other facts and circumstances which indicate his or her state of mind.

**J. <u>Importance of Right</u>**

You may also consider the importance of the constitutional right or rights violated in our system of government, the significance which this particular issue had for Ms. Ferreira, and the significance of the right or rights in the context of the activities in which Ms. Ferreira was engaged at the time of the violation of the right or rights.

**K. Credibility**

I instruct you that you may reject testimony of a witness if such testimony has been impeached or contradicted by positive testimony or by circumstantial evidence, or because of inherent improbabilities in the testimony, or because of contradictions in the testimony or because the testimony is totally at variance with undisputed physical facts. Landry v. Vogel, 234 A.2d 353 (R.I. 1967).

## VI. Jury Instructions— Plaintiff, Anthony J. Ferreira, in His Individual Capacity

### A. Introduction

This action is brought by the Plaintiff, Anthony J. Ferreira, in his individual capacity, seeking relief for injuries he suffered as a result of acts and/or omissions committed by Defendants City, Hall and David, in violation of the Fourth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. §1983, Article I, §6 of the Rhode Island Constitution, and at common law.

**B. <u>Claims Under 42 U.S.C. §1983—Unlawful Seizure</u>**

1. The Plaintiff alleges that Defendants Hall and David, acting under color of state law, by their individual and concerted acts and/or omissions, caused the Plaintiff to be illegally seized in derogation of his constitutional right to be free from unreasonable seizures, causing Plaintiff to suffer damages, and thereby deprived him of rights secured under the Fourth and Fourteenth Amendments to the United States Constitution, actionable pursuant to the Civil Rights Act, known as 42 U.S.C. §1983.

2. The Civil Rights Act is a federal law - 42 U.S.C. §1983 - which provides:

> Every person, who, under color of any statute, ordinance, regulation custom, or usage, of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. We all have certain rights, privileges, and immunities secured or protected by the Constitution and laws of the United States.

4. These rights, privileges and immunities include the right to be free from a wrongful arrest and an unreasonable seizure of one's person protected by the Fourth Amendment of the United States Constitution.

5. In order for Plaintiff to prove his claims against Defendants Hall and David under §1983, Plaintiff must establish the following facts:

a. That a Defendant acted under the color of some law, custom or policy of a State, City or Town;

b. That a Defendant’s actions and/or conduct deprived him of one of his federal constitutional rights; and,

c. That a Defendant's actions and/or conduct were the proximate cause of damages resulting to the Plaintiff.

6. Each alleged deprivation of a constitutional right must be addressed separately by you during your deliberations.

7. **Burden of Proof - Fourth Amendment Claim**

Usually, in a civil case the plaintiff has the burden of proving his or her case. A claim made under the Fourth Amendment, however, is somewhat different. A defendant bears the burden of proving by preponderance of the evidence his or her compliance with each of the elements of a reasonable seizure and wrongful arrest, as I will explain them to you, once the Plaintiff has demonstrated that a seizure occurred. However, a defendant only has the burden of proof on the Plaintiff's Fourth Amendment claim; the Plaintiff has the burden of proof on all other claims against a Defendant.

8. **Color of Law**

a. In order for Plaintiff to prove his civil rights claims, the first element the Plaintiff must show is that a Defendant was acting "under color of law." Acts are done "under color of law" not only when officials act within the bounds and limits of their lawful authority, but also when they act unlawfully beyond those limits. However, for such unlawful acts to be under color of law they must be done by an official while he or she is purporting to act in the performance of his or her official duty.

b. The law under which an official is acting, or purporting to act may be a state statute or city ordinance or regulation or any governmental policy or custom.

9. **Seizure**

A seizure occurs, within the meaning of the Fourth Amendment, when a reasonable person does not feel free to ignore a request of police. In other words, it consists of a restraint of liberty such that the person seized reasonably believes he or she is not free to leave.

