**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **ANTHONY J. FERREIRA, in both his capacity as Administrator of the Estate of Patricia J. Ferreira and as guardian of the estate and person of Ryan C. Ferreira, Plaintiff,** | : | |
| **v.** | : | **C.A. No. 05-73S (consolidated)** |
| **CITY OF EAST PROVIDENCE, by and through its Treasurer, KEVIN J. FITZGERALD, et al., Defendants** | : | |
| **ANTHONY J. FERREIRA, Plaintiff,** | : | |
| **v.** | : | |
| **CITY OF EAST PROVIDENCE, by and through its Treasurer, KEVIN J. FITZGERALD, et al., Defendants** | : | |

**PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION IN LIMINE—UNCONTROLLABLE IMPULSE**

Now comes the Plaintiff in the above-cited matter and does hereby object to Defendants' Motion in Limine—Uncontrollable Impulse..

**WHEREFORE**, the Plaintiff respectfully prays that Defendants' Motion in Limine be denied.

PLAINTIFF,
By his Attorneys,
SINAPI FORMISANO & COMPANY, LTD.

/s/ V. Edward Formisano
V. Edward Formisano (#5512)
100 Midway Place, Suite 1
Cranston, Rhode Island 02920-5707
(401) 944-9690
(401) 943-9040 (facsimile)

**CERTIFICATION**

TO: Marc DeSisto, Esq.
211 Angell Street
P.O. Box 2563
Providence, RI 02906

I hereby certify that on the 8th day of March, 2007, I caused the within to be electronically filed with the Clerk of the U.S. District Court for the District of Rhode Island using the CM/ECF System. I also certify that the above counsel of record has received the within.

/s/ V. Edward Formisano

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **ANTHONY J. FERREIRA, in both his capacity as Administrator of the Estate of Patricia J. Ferreira and as guardian of the estate and person of Ryan C. Ferreira,** **Plaintiff,** | : | |
| **v.** | : | **C.A. No. 05-73S (consolidated)** |
| **CITY OF EAST PROVIDENCE, by and through its Treasurer, KEVIN J. FITZGERALD, et al.,** **Defendants** | : | |
| **ANTHONY J. FERREIRA,** **Plaintiff,** | : | |
| **v.** | : | |
| **CITY OF EAST PROVIDENCE, by and through its Treasurer, KEVIN J. FITZGERALD, et al.,** **Defendants** | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS OBJECTION TO DEFENDANTS' MOTION IN LIMINE—UNCONTROLLABLE IMPULSE**

Now comes the Plaintiff in the above-cited matter, and does hereby submit the within Memorandum of Law in support of his Objection to Defendants' Motion in Limine—Uncontrollable Impulse.

Defendants claim that all testimony regarding Ms. Ferreira removing her handguns from the home of John Sousa ("Sousa") without any interference from the police officers who responded to the scene should be precluded. Defendants assert that such testimony is not relevant to Plaintiff's suicide claims and introduction of this testimony is prejudicial and will mislead the jury.

## I. Summary of Argument

The Plaintiff submits that testimony relative to Defendants Steven Tiernan ("Tiernan"), Michael David ("David"), and Thomas Rush's ("Rush") failure to seize Ms. Ferreira's guns at 64 Brightridge Avenue is relevant insofar as such testimony will demonstrate that the officers were improperly trained and deliberately indifferent to the safety and well-being of Ms. Ferreira. Further, this testimony establishes that Defendants owed a special duty of care to Ms. Ferreira. Finally, and most importantly, such testimony is relevant insofar as it allows the jury to view the complete picture of the sequence of events which led to Ms. Ferreira's death.

