UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ANTHONY J. FERREIRA, as Administrator of the Estate of Patricia J. Ferreira, and as Guardian of the Estate and Person of Ryan C. Ferreira,<br>*Plaintiff,*<br>vs.<br>CITY OF EAST PROVIDENCE, et al.,<br>*Defendants.* | C.A. No. 05-73 S |
| ANTHONY J. FERREIRA, individually,<br>*Plaintiff,*<br>vs.<br>CITY OF EAST PROVIDENCE, et al.,<br>*Defendants.* | C.A. No. 05-75 S<br>(member case) |

**DEFENDANTS' SUPPLEMENTAL AND REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION IN LIMINE – UNCONTROLLABLE IMPULSE**

Defendants have previously filed a Motion in Limine seeking to exclude testimony regarding the alleged failure of police officers to seize Ms. Ferreira's handguns while responding to the domestic call based on the position that no reasonable jury could find that the actions of the police brought about an uncontrollable impulse to commit suicide. Since the filing of their Motion in Limine, defendants have received the report of plaintiff's proposed psychiatric expert, Dr. Price (see Exhibit A), as well as Plaintiff's Memorandum of Law in Support of his Objection to Defendants' Motion in Limine- uncontrollable impulse. Defendants hereby submit the instant

Memorandum to expand their Motion in Limine to exclude the testimony of Dr. Price as well as to reply to Plaintiff's Objection to the original Motion in Limine.

**A. DR. PRICE SHOULD BE PRECLUDED FROM TESTIFYING**

Dr. Price's Report purports to establish, to a reasonable degree of medical certainty, the causal relationship between the defendants' actions and plaintiff's death. For the reasons more fully outlined herein and the law previously provided in Defendants' Motion in Limine, defendants hereby move to exclude the testimony of Dr. Price based on the fact that Dr. Price's proposed testimony will not establish the necessary causation standard. In particular, according to his report, Dr. Price will not testify to a reasonable degree of medical certainty that the actions of the police (either at the domestic call or in response to Patricia's suicide threat) brought about an uncontrollable impulse to commit suicide. Accordingly, Dr. Price should be excluded from testifying at trial.

As previously noted in Defendants' Motion in Limine as well as in their Pretrial Memorandum, suicide is considered an intervening act that breaks the causal relationship between the defendants' alleged negligence and the injury. *Clift v. Narragansett Television, L.P., 688 A.2d 805, 808 (R.I. 1996) (Historically, the act of suicide terminated a defendant's civil liability).* This break in the causal connection has evolved to the current recognition that certain activity by a defendant may be sufficient for liability if defendant causes the "uncontrollable impulse" that leads to the individual's suicide. *Id.* As more fully explained by the Restatement (Second) Torts § 455 (1965) and embraced by the Rhode Island Supreme Court,[1] a defendant can only be held liable for negligent conduct that "(1) brings about delirium

[1] As also more fully outlined in Defendants' Pretrial Memorandum, "uncontrollable impulse" is the standard to apply to both plaintiff's state and federal claims. *Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 561 (1st Cir. 1989) citing Springer v. Seaman, 821 F.2d 871, 876-79 (1st Cir. 1987) ("inquiries into causation under § 1983 are cabined within common law tort principles") and Memphis Community School Dist. v. Stachura, 477 U.S. 299, 305-*

or insanity in another and (2) if, while that condition of delirium or insanity continue[d] to exist, it prevent[ed] the affected person from realizing the nature of his or her condition or [made] it impossible for him or her to resist the suicidal impulse by depriving that person of the capacity to reasonably control his or her conduct and not carry out the suicidal impulse." Id. *See also, Restatement (Second) Torts § 455 (1965).*

Thus, in this case, in order to succeed, plaintiff must present expert testimony establishing: (1). the suicide was the result of an "uncontrollable impulse"; and (2). the defendants caused that "uncontrollable impulse." That is, that the negligent conduct of defendants caused the delirium or insanity (the uncontrollable impulse) which prevented Patricia from resisting the suicidal impulse.

