**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **ANTHONY J. FERREIRA, in both his capacity as Administrator of the Estate of Patricia J. Ferreira and as guardian of the estate and person of Ryan C. Ferreira,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **C.A. No. 05-73S (consolidated)** |
| **CITY OF EAST PROVIDENCE, by and through its Treasurer, KEVIN J. FITZGERALD, et al.,** | : | |
| **Defendants** | : | |
| **ANTHONY J. FERREIRA,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | |
| **CITY OF EAST PROVIDENCE, by and through its Treasurer, KEVIN J. FITZGERALD, et al.,** | : | |
| **Defendants** | : | |

## PLAINTIFF'S STATEMENT OF DISPUTED FACTS

Now comes the Plaintiff,[1] pursuant to Fed.R.Civ.P. 56 and Local Rule 56(a), and hereby submits his Statement of Disputed Facts.

### I. Material Facts Cited by Defendants in Dispute

1. In ¶1, Defendants claim, as they do repeatedly in their Memorandum and Statement of Undisputed Facts, that Ms. Ferreira committed suicide. This claim is contradicted by the Plaintiff's expert, David M. Grossi,[2] and therefore the issue as to whether Ms. Ferreira committed suicide is a material factual issue in dispute.

---

[1] The reference to Plaintiff herein is to Anthony Ferreira in his individual capacity and as administrator and guardian.

[2] Counsel understood that the Court did not require the parties to submit affidavits or declarations pursuant to 28 U.S.C. §1746 from their respective experts. The experts' reports were previously provided to the Court. The

2. In ¶2, Defendants address a portion of the Plaintiff's discussion with Defendant Barlow. The Plaintiff also told Barlow that John Sousa ("Sousa") "threw both them [Ms. Ferreira and Ryan Ferreira]" out of his house. Deposition of Anthony Ferreira ("Ferreira)"at 38.

3. In ¶3, Defendants recount a portion of Defendant Barlow's actions after he spoke with Ryan Ferreira. Defendant Barlow also contacted the Department of Children, Youth and Families ("DCYF") because he believed that the environment at the Sousa home was "unsafe" for Ryan Ferreira. Deposition of Walter Barlow ("Barlow") at 65.

4. In ¶9, Defendants claim that Sousa told Defendants Tiernan and David that he wanted Ms. Ferreira to take her firearms. Sousa testified that he repeatedly told Defendant Tiernan that Ms. Ferreira was not in the right state of mind and that Tiernan shouldn't let her leave with the firearms. Deposition of John Sousa at 73-74. Sousa's ex-wife, Alexandra Walmskey, testified that she told the officers that Ms. Ferreira should not be permitted take her firearms due to her unstable mental state. Deposition of Alexandra Walmskey at 36-38.

5. In ¶¶18-20, Defendants allege that the Plaintiff would not back away from Ms. Ferreira's vehicle and that he struggled with the officers. In direct contrast to this allegation, the Plaintiff testified that he complied with the order that he back away from the vehicle, and as he was doing so, he was assaulted by Defendants Hall and David, who repeatedly punched and kicked the Plaintiff. Ferreira at 59-64.

6. In ¶¶37-38, Defendants allege that Ms. Ferreira did not have the gun pointed at her body just before the assault on her vehicle. Defendant Hall testified he could not see the

---

Plaintiff has nevertheless attached copies of reports from two of his experts, Lloyd F. Price, M.D. and David M. Grossi, to his Appendix of Exhibits. If counsel misunderstood the Court's directive, he will file a supplemental Appendix with an affidavit or declaration from his experts.

firearm because Ms. Ferreira's hair blocked the view. Deposition of Stephen J. Hall ("Hall") at 81-82.

7. In ¶40, Defendant allege that Defendant Feeney struck the window twice with the Haligan tool and it broke. Defendant Rush testified that Feeney swung at the window several times before it broke. Deposition of Thomas Rush ("Rush") at 56. Defendant Feeney testified that he could have swung the Haligan at the window more than twice and that he swung the Haligan at the window for a couple seconds. Deposition of Kevin Feeney ("Feeney") at 91; 95.

