UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ANTHONY J. FERREIRA, as Administrator of the Estate of Patricia J. Ferreira, and as Guardian of the Estate and Person of Ryan C. Ferreira, *Plaintiff,* vs. CITY OF EAST PROVIDENCE, et al., *Defendants.* | C.A. No. 05-73 S |
| ANTHONY J. FERREIRA, individually, *Plaintiff,* vs. CITY OF EAST PROVIDENCE, et al., *Defendants.* | C.A. No. 05-75 S (member case) |

**DEFENDANTS'[1] REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

In another recasting of the Complaint to avoid summary dismissal, plaintiff objects to defendants' Motion for Summary Judgment claiming that defendants erroneously misread the legal basis contained in plaintiff's Complaint as well as relying on factual allegations not made in their Complaint to support denial of the pending motion.[2] In addition to the procedural deficiencies evident by such arguments, defendants submit that even under the new legal claims and alleged factual support, summary judgment should enter. While defendants rely primarily

[1] Namely, Kevin J. Fitzgerald, in his official capacity as Treasurer of the City of East Providence, Kevin M. Feeney, Stephen J. Hall, Stephen E. Tiernan, and Michael A. David, Walter H. Barlow, Jr., Thomas J. Rush, and Ga ry Dias.
[2] In fact, as discussed during the final Pre-trial Conference, this is exactly the type of reworking of the claims that cautioned defendants against filing a summary judgment motion beforehand.

on the case law and arguments presented in their Memorandum of Law in support of their Motion for Summary Judgment, defendants hereby submit the instant Reply Memorandum to address legal arguments, case law and alleged factual disputes raised by plaintiff in opposition to the pending Motion but not otherwise addressed in their primary Memorandum of Law.

## II. ARGUMENT

### A. The Defendants Are Entitled to Summary Judgment on Counts II and IV.

Counts II and IV of plaintiff's Complaint[3] (C.A. No. 05-73 S) specifically state:

> That Defendants, acting under color of state law, by their individual and concerted acts and/or omissions, including, but not limited to, *{sic}* those described herein, caused <u>decedent to be illegally seized in derogation of her constitutional right to be free from unreasonable seizures</u> . . ." ¶¶ *45 and 47, respectively, emphasis added.*

In opposition to defendants' Motion on Counts II and IV, plaintiff concedes that there was a constitutionally sound basis for the officers to seize Ms. Ferreira. Plaintiff argues however, that defendants have erroneously interpreted these claims because he is actually seeking a claim based the alleged use of "excessive force." At the outset, defendants submit that while an "excessive force" claim is derivative of the Fourth Amendment's protections against unreasonable seizures, Plaintiff does not use the term "excessive force" in his Complaint despite the well-recognized practice to described such Fourth Amendment violations as such.

Nevertheless, even if plaintiff's Complaint can be read to contain such an excessive force claim, summary judgment is still appropriate in light of the fact that as a matter of law, the officers' actions were reasonable. Of course, as noted by plaintiff, claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment. *<u>Medina v. Cram</u>, 252 F.3d 1124, 1131 (10th Cir. 2001) citing <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989).* The reasonableness of an officer's conduct must be assessed "from the perspective of a

[3] The language of Counts II and IV are identical except for the claim that the recited actions violated the "Fourth and Fourteenth Amendments of the United States Constitution" in Count II while Count IV claims these same actions violated the Rhode Island Constitution.

reasonable officer on the scene," without application of 20/20 hindsight but recognizing the fact that the officer may be "forced to make split-second judgments" under stressful and dangerous conditions. *Id. quoting Graham, 490 U.S. at 396-97.* Although there is no set formula for determining the reasonableness of an officer's actions, Courts generally take into consideration the crime's severity, the potential threat posed by the suspect to the officer's and others' safety, and the suspect's attempts to resist or evade arrest. *Graham, 490 U.S. at 396.*

In the instant case, there is no dispute that Ms. Ferreira was threatening suicide, a felony and thus a serious crime, under Rhode Island law. *Clift v. Narragansett TV L.P., 688 A.2d 805, 808 (R.I. 1996).* There is likewise no dispute that after initially evading the officer's attempts to take her into custody while on Birchard Street,[4] she continually refused (for over an hour) to exit her vehicle and turn over her gun after the police successfully blocked her car on Brightridge Avenue. Finally, it is also undisputed that although Ms. Ferreira did not overtly threaten anyone with the gun other than herself, the threat she posed to herself, as reflected by her repeatedly putting the handgun into her mouth, was high.