The Fourth Amendment requires that a seizure be reasonable. In other words, a seizure is unlawful when it is effected in an unreasonable manner. The reasonableness of a seizure depends on factors such as the severity of the crime at issue, whether the person detained posed an immediate threat to the safety of police or others, and whether the person detained was actively resisting arrest or attempting to evade arrest by flight. Apprehension by use of excessive force is a seizure subject to the reasonableness requirement of the Fourth Amendment. A seizure accompanied by excessive force violates the reasonableness provision of the Fourth Amendment. When a police officer uses excessive force, a plaintiff may recover damages against that police officer.

Excessive force by police officers, even if less than deadly, is not to be deployed lightly. To put it in terms of the test applied: the degree of force used by police is permissible only when a strong government interest *compels* the employment of such force. The essence of the test is that the force which is applied must be balanced against the *need* for that force.

10. **False Arrest**

a. I will now explain the claim of the Plaintiff that he was falsely arrested by Defendants, in violation of his Fourth Amendment right to be free from unreasonable seizures.

b. The arrest of a person constitutes a seizure within the protection of the Fourth Amendment. Thus, if you determine that a Defendant arrested Plaintiff, you must find that Defendant seized the Plaintiff, and go on to determine whether or not that seizure was reasonable.

11. **Elements of Reasonable Arrest**

a. If a Defendant police officer acted reasonably in arresting the Plaintiff, he or she did not deprive the Plaintiff of his Fourth Amendment rights against reasonable seizures.

b. An arrest is reasonable if you find that a Defendant has proved by a preponderance of the evidence each of the following:

1) The arrest was reasonable in the manner in which it was carried out;

2) There was probable cause for the arrest; and,

3) That the probable cause was not negated or lost due to facts that subsequently come to the attention of the arresting officers.

c. If any one of these conditions was not met, then the arrest of the Plaintiff was unreasonable.

12. **Probable Cause**

a. An arrest by a law enforcement officer constitutes a seizure which is unreasonable and in violation of the Fourth Amendment, unless the arrest is based on probable cause. Probable cause exists when the facts and circumstances within an officer's knowledge at the time of the arrest, and of which he or she has reasonably trustworthy information, would warrant a reasonable prudent person's belief that a crime has been committed and that the suspect committed the crime. Dyson v. City of Pawtucket, 670 A.2d 233, 239 (R.I. 1996).

b. Moreover, a subjective belief on the part of a Defendant, no matter how sincere and firmly held, is insufficient to establish probable cause absent facts and circumstances within a Defendant's knowledge which established an objectively reasonable belief that a crime had been committed and that the Plaintiff committed the crime.

c. Probable cause does not mean proof beyond a reasonable doubt, but it does mean something more than mere suspicion. Mere suspicion, no matter how strong, is not probable cause. Mere belief, unsupported by sufficiently trustworthy facts, is not probable cause.

d. In determining whether there was probable cause, you should consider the type of information that a Defendant relied upon, the character of the persons providing the information, the manner in which the information was obtained, and the probable accuracy, trustworthiness, and reliability of the information.

**13. Detention After Probable Cause Has Dissipated**

a. Even though you may find a Defendant originally had probable cause, as previously defined, to arrest the Plaintiff at the time and place they did, you must further examine the facts and circumstances which later came to a Defendant's knowledge after further investigation, to determine if the arrest was lawful.

b. To put it another way, if you find that at the time and place of Plaintiff's arrest, Defendants were at all times acting in a lawful manner in an effort to protect the public and keep the peace, and that after Plaintiff's arrest, facts and circumstances to this effect came to Defendants' knowledge, yet Defendants continued to detain Plaintiff and in fact charged him with a criminal offense, then you may find that such continued seizure was without probable cause, and that the arrest was therefore unlawful.