## II. Testimony Regarding Defendants' Failure to Secure Ms. Ferreira's Guns is Relevant to Plaintiff's Constitutional Claims

In their Motion, Defendants assert that testimony relative to Defendants' failure to secure Ms. Ferreira's handguns at 64 Brightridge is not relevant. This assertion is erroneous. Testimony about Defendants' failure to secure Ms. Ferreira's handguns will be used at trial to establish that Defendants City of East Providence ("City") and Gary Dias ("Dias") were deficient in properly training their police officers relative to General Order No, 2000-43,[1] R.I.G.L. §40.1-5-7, and the handling of domestic violence response situations. In addition, such testimony will show that Defendants acted with deliberate indifference to the safety of Ms. Ferreira. Further, Defendants' failure to secure Ms. Ferreira's handguns is part of the "totality of circumstances" and continuing sequence of events which led to the Ms. Ferreira's death. It would therefore be unfair, improper and misleading to withhold such information from the jury.

## II. The Uncontrollable Impulse Rule is Inapplicable Insofar as a Factual Dispute Exists as to Whether a Suicide Occurred

[1] General Order No. 2000-43 sets forth the policy of the Department for procedures to be followed by Department members when confronted with persons that are in crisis/mentally ill/suicidal.

The "uncontrollable impulse" rule, as discussed in detail below, was developed to permit liability for negligent conduct in lawsuits involving suicide. In the present case, however, the Plaintiff has presented evidence suggesting that Ms. Ferreira did not commit suicide. First, Plaintiff's expert, David M. Grossi, stated, in his expert report, that "It is highly probable that Officer Kevin Feeney inadvertently caused the discharge of Ms. Ferreira's pistol" when he reached into Ms. Ferreira's motor vehicle. Report of David M. Grossi, dated February 19, 2007 ("Grossi Report") at pg. 21. Second, Plaintiff has proffered evidence, through Mr. Grossi's report, that Defendants use of the flash bangs caused a "startle effect" or "sympathetic muscle contractions" that may have caused Ms. Ferreira to involuntarily pull the trigger of the gun in her mouth. See Grossi Report at pgs. 6-7.

Accordingly, since facts are in dispute as to whether a suicide did occur, the uncontrollable impulse rule is inapplicable, and the ordinary negligence standard should apply in this case.

**III. "Uncontrollable Impulse" Rule**

In support of their Motion, the Defendants rely on the "uncontrollable impulse" rule, as described in Clift v. Narragansett Television, L.P., 688 A.2d 805 (R.I. 1996), as the liability standard in suicide cases. However, Defendants' reliance on Clift is misplaced.

In its decision, the Clift court applied the "uncontrollable impulse" rule to the facts of the case. The Court stated:

> With regard to civil claims alleging, as a basis for liability, the negligence of a defendant as being the proximate cause of a decedent's suicide, the majority rule that has evolved is that unless a special relationship existed between the defendant and the deceased that created an increased or higher duty of care to protect a potentially suicidal person from foreseeable injury, the Restatement (Second) Torts §455 (1965) rule [referred to as the "uncontrollable impulse" rule] is the most favored and applied. Id. at 810 (emphasis added).

The Court further stated that the "uncontrollable impulse" rule "recognizes liability for negligent conduct (1) that brings about delirium or insanity in another and (2) if while that condition of delirium or insanity continues to exist, it prevents the affected person from realizing the nature of his or her condition or makes it impossible for him or her to resist the suicidal impulse by depriving that person of the capacity to reasonably control his or her conduct and not carry out the suicidal impulse." Id. However, as stated above, the "uncontrollable impulse" rule is not applicable when a "special relationship" exists between defendant and the decedent. Id. The existence of a "special relationship" is a question of fact. Frizzel v. Town of Little Compton, 2000 WL 33159170 *2 (Jan. 28, 2000 R.I. Sup. Ct.)("Whether this [special relationship] test is satisfied is one of factual determination more appropriate for a trier of fact").