However, as proffered in Dr. Price's expert report, (dated 2/28/07 but received 3/7/07), Dr. Price will not testify, to a reasonable degree of medical certainty, that defendants caused Patricia to suffer from the uncontrollable impulse that led to her suicide. All Dr. Price proposes to testify is that:

1. Patricia was "in crisis" at the time of the domestic call;
2. Had Patricia been given crisis intervention services it was probable that she would not have died;
3. Had the officers taken her guns at time of domestic call it was probable that she would not have died;
4. The police conduct during the barricade situation was a "substantial contributing cause to Ms. Ferreira's death."

---

*06 (1986) (noting that common-law principles control the issuance of damages under § 1983). See also* Soto v. Carrasquillo*, 878 F. Supp. 324, 331 (D.P.R. 1995).*

There is nothing in this Report discussing whether Patricia was suffering from delirium or insanity at the time of her suicide, or more importantly that it was defendants' actions that caused such delirium or insanity (uncontrollable impulse) that led to her suicide. Rather, Dr. Price offers alternative conclusions that "had the police removed Ms. Ferreira's handguns, it is probable that should not have died"[2] and that the "police conduct during the barricade situation was a substantial contributing cause to Mr. Ferreira's death." Dr. Price does not propose to testify that the police, in allowing Ms. Ferreira to retain handguns, brought about an uncontrollable impulse to commit suicide. Rather, all Dr. Price offers is the conclusion that it was "probable" she wouldn't have died. A glaring omission from Dr. Price's report are allegations that the police officers physically injured Ms. Ferreira or intentionally inflicted mental or emotional injury through wrongful accusation, false arrest or torture upon Ms. Ferreira that led to an uncontrollable impulse. *Logarta v. Gustafson, 998 F.Supp.998, 1005 (D. Wis. 1998) (citations omitted).* Dr. Price's conclusions, as a matter of law, are not sufficient to support the causation standard required to hold defendants' liable for plaintiff's suicide and thus, Dr. Price should be precluded from testifying at trial.

**B. REPLY TO PLAINTIFF'S OBJECTION TO MOTION IN LIMINE**

In opposition to defendants' Motion in Limine seeking to exclude testimony and/or evidence regarding the officers' alleged negligence in failing to seize Patricia's weapons during the domestic call, plaintiff further argues that such testimony, in the first instance, is admissible because the "uncontrollable impulse rule is inapplicable insofar as a factual dispute exists as to whether a suicide occurred." In support of this "factual dispute" plaintiff points to the report of

---

[2] In fact, Dr. Price appears to intimate that he cannot state to a reasonable degree of medical certainty that Patricia died as a result of an uncontrollable impulse to commit suicide that was caused by defendants because he cannot even state that she died from a suicide. If Dr. Price cannot affirmatively state that Patricia did or did not die as a result of suicide or if it was by accident, he clearly cannot offer an opinion as to whether the defendants' actions created the uncontrollable impulse to commit suicide.

his proposed expert on police procedures, David M. Grossi, who opines that there are two (2) alternative means that plaintiff could have died – either through the so-called "startle effect" caused by the use of flashbangs or by Officer Feeney inadvertently discharging Patricia's weapon when he attempted to rescue her. *Plaintiff's Memorandum of Law in Support of his Objection to Defendants' Motion in Limine –Uncontrollable Impulse, (Doc. 67) at 5.* Putting aside the actual factual evidence contained in the videotape that defendants submit clearly negates the claim that the gun discharge was a "startle effect" to the flashbangs as well as the recognition that the basis to support Officer Feeney's alleged discharge of the weapon is equally explainable by at least three (3) other equally probable events, defendants submit that plaintiff's claimed "factual dispute" does not support the introduction of such evidence. Rather, defendants submit that utilizing either of these alternative causes of Patricia's injuries further negates the relevance and/or admissibility of the events surrounding the alleged failure to seize the weapons during the domestic call because the subsequent acts are intervening negligent acts that render failure to seize the weapons remote.