## II. Additional Facts Precluding Summary Judgment

1. Defendant Barlow was informed by the Plaintiff while he was at the Department that Ms. Ferreira was taking medication and receiving counseling for a mental condition, but did not convey this information to Defendants Rush, Tiernan or David while they were at Sousa's home. Barlow at 67-68.

2. Defendant Barlow does not recall whether he told Defendants Rush, Tiernan or David that he was contacting DCYF due to his concerns for Ryan Ferreira's safety. Id. at 67.

3. Defendant Feeney testified that given the fact that Ms. Ferreira's relationship had ended, that she was homeless as a result of the termination of the relationship with Sousa, that she had had a heated confrontation with Sousa, that DCYF was called by Defendant Barlow, that Ms. Ferreira was receiving counseling and taking medication for a mental condition, that Ms. Ferreira told Ryan Ferreira to leave Sousa's home because she was fighting with Sousa and was therefore concerned for Ryan's safety, and that Ms. Ferreira made the statement that her "life was a mess," a reasonable officer would conclude that she was "in crisis." Feeney at 53-56.

4. Defendant Feeney testified that he would have questioned Ms. Ferreira as to why she wanted her firearms, and, depending on her response, may have taken her firearms for safekeeping. Id. at 62-63.

5. Stephen Enos ("Enos"), a detective with the Department, testified that General Order #2000-43 permits officers to take guns from individuals who may be mentally ill, suicidal, or, in crisis, and that he is aware of instances when officers have taken guns for safekeeping pursuant to this policy. Deposition of Stephen Enos at 42-43.

6. Enos testified that "anytime there is public safety concern," the Department will "air (sic.) on the side of caution and grab the guns." Id. at 42.

7. Defendant Hall testified that he "can't think of a policy, practice or custom that allows Department members to seize guns." Hall at 28.

8. Defendant Hall testified that the training he received as to General Order #2000-43 was limited to a review and discussion during a shift change. Id. at 26-27.

9. Defendant David testified that he read General Order #2000-43 when he was hired and reviewed it during his field training. Deposition of Michael David ("David") at 30.

10. Defendant Tiernan has no recollection of having received training regarding General Order #2000-43 and does not know what the reference to "crisis" in the policy means. Deposition of Stephen Tiernan ("Tiernan") at 18; 58.

11. Defendant Barlow testified that he has had no training that "focused on taking weapons away from people that are in crisis or mentally ill" and "can't say" what the word "crisis" means in General Order #2000-43. Barlow at 30;39.

12. Defendant Barlow testified that Department members received "probably about 20 minutes" of training regarding General Order #2000-43. Id. at 38.

13. Defendant Dias testified that General Order #2000-43 does not authorize an officer, "in any way," to take a weapon from a person who may be mentally ill, in crisis or suicidal. Deposition of Gary Dias ("Dias") at 16.

14. Defendant Rush testified that he may have had training concerning General Order #2000-43 after the incident at issue. Rush at 33.

15. Defendant Rush testified that the reference to "in crisis" in General Order # 2000-43 means that an individual's "attitude or whatnot (sic.) has risen to a level where they are suicidal… . That they are at a point where they may do harm to themselves." Rush at 78.

16. Defendant David interprets General Order #2000-43 as follows: "if an officer's on the scene and he…determines that (sic.) individual to be mentally ill or suicidal, in crisis, that the officer is to consider safety for himself and everyone else on scene and determine whether there are any weapons available to that person immediately." David at 33.

17. Defendant Hall stated in his report that Ms. Ferreira put the gun in her mouth and pulled the trigger before Defendant Feeney entered her vehicle. At his deposition, Defendant Hall testified that one (1) second after the flash bangs detonated, Ms. Ferreira pulled the trigger. Hall at p. 81. He also testified that Feeney was in the vehicle when the gun discharged. Id. at 84.

18. Defendant Rush testified that when Feeney reached into Ms. Ferreira's vehicle, she shot herself. Rush at 56.

19. Defendant David testified that between 1 to 1.5 seconds passed between the flash bangs discharging and the firing of Ms. Ferreira's weapon. David at 94.