The facts are also undisputed as to the method used by the officers to attempt to take Ms. Ferreira into custody. Plaintiff cannot and does not contest the fact that the officers implemented what they denominated as a "hasty plan" which involved two teams of two approaching the car from the rear passenger and driver's side. The team on the driver's side discharged a diversionary device near the driver's front wheel, quickly approached the car, and then broke the driver's side window with a halogen tool. However, it took several attempts for Officer Feeney to actually break the window. Meanwhile, the team on the passenger side simultaneously ran up to the car and attempted to gain access to through the passenger window by throwing the diversionary device through the window. They were unable to break the window with the

---

[4] In fact, several officers had to jump out of the way of Ms. Ferreira's slow moving vehicle as it pulled away from the Birchard Street address.

diversionary device. It fell to the ground and exploded. The officers thus used an asp baton and butt of a handgun to break the passenger side window. This likewise took several attempts to break. While the officers were attempting to break the passenger window, Ms. Ferreira turned towards the passenger window. Officer David saw Ms. Ferreira place the gun in her mouth. The weapon discharged after Officer Feeney broke the driver's side window and after he first started to unlock the door but then reached towards her head to get the gun.

Despite these undisputed facts, plaintiff argues "that a genuine issue of material fact exists as to whether this force was reasonable." *Plaintiff's Memorandum in Opposition, at 11.* However, the determination of whether the officers acted reasonably is not a factual question but "a legal determination for the Court." *Medina, 252 F.3d at 1131 (10th Cir. 2001).* More specifically, "[a]lthough the reasonableness standard is inevitably fact dependent it should not be reserved for the jury in the absence of disputed material facts." *Id. citations omitted.*

In this case, plaintiff cannot offer any such "disputed facts" but rather offers a disputed "opinion" of his expert as to the appropriateness of the plan executed by the defendants.[5] Plaintiff *inter alia* specifically challenges the failure of the officers to use a professional negotiator to speak with Ms. Ferreira before the decision to implement the hasty rescue plan. Plaintiff, however, misconceives the Fourth Amendment's "reasonableness" standard. More specifically it is not based on whether the actions were actually successful, *Graham, 490 U.S. at 396-97(courts do not use 20/20 hindsight to second guess the actions of officers),* or even if there were alternative means of effectuating the seizure, *Illinois v. Lafayette, 462 U.S. 640, 647-48 (1983) (the reasonableness standard does not require that officers use "alternative 'less*

[5] Of course, the major objections posed by plaintiff's expert relate to the decision to use the diversionary device to break the passenger window and the use of such devices while a victim is holding a gun. As explained more directly *infra*, the undisputed facts fail to demonstrate that any such concerns came to fruition.

*intrusive' means.")*.[6] Rather, it hinges on the reasonableness of the actions at the time, from the perspective of the officers at the scene, and taking into consideration the relevant factors outlined by the Supreme Court in *Graham*.

As more fully outlined above, the factors relevant to an excessive force reasonableness determination — that is, the crime's severity, the potential threat posed by the suspect to the officer's and others' safety, and the suspect's attempts to resist or evade arrest—all demonstrate the reasonableness of the officers' actions in the instant case. *Graham, 490 U.S. at 396.* They used a diversionary device to distract her and then break the windows to gain access to her and her weapon. There is ample support for the using the devices in such a manner.[7] *Compare U.S. v. Myers, 106 F.3d 936 (10th Cir. 1997) (officer's use of flashbang device, thrown into house where wife and three children were located, before entering to execute warrant reasonable in light of suspect's history with weapons) to Commonwealth v. Garner, 672 N.E.2d 510 (MA 1996) (officer's use of flashbang device, thrown into bedroom where, unknown to officer, four year old was sleeping, was reasonable given information on use of weapons, etc.); Winters v. Adams, 254 F.3d 758 (8th Cir. 2001) (held that officers acted "objectively reasonable" when they smashed the window of a vehicle where the occupant rolled up his windows, locked the doors, and refused to exit the vehicle); Miller v. Page, 2005 U.S. Dist. LEXIS 39747, 21-22 (D. Mo. 2005) (held it was reasonable for officer to break the car window where plaintiff refused to roll down window to show license and refused to exit*

---

[6] As noted by the Tenth Circuit, if the Court were to consider the assertions that there were alternative, less intrusive means available to the officers, rather than focusing on the reasonableness of the steps actually taken than the Court would "be evaluating the officers' conduct from the 20/20 perspective of hindsight rather than from the perspective of an officer making split-second judgments on the scene." *Medina, 252 F.3d at 1133*.

[7] Plaintiff's challenge that the diversionary device was not meant to break windows or be discharged near an individual falls on deaf ears in light of the fact that the officers were unsuccessful in utilizing the device in this manner. Thus, plaintiff can claim no injury stemming from such alleged improper use.