14. **<u>Proximate Cause</u>**

a. I will now instruct you as to proximate cause. As I told you previously, the last essential element which the Plaintiff must prove in a civil rights claim is that the injuries that the Plaintiff claims to have sustained were proximately caused by the conduct of a Defendant. This means the Plaintiff must prove that his injuries were either a direct result or a reasonably probable consequence of the complained of conduct.

b. A defendant is not legally responsible for any harm caused to a plaintiff by another. A defendant is responsible only for harm for which he or she is the proximate cause.

c. The Plaintiff alleges that he suffered physical pain and suffering and emotional and mental distress, and that he incurred medical and legal expenses, all of which were proximately caused by either Defendant Hall and/or David's conduct.

d. If you find Defendant Hall liable to the Plaintiff, you may award only such compensatory damages as were proximately caused by Defendant Hall.

e. If you find Defendant David liable to the Plaintiff, you may award only such compensatory damages as were proximately caused by Defendant David.

**C. <u>Unreasonable Seizure in Violation of Article 1, §6 of the Rhode Island Constitution</u>**

1. The Plaintiff alleges that Defendant Hall and/or David, acting under color of state law, by their individual and concerted acts and/or omissions, caused Plaintiff to be unlawfully seized in derogation of his constitutional right to be free from unreasonable seizures, causing the Plaintiff to suffer damages, and thereby deprived Plaintiff of rights secured under Article 1, §6 of the Rhode Island Constitution.

2. One of the rights protected in Article 1, §6 of the Rhode Island Constitution is the right to be free from unlawful arrest or seizure.

3. **Unreasonable Seizure**. As stated previously, a seizure must be reasonable. In other words, a seizure is unlawful when it is effected in an unreasonable manner. The reasonableness of a seizure depends on factors such as the severity of the crime at issue, whether the person detained posed an immediate threat to the safety of police or others, and whether the person detained was actively resisting arrest or attempting to evade arrest by flight.

As also stated previously, apprehension by use of excessive force is a seizure subject to the reasonableness requirement. A seizure accompanied by excessive force violates the reasonableness provision of the State Constitution. When a police officer uses excessive force, a plaintiff may recover damages against that police officer.

Excessive force by police officers, even if less than deadly, is not to be deployed lightly. To put it in terms of the test applied: the degree of force used by police is permissible only when a strong government interest *compels* the employment of such force. The essence of the test is that the force which is applied must be balanced against the *need* for that force.

**D. <u>Negligence</u>**

1. The Plaintiff further alleges that Defendants Hall and/or David, by their individual and concerted acts and/or omissions, failed or refused to exercise reasonable care to protect the Plaintiff from reasonably foreseeable harm, causing Plaintiff to suffer damages.

2. In order to find a Defendant negligent, you must first determine that he failed or refused to exercise a duty of care he owed towards the Plaintiff.

3. Defendants Hall and/or David owed a duty of care to the Plaintiff to effectuate his seizure and arrest in a reasonable manner; that is, using only as much force as was necessary to effectuate the Plaintiff's seizure and arrest.

4. If you find that a Defendant failed or refused to exercise this duty of care owed to the Plaintiff, you must next determine if this failure or refusal was the proximate cause of the Plaintiff's injuries.

5. If you find that the failure or refusal to exercise this duty of care was the proximate cause of the Plaintiff's injuries, then I instruct you to find that the Defendant was negligent.

**E. Assault**

1. The Plaintiff also alleges that Defendants Hall and/or David assaulted him.

2. An assault is a physical act of a threatening nature or an offer of corporal injury which puts an individual in reasonable fear of imminent bodily harm. It is the plaintiff's apprehension of injury which renders the defendant's act compensable. Words alone are never sufficient to establish an assault. However, if words are accompanied by a physical act which increases the plaintiff's fear of imminent bodily injury, that is sufficient to establish an assault.

**F. Battery**

1. The Plaintiff has also brought a claim for battery against Defendants Hall and/or David.

2. A battery refers to an act that was intended to cause and in fact does cause an offensive contact with or unconsented touching of or trauma upon the body of another thereby resulting in the consummation of an assault.

3. An intent to injure a plaintiff, however, is unnecessary in a situation in which the defendant willfully sets in motion a force that in the ordinary course causes an injury.

4. In order to recover for a battery, a plaintiff must show that there was an offensive contact with or nonconsensual touching of a body of another. Thus, if a person accidentally and/or inadvertently touches another individual that would not constitute a battery.