**A. The Uncontrollable Impulse Rule is Inapplicable to this Matter Due to Special Relationship Between Defendants and Ms. Ferreira**

**1. A Special Relationship Existed Based on Forseeability**

The uncontrollable impulse rule is not applicable to this case because a special relationship existed between Defendants Steven Tiernan ("Tiernan"), Michael David ("David"), and Thomas Rush ("Rush") and Ms. Ferreira when Defendants Tiernan, David, and Rush responded to a service call at 64 Brightridge Avenue. A special relationship exists if the harm to a decedent was foreseeable. Frizzel v. Town of Little Compton, 2000 WL 33159170 *2 ("as in traditional negligence principles, 'forseeability of the risk of harm is the touchstone for the imposition of a duty under the special relationship analysis.'").

In the present case, Ms. Ferreira's suicide was foreseeable. Defendants Tiernan, David, and Rush had specialized knowledge of Ms. Ferreira's unstable mental state at 64 Brightridge Avenue. In his deposition testimony, Defendant David described Ms. Ferreira as "upset" and "angry." He also testified that Sousa and Ms. Ferreira had a "volatile" relationship. Defendant Rush testified that

Ms. Ferreira was "angry." Ms. Ferreira, in Rush's presence, stated that "her life was a mess." In addition, the East Providence Police Department was familiar with Ms. Ferreira based upon prior interactions. Defendant Tiernan testified that he had responded to approximately 50 calls for service that involved Ms. Ferreira, Defendant Rush knew Ms. Ferreira for "years" and had refereed arguments between her and her John Sousa in the past, and Defendant David had responded to 10-15 calls involving Ms. Ferreira prior to October 10, 2001. It is also noteworthy that Ms. Ferreira had had a relationship with a former reserve officer in the Department who was later investigated by the Department for stalking Ms. Ferreira. Ms. Ferreira had assisted Defendant Walter Barlow ("Barlow") in the investigation.

Further, Defendants Tiernan, David, and Rush had knowledge that Ms. Ferreira possessed firearms. In fact, according to Defendants Tiernan and David, Ms. Ferreira stated in their presence that she wanted to take her guns—a .38 caliber revolver and a 9mm handgun—with her. Sousa and another party who was present, Sousa's ex-wife, Irene Sousa a/k/a Alexandra Walmsley, both testified at their depositions that they informed the officers that Ms. Ferreira was mentally unstable and that they should not let her leave with her firearms.

In addition, the Plaintiff's experts, Lloyd F. Price, M.D. and Mr. Grossi, both stated in their expert reports that allowing Ms. Ferreira to leave 64 Brightridge with her firearms, while "in crisis," increased the risk of suicide.

Based on the foregoing, Ms. Ferreira's death was clearly foreseeable by Defendants Tiernan, David, and Rush. As such, a special relationship existed between Defendants Tiernan, David, and Rush and Ms. Ferreira.

**2. A Special Relationship Was Created Pursuant to Rhode Island Statutes and East Providence Police Department Policy**

A special relationship existed between Defendants Tiernan, David, and Rush and Ms.

Ferreira pursuant to R.I.G.L. §40.1-5-7, Emergency Certification. R.I.G.L. §40.1-5-7 (a)(1), states, in pertinent part:

> If an examination (by a physician) is not possible because of the emergency nature of the case…the applicant on the basis of his or her observation may determine…that emergency certification is necessary. In the event that no physician is available…a police officer who believes the person to be in need of immediate care and treatment…may make the application for emergency certification to a facility.

The foregoing statute imposes a particular or special duty upon police officers to get individuals immediate mental health care in certain situations. As stated above, Defendants Tiernan, David, and Rush acknowledged that Ms. Ferreira was "upset" and "angry," and Plaintiff's experts have opinioned that she was "in crisis." As such, Defendants Tiernan, David, and Rush had a special relationship with Ms. Ferreira under the aforementioned statute.

East Providence Police Department, General Order #2000-43[2] also created a special relationship between Defendant Tiernan, David, and Rush and Ms. Ferreira. The Order requires police officers to follow certain procedures and protocol regarding persons who are in crisis, suicidal or mentally ill. The Order permits police officers "to get psychiatric assistance for [a person in crisis]." The Order also requires officers to take a "tactful and sensitive approach" when interacting with such persons. Further, the Order allows police officers to seize the weapons of those individuals in crisis. As stated above, Ms. Ferreira was "in crisis" while she was at 64 Brightridge Avenue, and Defendants Tiernan, David, and Rush had specialized knowledge of Ms. Ferreira's mental state based upon their testimony. Therefore, a special relationship arose between Ms. Ferreira and Defendants Tiernan, David, and Rush under General Order #2000-43.