Under Rhode Island law, if the intervening negligence of a responsible third party renders defendant's alleged negligence remote, the defendant will be relieved of liability. *Aldcroft v. Fidelity & Cas. Co., 259 A.2d 408, 411 (R.I. 1969).* "The test for remoteness is whether the intervening act could reasonably have been foreseen as a natural and probable result of the original act of negligence of the defendant." *Roberts v. Kettelle, 356 A.2d 207, 213 (R.I. 1976); Casador v. First National Stores, 478 A.2d 191, 194 (R.I. 1984).* If the independent or intervening cause is not reasonably foreseeable, the doctrine of "independent intervening cause" will insulate a defendant from liability.

In the instant case, plaintiff is asking the Court (and eventually the jury) to conclude that at the time the officers' alleged negligence, that is, their failure to seize Patricia's weapon knowing she was "in a crisis", a natural and probable result of that negligence was that at some future time another police officer would be negligent by accidentally discharging the weapon in an attempt to disarm her or that other police officers would negligently take an action that caused the so-called "startle effect" resulting in the discharge of the weapon. Defendants submit that as a matter of law, there is absolutely no basis to support this conclusion. Accordingly, even if the Court should determine that plaintiff can present such alternative theories as to the manner of death, the alleged failure to confiscate the weapons still would not be admissible because such alleged negligence is remote and thus superceded by the claimed intervening acts.

In addition, in opposition to Defendants' Motion in Limine, plaintiff cites to a Superior Court decision for the proposition that even if this was a suicide, the "uncontrollable impulse" standard does not apply because there was a "special relationship" between decedent and defendants. Defendants submit that plaintiff's reliance on the Superior Court decision is misplaced in the first place because the section quoted by plaintiff is specifically contradictory to R.I. Supreme Court precedent.[3] In particular, as more fully outlined in Defendants' Pretrial Memorandum, the standard for determining whether a special relationship exists is not based on the "foreseeability of the risk of harm" but rather on custodial nature of the relationship. *Clift v. Narragansett TV L.P., 688 A.2d 805, 810 (R.I. 1996) citing Hickey v. Zezulka, 439 Mich. 408, 487 N.W.2d 106, 119 (Mich. 1992) (prisoner in a holding cell hanged himself and court held that the defendant owed a duty of ordinary care to give aid to and protect the prisoner from harm because of the special relationship that existed between jailer and his prisoner and the prisoner's*

[3] It is further noteworthy that the same trial justice that denied defendants Motion for Summary Judgment subsequently granted defendants' Rule 50 Motion for Judgment based on the lack of special relationship.

*claim brought by his legal representatives was premised upon the theory that the defendant was negligent in failing to prevent his prisoner's suicide or in creating a stimulus for the commission of his suicidal act, and the suicide was not a superseding intervening cause of his injury);* *Falkenstein v. City. of Bismarck, 268 N.W.2d 787, 791 (N.D. 1978)(inmate of city jail committed suicide and court held that "notice of propensity to commit suicide would result in an obligation to exercise greater care in preventing the suicide");* *Meier v. Ross General Hospital, 69 Cal. 2d 420, 445 P.2d 519, 71 Cal. Rptr. 903 (Cal. 1968)(a hospital was potentially liable because a hospital patient who was at a high risk for suicide was placed near an open window from which she later jumped).* Of course, once the "special relationship" is established, the foreseeability of the harm would then be analyzed in determining whether defendants breached the duty of care. Whether a "special relationship" exists, however, must first be determined before any such analysis addressing the foreseeability of harm. Such a requirement is premised upon the recognition that a suicidal victim, because of the custodial relationship, is unable to take action to protect themselves. In the instant case, there clearly was no such "special relationship" at time of the domestic call.

Thus, for the reasons outlined herein, as well as those raised in Defendants' initial Motion in Limine, defendants respectfully request that this Court exclude the testimony of Dr. Price as well as exclude testimony regarding the alleged failure of the officers to seize the weapons during the domestic call.

Defendants,
By their attorney,

*/s/ Marc DeSisto*

Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
Phone: (401) 272-4442
Fax: (401) 272-9937
Email: marc@desistolaw.com

CERTIFICATION

I hereby certify that the within document has been electronically filed with the Court on March 9, 2007, and is available for viewing and downloading from the ECF system.

*/s/ Marc DeSisto*

Marc DeSisto