20. Defendant Tiernan testified that by the time Defendant Feeney entered Ms. Ferreira's vehicle, her firearm had discharged. He also testified that the flash bangs detonated "almost simultaneously" with the firing of Ms. Ferreira firearm. Tiernan at 58; 54-55.

21. Defendant Feeney testified that after breaking the driver's side window of Ms. Ferreira's vehicle, he reached into the vehicle, and had his hands around her head, when her firearm discharged. Feeney at 100.

22. Defendant David testified that "there are more signs that she [Ms. Ferreira] would (sic.) have been in crisis…that I was not aware of," referring to the items referenced in §II.3 above. David at 60.

23. Defendant Tiernan testified that Ms. Ferreira could have been "in crisis" when he and Defendant David were at Sousa's home. Tiernan at 58.

24. Defendant Dias testified that at the time of the incident at issue he did not know that flash bangs did not break car glass. Dias at 45.

25. Lloyd F. Price, M.D., a forensic psychiatrist, states in his expert report that Ms. Ferreira "clearly met the definition of an individual in crisis at the time of the initial police visit to her residence." Report of Lloyd F. Price, M.D.

26. According to Dr. Price, had Ms. Ferreira "been provided with crisis intervention services…it is probable that she would not have died." Id.

27. According to Dr. Price, had the police removed Ms. Ferreira's handguns, "it is probable that she would not have died." Id.

28. According to Dr. Price, "the police conduct during the barricade situation was a substantial contributing cause to Ms. Ferreira's death." Id.

29. According to David M. Grossi, a law enforcement trainer and consultant, the Department "failed to train their officers in the proper procedures when responding to calls for service regarding mentally ill/suicidal persons." Report of David M. Grossi.

30. According to Mr. Grossi, the use of SWAT-type tactics to seize Ms. Ferreira, "fell outside the scope and responsibilities" of the Department's Special Response Team ("SRT"). Id.

31. According to Mr. Grossi, the SRT failed to train for and rehearse the hasty tactical plan (pursuant to protocol) before implementing it. Id.

32. According to Mr. Grossi, the use of flash bangs was "wholly inappropriate." Id.

33. According to Mr. Grossi, the flash bangs may have caused "an involuntary and unintentional discharge" of Ms. Ferreira's firearm. Id.

34. According to Mr. Grossi, the use of flash bangs was inappropriate for breaching an automobile window. Id.

35. According to Mr. Grossi, because Defendant Barlow had a personal relationship with Ms. Ferreira, his participation in the tactical event constituted a violation of "all standards of hostage negotiation protocol." Id.

36. In Mr. Grossi's expert opinion, Defendant Barlow failed to follow all concepts of crisis negotiation by using "loud, profane language" while negotiating with Ms. Ferreira. Id.

37. According to Mr. Grossi, "it is highly probable" that Defendant Feeney caused the discharge of Ms. Ferreira's firearm. Mr. Grossi expert opinion is supported by the fact that after it discharged, the firearm was found in a state of stoppage know as a "failure to eject." Stated differently, the spent casing from the fired round did not fully eject from the weapon's ejection port. In Mr. Grossi's expert opinion, it is "highly probable" that Defendant Feeney made contact with Ms. Ferreira's hands and/or the firearm and thereby blocked the ejection port and caused the

failure to eject stoppage. (Plaintiff notes that Defendants' own expert, Ron McCarthy, acknowledges that "something impeded the weapon from cycling," thereby preventing it from ejecting the spent casing of the round that killed Ms. Ferreira.) Id.

PLAINTIFF,
By his Attorneys,
SINAPI FORMISANO & COMPANY, LTD.

/s/ V. Edward Formisano
/s/ Michael D. Pushee
V. Edward Formisano (5512)
Michael D. Pushee (6948)
100 Midway Place, Suite 1
Cranston, Rhode Island 02920-5707
(401) 944-9690
(401) 943-9040 (facsimile)

**CERTIFICATION**

TO: Marc DeSisto, Esq.
211 Angell Street
P.O. Box 2563
Providence, RI 02906

I hereby certify that on the 22nd day of May, 2007, I caused the within to be electronically filed with the Clerk of the U.S. District Court for the District of Rhode Island using the CM/ECF System and is available for viewing and downloading form the ECF system.

/s/ V. Edward Formisano