*car).*[8] Defendants submit that under the Fourth Amendment reasonableness standard (taking into consideration the seriousness of the offense, the danger to Ms. Ferreira if they had not acted, as well as her refusal to comply), as a matter of law, the only legal conclusion to be reached is that the officer's actions were reasonable in their effort to rescue Ms. Ferreira from her suicide attempt and thus summary judgment on Count II and IV should enter.[9]

**B. There Is No Basis for the Claim that Defendants' Actions Amount to a Deprivation of Decedent's Due Process Right.**

In opposition to defendants' Motion on Count III of plaintiff's Complaint (05-73S), plaintiff argues that the instant case falls within both the "state created danger" and the "special relationship" exception to *DeShaney*'s holding that governmental officials owe no constitutional duty under the due process clause to protect individuals from harm of third parties. Defendants

---

[8] Plaintiff noticeably reduces case citations as to whether diversionary devices and breaking a car window constitutes "excessive force" to a mere footnote in his Memorandum. *Plaintiff's Memorandum in Opposition, at 11, n. 9.* The reason is that these cases lend little to plaintiff's argument. For example, in two (2) of the six (6) diversionary device cases, the Courts actually held that the use of the diversionary device was reasonable in the circumstances. *Jenkins v. Wood, 81 F.3d 988 (10th Cir. 1996); Molina v. Cooper, 325 F.3 963 (7th Cir. 2003) (use of flashbang was reasonable because of concern for the officer's safety).* In another, *Boyd v. Benton County, 374 F.3d 773 (9th Cir. 2004)*, the Court held that the officers were entitled to qualified immunity because it was not clearly established that use of a flashbang during execution of search warrant, where they threw it into area of sleeping residents, was excessive force. Moreover, two (2) of the cases cited by plaintiff are distinguishable. First, in *U.S. v. Jones, 214 F.3d 836 (7th Cir. 2000)* the Court was not addressing a damage claim under *§ 1983* but instead reviewing a motion to suppress evidence. Thus, although it questioned whether the officers should have thrown a flashbang into a room where a child was possibly located, the Court did not reach the reasonableness of such an action. In *Africa v. Philadelphia, 938 F.Supp. 1278 (E.D.PA 1996)*, the issue was likewise distinguishable because that case involved the officers' use of an explosive device, not a diversionary device, to create a hole in the roof a house to throw tear gas through and to disable a rooftop sniper bunker. In that case, the explosive devise not only accomplished these purposes but likewise resulted in the building being burnt down. In the final case referenced by plaintiff in the footnote, *Taylor v. Middletown, 436 F.Supp.2d 377 (DC 2006)*, the Court did not question the reasonable use of the diversionary device. Rather, it concluded that legitimate issue of fact existed as to whether the officer intentionally threw it at two women causing them injury. In *Robbins v. Chronister, 156 F.Supp.2d 1211(D.KN 2001)*, the court found that an off-duty police officer's use of his baton to attempt to break the car windows of an individual wanted on traffic warrants while the individual was at a gas station was unreasonable in light of the lack of evidence that the individual recognized the off-duty officer as police or was trying to leave area. The lack of immediate threat to safety of individual, officers or others as well as fact that on-duty units were responding to the area also weighed on the Court's decision.

[9] Plaintiff chastises defendants for identifying the incident as a "failed suicide rescue attempt" as a deliberate effort to mischaracterize the "disputed facts." However, in light of the undisputed fact that Ms. Ferreira was sitting with a handgun that she repeatedly put in and out of her mouth, alternatively pointed to her chest, and continually informed the officers that she was going to kill herself, it is unfathomable how the officers' actions can be described as anything but a failed suicide rescue attempt.

addressed both arguments in their initial Memorandum in Support of Summary Judgment and thus rely on the same herein.

Plaintiff alternatively argues that the facts give rise to a material question as to whether the officers' actions shocked the conscience such to amount to deprivation of Ms. Ferreira' substantive due process rights. As repeatedly recognized by the Courts, the "shock the conscience" standard "is [a] somewhat amorphous" standard that must be approached on a case by case basis. *County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998).* Moreover, as the Tenth Circuit has recognized, when considering the "scienter" requirement under the substantive due process clause, the Courts have "'focused on the deliberateness of the conduct at issue.' The Due Process Clause protects against "deliberately wrongful government decisions rather than merely negligent government conduct." *Christiansen, 332 F.3d at 1281 citations omitted.* Thus, section 1983 liability will not lie absent (1) "an intent to harm" or (2) "an intent to place a person unreasonably at risk of harm." *Id.* The intent to place a person unreasonably at risk of harm requires that "the defendant recognize[] the unreasonable risk and actually intend[] to expose the plaintiff to such risks without regard to the consequences to the plaintiff." *Id.*