**5.** In order to constitute a battery, a person must intend to cause the offensive contact or nonconsensual touching of another person.

**G. False Arrest**

1. The Plaintiff has also brought a claim against Defendants for false arrest.

2. The essential elements of a claim for false arrest are:

a. That the Plaintiff was unlawfully arrested and taken into custody;

b. That Defendants authorized, encouraged, directed or assisted an officer in either doing an unlawful act or procuring without process, the Plaintiff's arrest; and,

c. That the restraint, detention, confinement or arrest caused the Plaintiff to suffer injury, damage, loss or harm.

**H. <u>Vicarious Liability</u>**

1. Under state law, an employer is responsible for the actions of its employees committed while that employee is acting within the scope of the employee's duties and while engaged in the employer's business. This type of liability is known as vicarious liability.

2. The Plaintiff alleges that the City of East Providence is liable for the negligence of its agents, the individual Defendants, police officers employed by the City, whose negligence was within the scope of their employment and was the proximate cause of the injuries suffered by the Plaintiff.

3. If you find that the individual Defendants negligent acts and/or omissions were the proximate cause of the Plaintiff's injuries, and that, at the time of the acts and/or omissions which caused the injuries, Defendants were employed by the City and acting within the scope of their duties as police officers, you may find the City responsible for the Plaintiff's damages.

**I. Qualified Immunity**

1. "Qualified immunity" is an affirmative defense that must be pleaded and proved by a defendant official. Harlow v. Fitzgerald, 457 U.S. 800 (1982). As established by the U.S. Supreme Court, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Id. at 818.

2. The immunity available to a state official as a defense to a claim under §1983 is governed by this standard, not state law. Id. at 818, n.30. Neither a municipality nor a municipal official sued in his or her official capacities is entitled to qualified immunity. Leatherman v. Tarant County Narcotics Intelligence Coordination Unit, 507 U.S. 163 (1993); Scarpa v. Murphy, 624 F. Supp. 33 (D. Mass. 1985). Accordingly, even if you find that one or more of the Defendant's conduct was protected by qualified immunity, this will not shield the City for liability according to the standard that I previously described to you.

3. Individual liability of a public official may be established where it is shown that the challenged conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818; Amsden v. Moran, 904 F.2d 748, 752 (1st Cir. 1990)("Where persons are deprived of property interests, it has long been 'clearly established' that due process safeguards must be afforded.").

4. Indeed, all that is required to overcome any claim of qualified immunity is that "[t]he contours of the right . . . be sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

5. In determining the objective reasonableness required by the qualified immunity standard, "a reasonable public official . . . is expected to know the law." Hall v. Ochs, 817 F.2d 920, 924 (1st Cir. 1987); "[w]hen a right is well established . . . no one who does not know about it can be called 'reasonable' in contemplation of the law." Losch v. Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984).

## J. <u>Damages</u>

### 1. <u>General Instructions</u>

In the event you find for the Plaintiff, you may consider awarding him damages. In your consideration of damages, you will be concerned with three distinct kinds of damages. They are:

a. actual or compensatory damages;

b. punitive damages; and,

c. nominal damages.

2. **Burden of Proof**

a. The burden is on the Plaintiff to prove by a fair preponderance of the evidence that he has suffered damages as a proximate result of Defendants' acts and/or omissions.

b. The Plaintiff should be compensated for all damages proximately resulting from Defendants' acts and/or omissions.

c. Damages must be supported by competent evidence; they cannot be proven by speculation.

d. The burden is also on the Plaintiff to prove by a fair preponderance of the evidence the extent or amount to which he has suffered one of the following elements of damages. Tom Shaw, Inc. v. Derecktor, 639 F. Supp. 1064 (D. R.I. 1986); Jackson v. Choquette & Co., Inc., 80 A.2d 172 (R.I. 1951).