---

[2] General Order #200-43, 1.2 states: "Often times, police officers, due to the dynamic nature of their role, may be called to intervene in suicide or *mental illness/crisis situations*. Since these situations can be volatile, escalate, and erupt into grave circumstances, interaction with individuals in such a state require *a tactful and sensitive approach.* The main goal is to get psychiatric assistance for the subject, if needed, and in the safest manner possible. General Order #2000-43, 1.2 (emphasis added).

In addition, the Rhode Island Domestic Violence Prevention Act, R.I.G.L. §12-29-1, et seq., established a special relationship between Defendants Tiernan, David, and Rush and Ms. Ferreira. R.I.G.L. §12-29-3(a) states, "The primary duty of law enforcement officers when responding to a domestic violence situation is to…protect the victim." Insofar as Defendants allege that Defendants Tiernan, David, and Rush were responding to a domestic call, Defendants Tiernan, David, and Rush had a duty to protect Ms. Ferreira. This duty clearly established a special relationship between Ms. Ferreira and Defendants Tiernan, David, and Rush.

Based on the foregoing statutes and policy, it is quite evident that Defendants Tiernan, David, and Rush had a special relationship with Ms. Ferreira or owed her a special duty of care.

**3. A Special Relationship Existed on Account of Defendants Duty to Protect Ms. Ferreira**

A special relationship existed between Ms. Ferreira and Defendants based on the fact that Defendants had an affirmative duty to protect Ms. Ferreira from physical harm.

As a general rule, the state has no affirmative obligation to protect its citizens from the violent acts. Detainee v. Winnebago County Dep't of Soc. Serves., 489 U.S. 189, 197 (1989). However, there are two exceptions to this general rule—the special relationship exception and the state-created danger exception. The "special relationship" exception exists where "the State takes a person into its custody and holds him there against his will" thereby limiting that person's "freedom to act on his own behalf" and "render[ing] him unable to care for himself." Id. at 199-200; U.S. v. Ventura, 85 F.3d 708 (1st Cir.1996)(an individual is "in custody" if there is a "restraint of freedom of movement"). Under such circumstances, the Constitution imposes a "duty to assume some responsibility for his safety and general well-being." Id. at 200; Rivera v. Rhode Island, 312 F.Supp.2d. 175 (D.R.I. 2004)("Indeed, even before DeShaney, the 'vast majority' of cases finding the existence of a 'special relationship' were cases in which the plaintiff was injured while in state

custody"). The second exception to the general rule—the "state created danger" exception—exists in cases where the injury results from a danger that the State, itself, created or exacerbated. DeShaney, 489 U.S. at 201. See also Monfils v. Taylor, 165 F.3d 511 (7th Cir.1998); Kneipp v. Tedder, 95 F.3d 1199 (3rd Cir.1996).

In the present case, with regards to the special relationship exception, it is evident that Ms. Ferreira was in custody of Defendants at the time Defendants established a perimeter, with a number of officers in positions of cover, surrounding her motor vehicle. At that point, Ms. Ferreira was unable to voluntarily leave thereby creating an affirmative duty upon Defendants to protect her safety and well-being. This affirmative duty established a special relationship between Defendants and Ms. Ferreira.