In the instant case, it must be recognized that the officers were attempting to rescue an individual who had a gun and threatened to commit suicide. Plaintiff essentially argues that it was "deliberately indifferent" such to shock the conscience for the officers to use the flashbangs to distract her and attempt to gain entry into the car because this created a risk that she would be harmed. However, in determining if defendants' actions were "deliberately indifferent" such to shock the conscience, it has to be recognized that *any attempt* to rescue a person with a gun threatening to kill themselves contains some level of risk to both the individual as well as to the officers involved in the rescue attempt. The fact that the risk exists does not automatically render the decision to take steps to rescue the individual "deliberately indifferent" such to

amount to conscience-shocking behavior. *Compare Collins v. City of Harker Heights, 503 U.S. 115, 117-18 (1992) (city's knowledge that specific dangers posed by the sewer gas in a manhole in which the decedent was working but failed to provide training, warnings, or proper equipment to deal with the threat doe not constitute deliberate indifference amounting to "conscience-shocking" behavior).*

In the instant case, as a matter of law, the defendants' conduct does not support a finding that the officers' actions "shock the conscience" or that they possessed the requisite scienter. There can be no dispute that the officers were taking steps to prevent Ms. Ferreira from harming herself. Despite plaintiff's expert's opinion that the rescue plan was "improper", such an opinion does support a constitutional finding that these same actions were conscience-shocking or deliberately indifferent. Thus, for all these reasons, as well as those articulated in Defendants' Memorandum of Law in support of their Motion for Summary Judgment, summary judgment on Count III of C.A. No. 05-73S should enter.

**C. The Officers Are Nevertheless Entitled to Qualified Immunity.**

In addition to the arguments and case law previously presented, Defendants also submit the instant supplemental case law on its claims for qualified immunity from plaintiff's claims. First, it is well-settled that after a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff who must first establish that the defendant's actions violated a constitutional or statutory right. *Rodriguez v. Beninato, 469 F.3d 1, 5 (1st Cir. 2006). See also Medina, 252 F.3d at 1128.* In addition, "[b]ecause qualified immunity is a question of law to be resolved at the earliest possible stage of litigation, courts often engage in determinations of reasonableness

under the Fourth Amendment, necessarily applying the undisputed material facts to the legal standards." *Medina, 252 F.3d at 1131.*[10]

In the first instance, defendants submit that rather than demonstrate that it was clearly established that using flashbangs was an unreasonable use of force, the case law offered by plaintiff actually demonstrates that it was not clearly established. In fact, at least one case cited by plaintiff specifically held that the individual officers were entitled to qualified immunity because it was not clearly established that use of a flashbang during execution of a search warrant was excessive force. *Boyd v. Benton Co., 374 F.3d 773 (9th Cir. 2004)*. The *Boyd* Court reached this conclusion even though the officers threw the flashbang into area that was known to contain sleeping residents. *Id.* The Seventh Circuit in *Molina v. Cooper, 325 F.3d 963 (7th Cir. 2003),* another case cited by plaintiff, in addition to holding that the officers' use of a flashbang was reasonable in light of the officers' safety concern, also noted that officers alternatively would be entitled to qualified immunity because "few cases [in 1998] even cite the use of such devices disapprovingly, and in any event those courts found their use reasonable under the circumstances." *Id. at 973 n. 7.*

Even if the Court were to accept plaintiff's case law as calling into question whether the use of flashbangs violates a clearly established right, plaintiff has failed to provide any direct support for the conclusion that Ms. Ferreira possessed a clearly established right to be free from the use of flashbangs in the officers' attempt to save her from suicide. While defendants recognize that the lack of a fact specific case finding that a particular act violates a clearly established right is not required, there must be something that a party can direct the Court's attention to that puts the officer's "on notice that their conduct is unlawful." *Fabiano v. Hopkins*,

---

[10] As more fully discussed *infra*, the "facts" plaintiff claims to be material and disputed in the instant case, including the alternative theories that the shooting was the result of the startle effect or Officer Feeney, are actually unsupported theories that have no basis in the settled facts.

*352 F.3d 447, 457 (1st Cir. 2003).* As articulated by the First Circuit, “the law must have defined the right in a quite specific manner, and that the announcement of the rule establishing the right must have been unambiguous and widespread, such that the unlawfulness of particular conduct will be apparent ex ante to reasonable public officials.” *Brady v. Dill, 187 F.3d 104, 116 (1st Cir. 1999) citing Wilson v. Layne, 526 U.S. 603 (1999); Ringuette v. City of Fall River, 146 F.3d 1, 4 (1st Cir. 1998); Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 704 (1st Cir. 1993*). This is because determination of whether Ms. Ferreira possessed a clearly established right "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Suboh v. Dist. Attorney's Office of Suffolk Dist., 298 F.3d 81, 93 (1st Cir. 2002).* In fact, using a broad formulation to deny immunity as suggested by plaintiff is precisely what that Courts “have been told not to do.” *Jordan v. Carter, 428 F.3d 67, 74 (1st Cir. 2005).* “After all, qualified immunity for public officials serves important societal purposes, and it is therefore meant to protect ‘all but the plainly incompetent or those who knowingly violate the law.’" *Brady, 187 F.3d at 116 quoting Malley v. Briggs, 475 U.S. 335, 341 (1986).*