3. **Actual or Compensatory Damages**

a. Compensatory damages can be defined as that amount of dollars which will compensate the Plaintiff for the loss or injury he sustained by reason of a Defendant's act and/or omission. The rationale behind compensatory damages is to restore a person to the position he/she was in prior to the harm or the loss. Compensatory damages, then, is the amount of money which will replace, as near as possible, the loss or harm caused to a person. Albemarle Paper Co. v. Moody, 422 U.S. 405 (1975). More simply, it is the amount of money which will make good or replace the loss caused by the wrong done by a Defendant.

b. In determining the proper measure of compensatory damages, you must keep in mind the legal principle that an injured party should be fully compensated for whatever injury he or she may have sustained. DeSpirito v. Bristol County Water Co., 102 R.I. 50, 53-54, 227 A.2d 782 (1967).

c. **Pain and Suffering**

1) The Plaintiff claims that he experienced pain and suffering, including physical pain and suffering and emotional and mental distress as a result of Defendants' unlawful conduct.

2) If you should find that the Plaintiff is entitled to a verdict, you also should award him an amount to compensate him for any physical pain and suffering and mental anguish he suffered as a proximate result from the injury in question.

3) It is difficult to measure physical pain and suffering and mental anguish and humiliation; nevertheless, you may not speculate—your award must be based on the evidence and must be in an amount which is fair and adequate.

d. **Emotional or Mental Distress**

1) The method by which a plaintiff usually proves that he or she suffered emotional or mental distress is by demonstrating the nature and circumstances of plaintiff's alleged civil rights violation and its effect on him or her. Emotional or mental distress may be evidenced by a plaintiff's conduct and the testimony of others who observed it.

2) If you find that the Plaintiff's rights were violated by Defendants and that this violation proximately caused the Plaintiff emotional or mental distress, then you may consider awarding compensatory damages to Plaintiff for such distress and injury.

3) Mental suffering is a compensable element of damages whether the underlying act that caused the plaintiff's injuries were purely mental, purely physical or a combination thereof. Mental suffering may include nervousness, anxiety, worry, shock, humiliation, embarrassment or indignity. Arlan v. Cervini, 478 A.2d 976 (R.I. 1984).

4. **Nominal Damages**

a. If you find that the Plaintiff is entitled to a verdict according to these instructions, but do not find that the Plaintiff has proved compensatory damages, then you should return a verdict for the Plaintiff in some nominal sum such as one dollar.

b. The award of a nominal sum would not prevent you from awarding punitive damages in such amount as you deem appropriate, if you find that the award of punitive damages is justified under these instructions.

c. However, you may not award the Plaintiff both compensatory and nominal damages, for the reason that nominal damages may be awarded only if you find that the Plaintiff has not proved that he is entitled to compensatory damages, but has been harmed in some way.

5. **Punitive Damages**

a. In addition to compensatory damages which attempt to make a plaintiff whole, the law permits you to award a plaintiff punitive damages under certain limited circumstances. The purpose of this kind of damages is to punish a wrongdoer for misconduct, and to serve as a warning to others not to engage in the same or similar conduct. Palmisano v. Toth, 624 A.2d 314, 317-18, (R.I. 1993); Morin v. Aetna Casualty And Surety Co., 478 A.2d 964, 967 (R.I. 1984).

b. You may award the Plaintiff punitive damages whether or not you find that he suffered actual or compensatory damages. That is, you need not find that the Plaintiff incurred an economic or tangible loss in order to award punitive damages.

c. Further, you may not award punitive damages against a defendant unless you find, by a preponderance of the evidence, that a defendant's actions were maliciously, willfully, wantonly or recklessly done and are found to be so willful, reckless, or wicked that they amount to criminality. Id.

d. In addition, an award of nominal damages or compensatory damages will not prevent you from awarding punitive damages.

e. An act, or a failure to act, is done with "malice" if prompted or accompanied by ill will, spite, or grudge toward a plaintiff. You may consider all the evidence in the case in making this determination.

f. An act is done "willfully" if it is done voluntarily and intentionally, with the specific intent to do something the law forbids; that is to say, with a purpose either to disobey or to disregard the law.

g. Any act or omission is "wantonly" done if done in callous or reckless disregard of, or indifference to the rights of one or more persons, including the injured person.

h. "Recklessly" means with indifference to consequences. If a person acts without regard to possible consequences, he may be found to have acted recklessly.

i. Intent ordinarily may not be proved directly because there is no way to directly examine the thoughts of another human being. You may, however, infer a person's intent from surrounding circumstances. You may consider any statement made or act done or omitted by a person whose intent is in issue, and all other facts and circumstances which indicate his or her state of mind.