Under the "state created danger" exception, Defendants engaged in affirmative acts that created or increased the risk of injury to Ms. Ferreira. First, Defendants failed to seize Ms. Ferreira's firearms while at 64 Brightridge Avenue. According to Mr. Price, had Defendants seized the guns it "would have thwarted Ms. Ferreira's contemplated plan for suicide." Report of Lloyd F. Price, M.D., dated February 28, 2007, ("Price Report") at pg. 6. Second, Defendants failed to get Ms. Ferreira necessary psychiatric treatment. Again, according to Mr. Price, "had Ms. Ferreira been provided crisis intervention services…it is probable that she would not have died." Price Report at pg. 4. Third, Defendant Barlow violated established standards of hostage negotiation protocol. As Mr. Grossi states in his expert report, Defendant Barlow used "emotionally charged dialogue" when speaking with Ms. Ferreira, while she had a gun pointed at her mouth.[3] Grossi Report at pg. 11. Defendant Barlow also had a past personal and professional relationship with Ms. Ferreira, which prevented him from being "detached and objective" during the negotiations and lacked proper crisis

---

[3] Plaintiff testified at his deposition that he overheard Defendant Barlow yelling and swearing at Ms. Ferreira during the negotiations. Mr. Ferreira also testified that the relationship between Defendant Barlow and Ms. Ferreira

negotiation training. Grossi Report at pgs.11-12. Mr. Grossi also states that Defendant Barlow "rushed to terminate negotiations and instead opted for a tactical resolution too quickly." Grossi Report at pg. 12. Mr. Grossi opines that had a trained, independent crisis negotiator been used in this situation, Ms. Ferreira would have responded in a more rational manner. Grossi Report at pg. 13. Mr. Price also states that the aforementioned actions of Defendant Barlow deteriorated Ms. Ferreira's mental state and "significantly increased her risk of death." Price Report pgs. 6-7.

Third, Defendants improperly used the flash bang devices, which contributed to Ms. Ferreira's heightened and distraught emotional state and caused or contributed to the "startle effect," which probably led to her death. Mr. Grossi states, regarding the use of the flash bangs, "the deployment of distraction devices (flash bangs) in an effort to rescue a woman from herself who was seen holding a firearm to her mouth…fell well below the nationally accepted standard of care for tactical response." Grossi Report at pg. 7. Finally, Defendants inappropriately implemented a "hasty" tactical plan to extricate Ms. Ferreira from her motor vehicle without rehearsal. The plan called for numerous police officers to storm Ms. Ferreira's motor vehicle, armed with ballistic shields and Haligan Tools, while two (2) loud, distraction devices were simultaneously thrown at the vehicle. The plan then required the officers to break the window glass of the vehicle, while Ms. Ferreira was inside with a loaded gun pointed at her mouth. Common sense indicates that Defendants tactical plan created or increased the risk of injury to Ms. Ferreira. Further, Mr. Price states that Defendants conduct during the "barricade situation" contributed to Ms. Ferreira's death. Price Report at pg. 6-7.

Accordingly, by Defendants undertaking these affirmative acts, this Court should conclude that Defendants exacerbated or created a risk of harm to Ms. Ferreira and, as a result, a special relationship existed between Ms. Ferreira and Defendants.

---

had deteriorated over the years.

Therefore, insofar as a special relationship existed in this case, which created a higher of duty of care owed by Defendants to Ms. Ferreira, the uncontrollable impulse standard, as described in Clift, does not apply.

**III. Conclusion**

For the reasons discussed herein, the Plaintiff respectfully prays that Defendants' Motion in Limine—Uncontrollable Impulse be denied.

PLAINTIFF,
By his Attorneys,
SINAPI FORMISANO & COMPANY, LTD.

/s/ V. Edward Formisano
V. Edward Formisano (#5512)
100 Midway Place, Suite 1
Cranston, Rhode Island 02920-5707
(401) 944-9690
(401) 943-9040 (facsimile)

**CERTIFICATION**

TO: Marc DeSisto, Esq.
211 Angell Street
P.O. Box 2563
Providence, RI 02906

I hereby certify that on the 8th day of March, 2007, I caused the within to be electronically filed with the Clerk of the U.S. District Court for the District of Rhode Island using the CM/ECF System. I also certify that the above counsel of record has received the within.

/s/ V. Edward Formisano