In the instant case, as a matter of law, it was not clearly established that using a diversionary device to distract a suicidal individual in order to assist in rescuing the individual violates a clearly established right.[11] Not only does plaintiff’s failure to cite to case law on point supports this conclusion but the countervailing case law affirming the reasonableness of such devices in certain circumstances wherein the suspect was known to possess a weapon[12] at least makes it debatable whether such actions violate a constitutional right and thus support a finding of qualified immunity. *Savard v. Rhode Island, 338 F.3d 23, 31 (1st Cir. 2003) (“The debatable*

[11] In fact, as more fully outlined *infra* and in Defendants’ Memorandum of Law in support of their Motion for Summary Judgment, the defendants’ actions did not amount to a violation of Ms. Ferreira’s constitutional rights.
[12] See *U.S. v. Myers, 106 F.3d 936 (10th Cir. 1997) (officer’s use of flashbang device, thrown into house where wife and three children were located, before entering to execute warrant reasonable in light of suspect’s history with weapons) to Commonwealth v. Garner, 672 N.E.2d 510 (MA 1996) (officer’s use of flashbang device, thrown into bedroom where, unknown to officer, four year old was sleeping, was reasonable given information on use of weapons, etc.)* cited *infra*.

*nature of the question argues in favor of qualified immunity") citing* *__Goyco de Maldonado v. Rivera__, 849 F.2d 683, 688 (1st Cir. 1988) (stating that an official "need show no more than that [the question is close] to prevail on his qualified immunity defense"); __Vazquez Rios v. Hernandez Colon__, 819 F.2d 319, 328 (1st Cir. 1987) (noting that "the closeness of the call suggests that [the law] could not have been 'clearly established'").* In fact, plaintiff can only cite to two (2) cases, both of which are distinguishable, where the Court held that the use of the device may have amounted to excessive force. In one, it was alleged that the device was thrown onto the laps of the plaintiffs. *__Taylor__, 436 F.Supp.2d at 377.* In the second, it was alleged that an "explosive device" not a "diversionary device" was used to create a hole in the roof of a building and to take out a sniper bunker. *__Africa__, 938 F.Supp. at 1278.* Neither of these cases would put the officers in the instant case on notice that using the device to distract a suicidal woman during an attempt to rescue her was unlawful. The defendants are thus entitled to qualified immunity on plaintiff's constitutional claims and summary judgment in their favor should accordingly enter.

**D. The State Law Negligence Claim for the Death of Ms. Ferreira.**

***1. Wrongful Death Action***

In opposition to defendants' Motion for Summary Judgment on plaintiff's wrongful death claim, plaintiff argues that the case law relied on by defendants is not controlling and that in any event, the duty of care relied on by defendants is wrong because it is disputed whether or not Ms. Ferreira, in the end, committed suicide or if she was accidentally killed. In the first instance, while it is apparent that __Adams v. City of Fremont__, *68 Cal. App.4th 243, 80 Cal. Rptr. 2d 196 (CA. 1st Appellate Dist., 1998)*—one of the cases relied on by defendants—is from California and thus *not directly* controlling in the instant case, plaintiff ignores the fact that in identifying the proper standard to apply to the issue of whether a duty of care exists under Rhode Island law, the R.I. Supreme Court has not only specifically adopted the exact same factors utilized by the

Adams and Munoz v. City of Union City, *120 Cal. App. 4th 1077 (CA, 2d Div. 2004),* but has likewise affirmatively cited and quoted the California Courts in ruling on whether a party owes another party a duty of care. *See i.e. Banks v. Bowen's Landing Corp., 522 A.2d 1222, 1225 &1226 (R.I. 1987) citing Thompson v. Co. of Alameda, 27 Cal.3d 741, 750, 614 P.2d 728, 732-33, 167 Cal.Rptr. 70, 74-75 (1980) and Ballard v. Uribe, 41 Cal.3d 564, 573 n.6, 715 P.2d 624, 628 n.6, 224 Cal.Rptr. 664, 669 n.6 (1986).* In light of the R.I. Supreme Court specific adoption of California precedent to determine whether a duty of care exists, the California Court's application of these same factors in the same factual context as in the instant case, while not binding, is clearly persuasive on the Court.

Plaintiff's further attempt to divorce the instant case from a suicidal attempt falls flat even if the Court were to accept plaintiff's unsupported contention that a factual dispute exists as to the actual cause of Ms. Ferreira's death. Quite simply, the fact that Ms. Ferreira may have been killed by accident during the rescue attempt does not change the duty of care owed to her at the time the officers acted. That is, there is no dispute that at the time they implemented their rescue plan, Ms. Ferreira was threatening suicide. The duty of care owed to Ms. Ferreira, if any, is determined at the time they acted. It cannot be retroactively changed as a result of what happened *after* they sought to fulfill their duty. Thus, even if plaintiff could present sufficient factual evidence to support their theory that she did not commit suicide, such a factual result does not alter the duty or lack thereof owed at the time the officers attempted to save her from suicide.