**K. <u>Importance of Right</u>**

You may also consider the importance of the constitutional right or rights violated in our system of government, the significance which this particular issue had for Mr. Ferreira, and the significance of the right or rights in the context of the activities in which Mr. Ferreira was engaged at the time of the violation of the right or rights.

**L. Credibility**

I instruct you that you may reject testimony of a witness if such testimony has been impeached or contradicted by positive testimony or by circumstantial evidence, or because of inherent improbabilities in the testimony, or because of contradictions in the testimony or because the testimony is totally at variance with undisputed physical facts. Landry v. Vogel, 234 A.2d 353 (R.I. 1967).

**VII.**

**<u>Special Jury Interrogatories-Plaintiff, Anthony J. Ferreira in His Individual Capacity</u>**

**A. <u>Defendant Hall</u>**

1. Did Defendant Hall unlawfully seize the Plaintiff, Anthony J. Ferreira, in violation of his Fourth Amendment rights? Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If YES, what amount, if any, do you award to Plaintiff, Anthony J. Ferreira, as damages for Defendant Hall's unlawful seizure?

Answer in dollars or NONE: Compensatory damages: $___________
Punitive damages: $___________

2. Did Defendant Hall utilize excessive force in effecting the arrest of Plaintiff, Anthony J. Ferreira, in violation of his Fourth Amendment rights? Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If YES, what amount, if any, do you award to Plaintiff, Anthony J. Ferreira, as damages for Defendant Hall's use of excessive force?

Answer in dollars or NONE: Compensatory damages: $___________
Punitive damages: $___________

3. Did Defendant Hall arrest the Plaintiff, Anthony J. Ferreira, without legal justification (that is, without probable cause), and therefore falsely arrest the Plaintiff, Anthony J. Ferreira? Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If YES, what amount, if any, do you award to Plaintiff, Anthony J. Ferreira, damages for the false arrest committed by Defendant Hall?

Answer in dollars or NONE: Compensatory damages: $___________
Punitive damages: $___________

4. Did Defendant Hall unlawfully seize the Plaintiff, Anthony J. Ferreira, in violation of his rights under the Rhode Island Constitution? Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If YES, what amount, if any, do you award to Plaintiff, Anthony J. Ferreira, as damages for Defendant Hall's unlawful seizure under the Rhode Island Constitution?

Answer in dollars or NONE: Compensatory damages: $___________
Punitive damages: $___________

5. Did Defendant Hall utilize excessive force in effecting the arrest of Plaintiff, Anthony J. Ferreira in violation of his rights under the Rhode Island Constitution? Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If YES, what amount, if any, do you award to Plaintiff, Anthony J. Ferreira, as damages for Defendant Hall's use of excessive force in violation of his rights under the Rhode Island Constitution?

6. Did Defendant Hall commit an assault upon the Plaintiff, Anthony J. Ferreira? Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If YES, what amount, if any, do you award to Plaintiff, Anthony J. Ferreira, as compensatory and/or punitive damages for the assault committed by Defendant Hall?

Answer in dollars or NONE: Compensatory damages: $___________
Punitive damages: $___________

7. Did Defendant Hall commit a battery upon the Plaintiff, Anthony J. Ferreira? Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If YES, what amount, if any, do you award to Plaintiff, Anthony J. Ferreira, as damages for the battery committed by Defendant Hall?