***2. Domestic Call***

Plaintiff has also objected to Defendants' Motion on Count I of Complaint No. 05-73S by claiming that the officers' actions in response to the domestic call is not only contained within the Complaint but also that a factual dispute exists as to whether the officers should have

recognized that Ms. Ferreira was suicidal, thus justifying taking her into custody and/or confiscating her weapons.

First, in opposition to defendants' position that plaintiff has failed to raise this claim in his Complaint, plaintiff alleges that Rule 8(a) does not require him to make such factual allegations. However, it is well-settled that Rule 8(a) contains a notice requirement. A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed.R.Civ.P., Rule 8(a).* There is absolutely **nothing** in plaintiff's Complaint that supports a finding that they have raised the officers' action during the domestic call as giving rise to a claim for relief. Rather, plaintiff's entire Complaint focuses on the officers' action after receiving the call of a suicidal person.

In any event, even if such claims were made in the Complaint, plaintiff has utterly failed to identify any constitutional basis to support the confiscation of these weapons given the information available to the officers at that time. Rather, plaintiff cites first to the fact that the police allegedly confiscated weapons on another occasion (specifically those of Ms. Ferreira's brother and her boyfriend after the suicide) or alternatively that the confiscation was warranted under the Department's policy. Of course, in the first instance, the fact that the weapons may have been confiscated on another occasion, even assuming a similar lack of probable cause,[13] clearly cannot trump the constitutional protections an individual otherwise possesses. Moreover, as more fully outlined in Defendants' Memorandum of Law in support of their Motion for Summary Judgment, a department policy likewise cannot trump the constitutional protections afforded an individual.

With regard to plaintiff's allegation that the officers responding to the domestic call should have taken Ms. Ferreira into emergency custody, this is likewise not supported by the law

[13] Of course, there may be alternative basis, not relevant to the instant issue to support the police officer's confiscation of the weapons as alleged by plaintiff.

or the undisputed facts. Of course, the law does not permit "random or baseless detention of citizens for psychological evaluations." *Gooden v. Howard County, 954 F.2d 960, 968 (4th Cir. 1992).* Rather, the "Fourth Amendment requires an official seizing and detaining a person for a psychiatric evaluation to have probable cause to believe that the person is dangerous to himself or others." *Monday v. Oullette, 118 F.3d 1099, 1102 (6th Cir. 1997). See also Bailey v. Kennedy, 349 F.3d 731, 740 (4th Cir. 2003) (the evidence was insufficient to establish probable cause to detain the minor for an emergency mental evaluation and that the police officers were not entitled to qualified immunity).*

In the instant case, the "evidence" plaintiff cites to support such a finding of probable cause, *Plaintiff's Memorandum in Opposition, at 24, n. 20*, does not demonstrate any such dangerous propensities as required under the Fourth Amendment. Rather, such evidence, that Ms. Ferreira was "upset", "angry", and emotionally distraught coincides with her recent fight with her boyfriend. In fact, such emotions had been witnessed by the officers on at least 19 occasions in the three (3) years prior. The boyfriend and his ex-wife's subsequent claims, even if accepted as true, that the officers were told that Ms. Ferreira was mentally unstable, also do not give rise to a finding of "dangerous propensity" that would support seizing Ms. Ferreira and detaining her during the domestic dispute.

**E. Plaintiff Ultimately Fails To Demonstrate a Causal Relationship.**

As a final matter, as more fully outlined in defendants' Memorandum of Law in support of Summary Judgment, defendants maintain that plaintiff ultimately fail to demonstrate a causal link between the alleged negligent/unconstitutional conduct and Ms. Ferreira's death because plaintiff cannot demonstrate that the officers' actions resulted in an "uncontrollable impulse" to commit suicide. In opposition, plaintiff maintains that there is a genuine issue of fact as to whether the "uncontrollable impulse rule" applies because of the factual dispute over the cause

of Ms. Ferreira's death. In fact, throughout plaintiff's Objection to Defendants' Motion, plaintiff repeatedly relies upon this alleged "factual dispute" to challenge summary judgment in favor of defendants. While defendants submit that the instant case fails, as a matter of law, even despite plaintiff's claimed factual disputes, defendants also submit that plaintiff's reliance on the alleged factual dispute is faulty.