Answer in dollars or NONE: Compensatory damages: $___________
Punitive damages: $___________

8. Did Defendant Hall arrest the Plaintiff, Anthony J. Ferreira, without legal justification (that is, without probable cause), and therefore falsely arrest the Plaintiff, Anthony J. Ferreira? Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If YES, what amount, if any, do you award to Plaintiff, Anthony J. Ferreira, as compensatory and/or punitive damages for the false arrest committed by Defendant Hall?

Answer in dollars or NONE: Compensatory damages: $___________
Punitive damages: $___________

9. By using force to effect Plaintiff Anthony J. Ferreira's seizure, did Defendant Hall negligently fail or refuse to protect Plaintiff from reasonably foreseeable harm? DO NOT ANSWER THIS QUESTION IF YOU RESPONDED "YES" TO QUESTION 4 ABOVE, AND MOVE ON TO SECTION B. Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If you answer NO, skip to Section B. If you answered YES, answer question 9.

10. Was Defendant Hall's negligence the proximate cause of the injuries sustained by the Plaintiff, Anthony J. Ferreira? Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If YES, what amount, if any, do you award to Plaintiff, Anthony J. Ferreira, as damages for the negligent actions of Defendant Hall?

Answer in dollars or NONE: Compensatory damages: $___________

**B. <u>Defendant David</u>**

1. Did Defendant David unlawfully seize the Plaintiff, Anthony J. Ferreira, in violation of his Fourth Amendment rights? Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If YES, what amount, if any, do you award to Plaintiff, Anthony J. Ferreira, as damages for Defendant David's unlawful seizure?

Answer in dollars or NONE: Compensatory damages: $___________
Punitive damages: $___________

2. Did Defendant David utilize excessive force in effecting the arrest of Plaintiff, Anthony J. Ferreira in violation of his Fourth Amendment rights? Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If YES, what amount, if any, do you award to Plaintiff, Anthony J. Ferreira, as damages for Defendant David's use of excessive force?

Answer in dollars or NONE: Compensatory damages: $___________
Punitive damages: $___________

3. Did Defendant David unlawfully seize the Plaintiff, Anthony J. Ferreira, in violation of his rights under the Rhode Island Constitution? Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If YES, what amount, if any, do you award to Plaintiff, Anthony J. Ferreira, as damages for Defendant David's unlawful seizure under the Rhode Island Constitution?

Answer in dollars or NONE: Compensatory damages: $___________
Punitive damages: $___________

4. Did Defendant David utilize excessive force in effecting the arrest of Plaintiff, Anthony J. Ferreira, in violation of his rights under the Rhode Island Constitution? Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If YES, what amount, if any, do you award to Plaintiff, Anthony J. Ferreira, as damages for Defendant David's use of excessive force in violation of his rights under the Rhode Island Constitution?

5. Did Defendant David commit an assault upon the Plaintiff, Anthony J. Ferreira? Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If YES, what amount, if any, do you award to Plaintiff, Anthony J. Ferreira, as compensatory and/or punitive damages for the assault committed by Defendant David?

Answer in dollars or NONE: Compensatory damages: $___________
Punitive damages: $___________

6. Did Defendant David commit a battery upon the Plaintiff, Anthony J. Ferreira? Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If YES, what amount, if any, do you award to Plaintiff, Anthony J. Ferreira, as damages for the battery committed by Defendant David?

Answer in dollars or NONE: Compensatory damages: $___________
Punitive damages: $___________

7. Did Defendant David arrest the Plaintiff, Anthony J. Ferreira, without legal justification (that is, without probable cause), and therefore falsely arrest the Plaintiff, Anthony J. Ferreira? Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If YES, what amount, if any, do you award to Plaintiff, Anthony J. Ferreira, as compensatory and/or punitive damages for the false arrest committed by Defendant David?