First, in addressing plaintiff's claim of a material factual dispute, it is well-settled that evidence inadmissible at trial cannot be used to avoid summary judgment nor can conclusory assertions, that lack actual factual support, successfully defeat a properly supported motion. *Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir. 1992).* This is likewise applicable to opinions proffered by hired experts. "[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S.Ct. 2505, 2514 (1986).*

Moreover, as the Supreme Court has held "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id. at 249, 106 S.Ct. at 2511 (emphasis added).* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id. at 249-50, 106 S.Ct. at 2511 (emphasis added).* As the Court recognized:

> [n]or are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party. Formerly it was held that if there was what is called a scintilla of evidence in support of a case the judge was bound to leave it to the jury, but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether where is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed. *Id. at 251, 106 S.Ct at 2511 (emphases in original).*

Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id. at 252, 106 S.Ct. at 2512 (emphasis added).*

In the instant case, plaintiff specifically alleges in opposition to the instant motion that there is factual support for their alternative theories on the cause of Ms. Ferreira's death other than suicide. That is, that she did not shoot herself but that the gun discharged as a result of the "startle effect" caused by the diversionary devices or that Officer Feeney inadvertently discharged the weapon when he reached into the car. The problem with plaintiff's argument is that although he cites to an expert "opinion" to support it, there is absolutely no factual basis, let alone even a scintilla of evidence, to support the expert's alternative theories.

First, there is no factual evidence to support plaintiff's theory that the gun discharged because of a "startle effect" caused by the use of the diversionary devices. According to plaintiff's expert, the shooting *may* have been caused by the officer's discharging the diversionary devices causing a "sympathetic muscle reaction resulting in an involuntary or unintentional discharge of a firearm" by Ms. Ferreira. *Plaintiff's Memorandum in Opposition, at 12, n. 10, citing David M. Grossi Report*. In layman's terms, plaintiff is alleging that Ms. Ferreira "jumped" when the devices were discharged near her vehicle causing her to involuntarily fire the gun into her mouth. The most obvious problem with this hypothesis is that it is not supported by the undisputed facts, as reflected by both the testimony of the officers at the scene and the video tape. According to the sequence of events relayed by the officers, they discharged the flashbangs, ran up to the windows of the car and then made several strikes against the window of plaintiff's vehicle in an attempt to break the glass. It was only after Officer Feeney was finally able to break the glass (after several attempts) and started to reach into the car that the gun discharged. Officer David, who approached the car from the passenger side,

testified that after they were unsuccessful in throwing the diversionary device through the passenger window, it bounced off the window and discharged to the back of the passenger side of the vehicle. Lt. McGregor and he then used their asp baton and butt of a handgun to try to break the passenger window. According to Officer David, while they were striking the windows, he looked at Ms. Ferreira who returned his gaze through the passenger side window. Although she looked "shocked", the devices had already discharged but yet the weapon had not been fired. According to Officer David, he then saw Ms. Ferreira place the gun into her mouth. It was only then that she fired the gun. This testimony of the officers plainly refutes plaintiff's speculation that the gun discharged in a "startled" response to the diversionary device. Quite simply, there was too long of a delay between the diversionary devices being discharged and the gun firing to support the conclusion that Ms. Ferreira was startled into firing the weapon.

Nevertheless, as the U.S. Supreme Court has commented in another context, "the videotape . . . speak[s] for itself." Scott v. Harris, *127 S. Ct. 1769, 1775 (U.S. 2007).*[14] That is, the amateur video of the scene unequivocally shows that there was a marked delay between the time that the diversionary devices were discharged and the firing of Ms. Ferreira's weapon. Plaintiff's expert's contention that Ms. Ferreira "may" have been "startled" into discharging the weapon by the diversionary devices not only lacks any support in the evidence but is also directly controverted by the evidence, particularly the videotape. It is clear in the videotape that Ms. Ferreira had reacted to the diversionary devices by turning her head (the gun was not in her mouth), and then only after they detonated did she purposefully place the gun in her mouth and discharge it. Accordingly, plaintiff can offer no actual evidence or facts to support his "startle

[14] In Scott, the U.S. Supreme Court relied on its own review of a videotape of a high speed pursuit to refute plaintiff's contention that he drove cautiously during a high speed pursuit by police that eventually resulted in plaintiff's vehicle being pushed off the road by a police officer. Upon request, defendants will make the plaintiff's VHS videotape available for the Court's review, including DVD re-recordings made by defendant's expert Bek-Tek, which enable slow-motion viewing.

effect" theory such to justify a jury returning a verdict in favor of plaintiff. The absence of such probative evidence or facts, as opposed to a theory, defeats plaintiff's claim.