Answer in dollars or NONE: Compensatory damages: $___________
Punitive damages: $___________

8. By using force to effect Plaintiff Anthony J. Ferreira's seizure, did Defendant David negligently fail or refuse to protect Plaintiff from reasonably foreseeable harm? DO NOT ANSWER THIS QUESTION IF YOU RESPONDED "YES" TO QUESTION 14 ABOVE, AND MOVE ON TO SECTION C. Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If you answer NO, skip to Section C. If you answered YES, answer question 18

9. Was Defendant David's negligence the proximate cause of the injuries sustained by the Plaintiff, Anthony J. Ferreira? Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If YES, what amount, if any, do you award to Plaintiff, Anthony J. Ferreira, as damages for the negligent actions of Defendant David?

Answer in dollars or NONE: Compensatory damages: $___________

C. **Defendant City of East Providence**

1. ANSWER THIS QUESTION ONLY IF YOU ANSWERED "YES" TO ANY QUESTIONS OTHER THAN 1-4 IN SECTION A AND/OR 1-4 IN SECTION B ABOVE. Was the assault, battery, wrongful arrest, or negligence you found committed by Hall and/or David during the course of and incident to the performance of their duties as police officers employed by the City of East Providence? Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If YES, what amount, if any, do you award to Plaintiff, Anthony J. Ferreira, as damages he sustained against the City of East Providence under the *doctrine of respondeat superior* as the employer of Defendants Hall and/or David?

Answer in dollars or NONE:

| | | |
|---|---|---|
| Assault: | Compensatory damages: | $___________ |
| Battery: | Compensatory damages: | $___________ |
| Wrongful arrest: | Compensatory damages: | $___________ |
| Negligence: | Compensatory damages: | $___________ |

**VIII. Special Jury Interrogatories- Plaintiff Anthony J. Ferreira in his Capacity as Administrator of the Estate of Patricia J. Ferreira[11]**

**IX. Special Jury Interrogatories- Plaintiff Anthony J. Ferreira in his Capacity as Guardian of the Estate and Person of Ryan C. Ferreira**

If you returned a verdict in favor of the Plaintiff, in his capacity as Administrator of the Estate of Patricia J. Ferreira, then you may award actual or compensatory damages to her sole

[11] Counsel will file a supplemental memorandum with these interrogatories after he consults with the Court and Attorney DeSisto

beneficiary and son, Ryan C. Ferreira for loss of parental consortium—that is the permanent deprivation of the love, companionship, affection, society, moral support, and solace of Ms. Ferreira from the date of her death for the balance of her life expectancy. You may also award actual or compensatory damages to Ryan C. Ferreira for the loss of the training and guidance of his mother from the date of her death to the date Ryan C. Ferreira attains the age of majority.

Do you award compensatory or actual damages to Plaintiff, in his capacity as guardian of the Estate and Person of Ryan C. Ferreira, for Ryan C. Ferreira's loss of parental consortium?

Answer by placing a check mark in the blank that states your finding.

_________ YES _________ NO

If YES, what amount, if any, do you award to Plaintiff, in his capacity as guardian of the estate and person of Ryan C. Ferreira, as damages for Ryan C. Ferreira's loss of parental society and companionship?

Answer in dollars or NONE: $___________

## X. Estimated Time of Trial

Plaintiff's counsel estimates that it will take 1-2 weeks to present Plaintiff's case-in-chief and that it will take approximately 2-3 weeks to litigate the entire case.

## XI. Certificate of Counsel

The undersigned counsel of record for the Plaintiff hereby certifies that counsel has to the best of his abilities complied with the requirements of the Pretrial Order.

Respectfully submitted,
PLAINTIFF,
By his attorneys,
SINAPI, FORMISANO & CO., LTD.

/s/ V. Edward Formisano
V. Edward Formisano (5512)
100 Midway Place, Suite 1
Cranston, Rhode Island 02920-5707
(401)944-9690
(401)943-9040 (facsimile)

**CERTIFICATION**

TO: Marc DeSisto, Esq.
211 Angell Street
P.O. Box 2563
Providence, RI 02906

I hereby certify that on the 2nd day of March, 2007, I caused the within to be electronically filed with the Clerk of the U.S. District Court for the District of Rhode Island using the CM/ECF System. I also certify that the above counsel of record has received the within.

/s/ V. Edward Formisano