Likewise lacking in evidentiary support is plaintiff's theory that Officer Feeney accidentally discharged the weapon. The basis relied on by plaintiff's expert is the fact that the gun Ms. Ferreira used had malfunctioned after being shot and thus it is possible that Officer Feeney either hit Ms. Ferreira's hand into the gun or put his own hand on the muzzle causing the misfire. However, the mere fact that the weapon malfunctioned after being shot does not automatically support the conclusion that Officer Feeney touched the weapon or caused Ms. Ferreira's hand to knock into the weapon. Rather, as described by Ron McCarthy, defendants' police expert, it is equally plausible that such a malfunction was caused by the weapon being held improperly by Ms. Ferreira or being held in her mouth.

In fact, in this case, the only direct evidence of Officer Feeney's actions and the location of the weapon prior to it being discharged is Officer Feeney and Officer David's testimony and the videotape produced by plaintiff in discovery. Officer Feeney has repeatedly denied that he was able to get a hold of the weapon prior to it discharging. Rather, according to Officer Feeney, after breaking the window, he initially moved to unlock the door. At that time he saw that Ms. Ferreira had put the weapon into her mouth. Therefore, he moved to get the weapon out of her hands. However, as he reached the back of her head, she fired the weapon. Officer David's recollection of the sequence of events likewise supports this. According to Officer David, from his vantage point on the passenger side of the car, it did not look like Officer Feeney had reached the back of Ms. Ferreira's head by the time the gun discharged. Rather, according to Officer David, Ms. Ferreira's head was thrown *back into* Officer Feeney's hands as a result of the gun being discharged. Officer David also confirmed that Ms. Ferreira placed the weapon into her mouth while the officers were banging on the windows attempting to break them. Both Officer

Feeney and Officer David were unequivocal in their testimony that Officer Feeney never reached the gun, Ms. Ferreira's hands or even closer than the back of her head before it was discharged. Moreover, close inspection of the videotape fails to show any hand or object breaking the plane of Ms. Ferreira's face from behind, either from the left or right side.

Plaintiff's speculation that Officer Feeney may have reached it and accidentally discharged it is simply unsupported by the evidence. The Sixth Circuit was confronted with a similar, speculative argument in *Burnette v. Gee, 137 Fed. Appx. 806, 810 (6th Cir. 2005)*. In that case, the decedent's representative brought a wrongful death claim under the Fourth and Fourteenth Amendment against a sheriff who shot and killed decedent. The decedent had attempted suicide by taking an overdose of prescription medication. When rescue personnel arrived, decedent refused their attempts to take him for medical help and picked up a rifle saying he would shoot anyone who tried to take him. By the time the Sheriff had arrived, decedent was sitting in a chair holding the barrel of the rifle outside the right arm of the chair with the butt of the rifle resting on the floor. According to the sheriff, after everyone had left the trailer, decedent stood up and pointed the gun at the sheriff. He then sat back down with the butt of the rifle between his right hip and the arm of the chair with the barrel pointing towards the officer. When decedent reached down to fix his shoe, the sheriff charged him in an attempt to disarm him. According to the sheriff, he attempted to wrestle the rifle from decedent's grasp but was unable to. The Sheriff then shot decedent.

In that case, the plaintiff argued that expert opinions and circumstantial evidence raised sufficient factual issues to deny the sheriff summary judgment. Plaintiff specifically pointed to the fact that the evidence suggested that decedent did not have physical possession of the weapon when the officer began his charge because the rifle was located too far from his body when he bent to tie his shoe, that in his disabled and sedated state he could not have reacted quickly or

precisely enough to reach for the rifle and, based on forensic evidence, that he was shot before he was able to rise from his bent position. The Court however, rejected these arguments and concluded:

> there was no conflicting testimony on these issues because [the sheriff] and [decedent] were the only two people to witness the event and because [decedent], now deceased, cannot offer a competing version of facts. . . .Unfortunately for the appellants, no direct evidence exists to rebut Sheriff Gee's version of the events.

*Id. at 810.*

In the instant case, there is similarly no conflicting evidence to rebut Officer Feeney and Officer David's rendition of the events because they were the only two (2) to witness the sequence of events, in addition to the videotape. Plaintiff's conjecture that it also *could* have happened because Officer Feeney touched the weapon has absolutely no evidentiary support and thus should be rejected as a basis to deny summary judgment.

## III. CONCLUSION

For the reasons cited herein as well as those raised in Defendants' Memorandum of Law in Support of their Motion for Summary Judgment, as well as those that may be raised at hearing, defendants respectfully request that summary judgment on all counts enter.

Defendants,
By their attorney,

*/s/ Marc DeSisto*

Marc DeSisto (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
Phone: (401) 272-4442
Fax: (401) 272-9937
Email: marc@desistolaw.com

CERTIFICATION OF SERVICE

I hereby certify that the within document has been electronically filed with the Court on June 20, 2007, that it is available for viewing and downloading from the ECF system, and that the counsel of record listed below will receive notice via the ECF system:

V. Edward Formisano (#5512)
edf@sfclaw.com

*/s/ Marc DeSisto*

Marc DeSisto